UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
THE MUSEUM OF MODERN ART, and THE :
SOLOMON R. GUGGENHEIM FOUNDATION, :
:
                      Plaintiffs, :
:
BOY LEADING A HORSE, and LE MOULIN DE : 07 Civ. 11074 (JSR)
LA GALETTE, Two Paintings by Pablo Picasso, :
:
                   Plaintiffs-in-rem, :
:
                      - against - :
:
JULIUS H. SCHOEPS, :
:
                      Defendant. :
:
------------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JULIUS H. SCHOEPS' MOTION TO DISMISS THE COMPLAINT FOR DECLARATORY RELIEF

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Plaintiffs The Museum of Modern Art
and The Solomon R. Guggenheim Foundation

Of Counsel:

    Evan A. Davis
    Kirsten L. O'Connell

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES .................................................................................... | ii |
| PRELIMINARY STATEMENT ............................................................................... | 1 |
| FACTUAL AND PROCEDURAL BACKGROUND......................................................... | 3 |
| ARGUMENT ........................................................................................................ | 7 |
| POINT I .............................................................................................................. | 8 |
| PLAINTIFFS PROPERLY NAMED SCHOEPS IN HIS INDIVIDUAL CAPACITY IN THIS ACTION ........................................................... | 8 |
| POINT II ............................................................................................................. | 11 |
| PLAINTIFFS PROPERLY BROUGHT A DECLARATORY JUDGMENT ACTION, AND DEFENDANT'S ALLEGATION THAT PLAINTIFFS MISUSED THE REMEDY MUST FAIL ...................................... | 11 |
| CONCLUSION..................................................................................................... | 16 |

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. 1655 .................................................................................................... 10

**Cases**

Capitol Records, Inc. v. Optical Recording Corp.,
810 F. Supp. 1350 (S.D.N.Y. 1992) .................................................................... 14, 15

Caplin v. Oak,
356 F. Supp. 1250 (S.D.N.Y. 1973) .................................................................... 10

Dow Jones & Co., Inc. v. Harrods Ltd.,
346 F.3d 357 (2d Cir. 2003) ................................................................................ 11

Goldsmith v. Gilliland,
24 F. 154 (C.C. Or. 1885) .................................................................................... 10

Great American Ins. Co. v. Houston General Ins. Co.,
735 F. Supp. 581 (S.D.N.Y. 1990) ...................................................................... 13-14

Pressman v. Estate of Steinvorth,
860 F. Supp. 171 (S.D.N.Y. 1994) ...................................................................... 9

Resseau v. Bland,
491 S.E.2d 809 (Ga. 1997)……………………………………………………….. 10

Roques v. Grosjean,
66 N.Y.S. 2d 348 (N.Y. Sup. 1946) .................................................................... 9

Schoeps v. Andrew Lloyd Webber Art Foundation,
17 Misc. 3d 1128(A), No. 116768/06,
2007 WL 4098215 (N.Y. Sup. Nov. 19, 2007) .................................................... 8, 9

Spring v. Ohio Oil Co.,
108 F.2d 560 (5th Cir. 1940) ............................................................................... 10

Swenson v. Dittner
439 A.2d 334 (Conn. 1981)……………………………………………………. 10

Wilton v. Seven Falls Co.,
515 U.S. 277 (1995) ............................................................................................. 11

Plaintiffs The Museum of Modern Art ("MoMA") and The Solomon R. Guggenheim Foundation (the "Guggenheim") (together, the "Museums") respectfully submit this memorandum of law and the accompanying declaration of Evan A. Davis dated February 25, 2008 ("Davis Declaration"), and the exhibits thereto, in support of their opposition to defendant Julius H. Schoeps' ("Schoeps") motion to dismiss the complaint dated February 11, 2008 ("Defendant Br.").

## PRELIMINARY STATEMENT

Schoeps asserts two arguments in support of his motion to dismiss. Both fail to withstand scrutiny.

First, Schoeps argues that he lacks the standing to litigate the ownership of *Boy Leading a Horse* and *Le Moulin de la Galette* (together, the "Paintings"). He bases this erroneous argument on the New York Supreme Court's recent dismissal of an action commenced by Schoeps against the Andrew Lloyd Webber Art Foundation (the "ALWAF") for the return of a painting with a provenance alleged to be similar to the Paintings. In that case, the court explicitly found that Schoeps lacked standing to bring an action "on behalf of an estate."

Schoeps' reliance on that case, the finding of which he is vigorously contesting, is misplaced. The Museums are suing Schoeps in his individual capacity, not as the representative of an estate, for a declaration of rights in tangible property as against Schoeps. They do so for the very good reason that he is the one disparaging the title of MoMA and the Guggenheim to the Paintings. Having been sued in an individual capacity in this action, Schoeps has no standing issue to raise.

Schoeps' second argument, that plaintiffs' action is a misuse of the Federal Declaratory Judgment Act, is also wrong. Specifically, Schoeps alleges that plaintiffs

"wrongfully filed this suit surreptitiously" in an attempt to win a "race to the courthouse." In Schoeps' lengthy and, here, irrelevant, recitation of his view of the facts going to the merits, he neglects to mention that, after receipt of his counsel's letter in March of 2007 which cast a cloud over their title to the Paintings, plaintiffs (i) permitted Schoeps' counsel to review their Records (as hereinafter defined) regarding the Paintings, and (ii) repeatedly requested that Schoeps' counsel share his provenance information for the Museums to consider when determining how to respond to Schoeps' demands.

Plaintiffs decided to file this action in December only after having received defendant's November 1 demand letters which, despite containing no new or persuasive information in support of Schoeps' claims, insisted that plaintiffs turn over the Paintings by November 12. Schoeps' characterization of the Museums' eight-month process of evaluation and Board review and consideration as a "race" is without merit.

Also without merit is Schoeps' allegation that plaintiffs commenced this action to obtain a procedural advantage. Schoeps identifies no advantage that plaintiffs could hope to receive by commencing this action, and there is none. Rather, plaintiffs commenced this action, as is their right, to seek an authoritative determination of plaintiffs' legal rights against Schoeps and to remove the cloud Schoeps had placed eight months earlier on their ownership of the Paintings. The clarification of legal rights and the resolution of uncertainty are key purposes of the Federal Declaratory Judgment Act, as the very case law on which Schoeps relies in his motion to dismiss recognizes.

Accordingly, Schoeps' motion to dismiss should be denied.

## **FACTUAL AND PROCEDURAL BACKGROUND**[1]

On March 28, 2007, Schoeps' counsel sent a letter to MoMA stating that he represented Schoeps and other unnamed heirs of Paul von Mendelssohn-Bartholdy ("von Mendelssohn-Bartholdy"), and that he was investigating an alleged "duress sale" by von Mendelssohn-Bartholdy of Pablo Picasso's *Boy Leading a Horse* to Berlin art dealer Justin K. Thannhauser ("Thannhauser").  See Davis Decl., Ex. 1, at 1.  In that March 28 letter, Schoeps' counsel requested permission to examine and copy any and all of the documents MoMA had in its possession relating to the painting.  Id.

That same day, Schoeps' counsel sent a virtually identical letter to the Guggenheim stating that he represented Schoeps, as well as other unnamed heirs of von Mendelssohn-Bartholdy, and was investigating an alleged "duress sale" by von Mendelssohn-Bartholdy of Picasso's *Le Moulin de la Galette* to Thannhauser.  See Davis Decl., Ex. 2, at 1.  The March 28 letter to the Guggenheim also requested permission to examine and copy all of the Guggenheim's documents relating to the painting.  Id. at 1-2.

In response, the Guggenheim wrote to Schoeps' counsel on May 29, agreeing to provide him with access to the same factual information on the provenance of *Le Moulin de la Galette* that the museum provides to bona fide researchers and scholars (the "Records").  Davis Decl., Ex. 3, at 2.  The Guggenheim informed Schoeps' counsel that it was aware of the letter he had sent to MoMA alleging that he was investigating an alleged "duress sale" by von

---

[1] The Museums recognize that Schoeps dedicated a significant portion of his filing to a recitation of his view of facts that are not relevant to the issues before the Court in deciding the motion to dismiss.  See Defendant Br. at 4-11.  While disagreeing with both the substance and appropriateness of Schoeps' factual recitation, the Museums will respond only to those allegations that are related to the two issues that are properly before the Court at this time.

3

Mendelssohn-Bartholdy to Thannhauser of a work by Picasso in its collection. Id. at 1. The Guggenheim also stated that it was aware of the actions Schoeps had commenced against the ALWAF, first in federal court and then in New York state court, seeking the return of Picasso's *The Absinthe Drinker (Angel Fernandez de Soto)*, based on the claim that the painting had been the subject of a duress sale by von Mendelssohn-Bartholdy to Thannhauser in or around 1935. Id.

The Guggenheim further stated that, because of the similarities in the claims and factual circumstances alleged in Schoeps' counsel's March 28 letter and the action Schoeps had commenced against the ALWAF, the Guggenheim would treat the March 28 letter as effectively seeking the same relief as the ALWAF lawsuit, that it would very carefully evaluate Schoeps' claim, and that its Board of Trustees would determine the museum's official response to Schoeps' demand. See Davis Decl., Ex. 3, at 1-2. The Guggenheim also expressed a desire for Schoeps' counsel to supplement his explanation of the basis for his claim. Id. at 2. On May 30, MoMA sent Schoeps' counsel a letter stating that the museum joined in the letter the Guggenheim had sent the previous day. See Davis Decl., Ex. 4.

The following week, on June 8, Schoeps' counsel responded in a letter to each museum, stating that he anticipated making "a full presentation" of his findings to the Museums after he had completed his investigation into the provenance of the Paintings. See Davis Decl., Exs. 5, 6.

Later that month, on June 25, Schoeps' counsel visited each museum to review its Records on the Paintings. He spent one and a half hours at MoMA and three and a half hours at the Guggenheim, and he requested and received copies of a number of documents from each museum, some of which he included as exhibits in support of his motion to dismiss.

4

Following Schoeps' counsel's visits to the Museums, on July 13 and 16 the Museums wrote to Schoeps' counsel to request that he provide the Museums with whatever information he had found in support of his claims, which the Museums would then take into consideration when evaluating and determining how to respond to his demand. The July letters gave Schoeps' counsel until August 16 to share his information with the Museums. See Davis Decl., Exs. 7, 8.

On August 16, instead of sharing his information with the Museums, Schoeps' counsel wrote a letter to each museum stating that he had not yet finished his investigation, but intended to do so in the near future. See Davis Decl., Exs. 9, 10.

In response, MoMA and the Guggenheim sent letters on August 28 and 29, respectively, to Schoeps' counsel acknowledging receipt of his August 16, 2007 correspondence, reiterating the Museums' intentions to make a presentation to their Boards of Trustees and requesting that Schoeps' counsel provide any information that would enable the Boards to be fully informed when evaluating and preparing to respond to Schoeps' counsel's demand. In light of his request for additional time, the Museums agreed to extend the deadline for submission of Schoeps' counsel's written presentation to November 1. See Davis Decl., Exs. 11, 12.

On November 1, Schoeps' counsel sent a letter to each of MoMA and the Guggenheim demanding that the Museums return the Paintings to the unnamed heirs of von Mendelssohn-Bartholdy within 11 days of the letter, by November 12. Davis Decl., Ex. 13, at 1; Ex. 14, at 1. The letters further stated that if the Museums did not return, or agree to return, the Paintings by that date, then Schoeps' counsel would consider the demand to have been refused and would accordingly "take whatever actions we deem appropriate to protect the rights of our clients." Davis Decl., Ex. 13, at 1; Ex. 14, at 1. The November 1 letters also noted Schoeps'

5

counsel's belief that the unnamed heirs of von Mendelssohn-Bartholdy were entitled to recovery of the Paintings under New York law regarding conversion, replevin, restitution and constructive trust. See Davis Decl., Ex. 13, at 1; Ex. 14, at 1.

MoMA and the Guggenheim responded to Schoeps' counsel on November 5 and 6 respectively, reiterating their earlier statements that the evaluation of and response to Schoeps' counsel's demand would be made by the Museums' Boards of Trustees, and that the Boards would not be able to conclude their evaluations by November 12, but hoped to have a response by December 14. See Davis Decl., Exs. 15, 16.

On November 12, Schoeps' counsel responded by letter to each museum acknowledging receipt of their November 5 and 6 letters, and stating that he would provide the Museums with his position on the matter shortly. See Davis Decl., Exs. 17, 18. Schoeps' counsel never provided his position on the matter.

On December 7, in response to defendant's demand that the Museums turn over the Paintings, MoMA and the Guggenheim jointly filed a complaint with this Court seeking a judgment declaring that (i) no presumption of duress applies to the sale of the Paintings; (ii) that the available facts establish the sales were not made under duress, regardless of whether such a presumption exists; (iii) that defendant's claims are barred by laches and the applicable laws of Switzerland or Germany; and (iv) that defendant's claims are invalid because he is not the proper claimant to the Paintings as an heir to von Mendelssohn-Bartholdy's sister, and not his wife Elsa (the "Complaint").

That same day, the Museums wrote to Schoeps' counsel stating that, having carefully researched and investigated the provenance of the Paintings and having concluded that Schoeps' claim that the Paintings had been the subject of a "duress sale" was without merit, the

6

Museums refused defendant's demand to return the Paintings. Davis Decl., Ex. 19, at 1. The December 7 letter also stated that in response to Schoeps' counsel's stated intention to "take whatever actions we deem appropriate to protect the rights of our clients," the Museums were filing a complaint that day in the United States District Court for the Southern District of New York seeking an order from the Court declaring defendant's claims to be invalid. See Davis Decl., Ex. 19, at 2.

## ARGUMENT

Defendant's motion to dismiss the Complaint should be denied because the two arguments he asserts in support of his motion to dismiss are not valid. First, defendant's attempted reliance on an earlier decision by the New York Supreme Court finding that he did not have standing to bring a claim on behalf of von Mendelssohn-Bartholdy's estate, a decision defendant admits he vigorously disagrees with and is currently appealing, is inapplicable to the issue of whether he has standing to litigate this action to declare rights in property. In this action, the defendant has been named in his individual capacity and not as a representative of von Mendelssohn-Bartholdy's estate.

Second, it is preposterous to claim that plaintiffs misused the Declaratory Judgment Act by "rush[ing] to the courthouse" eight months after defendant placed a cloud on the title of two of the most important works in their collections. Defendant's characterization of plaintiffs' actions as a "race" is no more persuasive than his attempt to cobble together the procedural advantage plaintiffs purportedly received from filing the Complaint.

## POINT I

### PLAINTIFFS PROPERLY NAMED SCHOEPS IN HIS INDIVIDUAL CAPACITY IN THIS ACTION

Schoeps' claim that he has no standing and lacks the personal capacity to litigate this action is without merit, as is his mistaken reliance on the recent New York Supreme Court decision in Schoeps v. The Andrew Lloyd Webber Art Foundation, 17 Misc. 3d 1128(A), No. 116768/06, 2007 WL 4098215 (N.Y. Sup. Nov. 19, 2007) ("Schoeps v. Webber"); Defendant Br. at 12-15.

Plaintiffs brought this action to confirm their ownership of the Paintings against Schoeps in his individual capacity, not against him as a representative of von Mendelssohn-Bartholdy's estate or against any other potential claimants. Schoeps' failure to recognize that this action was properly brought against him in an individual capacity is fatal to his lack of standing argument.

In Schoeps v. Webber, the court noted that Schoeps "alleges that he represents 100% of Paul von Mendelssohn-Bartholdy's heirs," and "claims to have permission from all the heirs to pursue this claim." Schoeps, 2007 WL 4098215, at *1. In the complaint Schoeps filed in that action, he claimed that he was "an heir to 12.5% of von Mendelssohn-Bartholdy's estate," Davis Decl., Ex. 20, ¶ 4, but sought a declaration that he was the rightful owner of the painting and an order requiring the return of the painting to him. Id. ¶¶ 104-108, 114-117. The Schoeps v. Webber court dismissed the complaint based on the well-established rule in New York that "a person who has not obtained letters as personal representative lacks standing or the legal capacity to commence an action on behalf of an estate." Schoeps, 2007 WL 4098215, at *2 (emphasis supplied).

8

In his attempt to rely on the Schoeps v. Webber decision in support of his motion to dismiss the present action, a decision with which Schoeps "emphatically disagrees" and has appealed, Defendant Br. at 14 n.8, defendant neglects to acknowledge the dispositive difference between the two actions. While defendant claims that he brought the Schoeps v. Webber action in his individual capacity, Defendant Br. at 13, he fails to recognize that an action in which an individual claims to be a representative of all of an estate's heirs and to have received their permission to pursue a claim is not, in fact, an individual action. Schoeps, 2007 WL 4098215, at *1; Davis Decl., Ex. 20, ¶ 4; see also Defendant Br. at 13-14. This is why the court's dismissal was expressly based on the rule of law requiring individuals to obtain personal representative letters before bringing an action "on behalf of an estate." Schoeps, 2007 WL 4098215, at *2 (emphasis supplied).

Where, as here, a person is a party to an action in his individual capacity, the law requiring him to become a duly appointed representative of the estate simply does not apply. See, e.g., Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 177 (S.D.N.Y. 1994) (plaintiff, heir to decedent's estate, had standing in her own capacity to bring suit against decedent's attorney); see also Roques v. Grosjean, 66 N.Y.S. 2d 348 (N.Y. Sup. 1946) (holding that the French heir of decedent can bring suit in her own behalf, as an alleged owner of the property in question, and not in a representative capacity). In the instant matter, because plaintiffs are not seeking a declaratory judgment against the estate, but against Schoeps himself, there is no need for Schoeps to obtain ancillary letters or to demonstrate that he is the representative of von Mendelssohn-Bartholdy's estate.

Furthermore, unlike the state court action, this action seeks a declaration of rights in property and not the return of the Paintings to a specific individual. It is well settled that such

9

an action may be maintained against any person disparaging title and need not be maintained against all those with an interest in the property. See, e.g., Resseau v. Bland, 491 S.E.2d 809, 811 (Ga. 1997) (holding that a quiet title action "does not require that all potentially interested persons, adverse or otherwise, be joined as parties to the suit"); Swenson v. Dittner, 439 A.2d 334, 336 (Conn. 1981) (holding that "only parties to an action to quiet title are bound by the judgment"); Spring v. Ohio Oil Co., 108 F.2d 560, 561 (5th Cir. 1940) (finding non-parties need not be joined to a quiet title action where "it does not appear that [defendant] is asking for relief against them or claims any rights under them"); Goldsmith v. Gilliland, 24 F. 154, 158 (C.C. Or. 1885) (holding that a quiet title action may be maintained against "any or all" parties who claim to have an interest in the property, even though "the determination of the controversy in this suit will not settle any controversy the plaintiff may have with [other non-parties] touching any claim they make to the property").

Furthermore, there is nothing to prevent the other unnamed heirs from joining this litigation if they wish to do so, particularly in light of Schoeps' counsel's claims that he also represents the other heirs. MoMA and the Guggenheim have no objection to the timely intervention of all those who claim an interest in the Paintings.[2]

---

[2] Moreover, if the Court were to find that the remaining heirs are indispensable parties to the action, such a finding "would not be fatal to plaintiffs since the Court has the power to order that an indispensable party be joined." Caplin v. Oak, 356 F. Supp. 1250, 1257 (S.D.N.Y. 1973); see also 28 U.S.C. § 1655.

10

## POINT II

### PLAINTIFFS PROPERLY BROUGHT A DECLARATORY JUDGMENT ACTION, AND DEFENDANT'S ALLEGATION THAT PLAINTIFFS MISUSED THE REMEDY MUST FAIL

The question of whether and when to entertain an action brought under the Declaratory Judgment Act lies within the broad discretion of district courts.  See Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995); Defendant Br. at 15.

In Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357 (2d Cir. 2003), the Second Circuit identified five factors for courts to consider when deciding whether to dismiss a declaratory judgment action.  Id. at 359-60.  Those factors include (i) whether the judgment will serve a useful purpose in clarifying the legal issues involved; (ii) whether the judgment will finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems; and (v) whether a better or more effective remedy exists.  Id.  Where, as here, the applicable Dow Jones factors militate in favor of exercising that discretion, the declaratory judgment request should be entertained.

Here, the four factors relevant to the instant dispute[3] all weigh in favor of the Court's entertaining the requested declaratory judgment action.  First, exercising the Court's discretion in favor of entertaining plaintiffs' declaratory judgment action will serve the useful purpose of clarifying the legal issues involved, including whether there is a presumption of duress as defendant has claimed; whether the sales were in fact made under duress, regardless of

---

[3]     Because there are no foreign proceedings between the parties on this subject, the fourth Dow Jones factor does not apply.

whether such a presumption exists; whether the equitable doctrine of laches bars defendant's claims; whether the applicable laws of Switzerland or Germany also bar defendant's claims; and whether defendant's claims are invalid because he, as an heir to von Mendelssohn-Bartholdy's sister but not an heir to his wife Elsa, is not the proper claimant to the Paintings.

Second, entertaining the declaratory judgment action can also finalize the controversy with Schoeps and put an end to the uncertainty that defendant created in his counsel's letters of March 28, 2007, in which Schoeps was the only person identified by name. The declaration will conclusively determine whether defendant has a valid claim to the Paintings, and will remove the cloud that defendant placed over the Museums' ownership of the Paintings.

Third, a declaratory judgment that defendant's claims are without merit is the best remedy available to the Museums to resolve this dispute. After having carefully considered Schoeps' claims, the Museums both concluded that his demands were without merit. However, their own internal conclusions were insufficient to remove the cloud Schoeps had placed on their ownership and continued possession of the Paintings. The best remedy available to the Museums to resolve the questions raised by Schoeps is to obtain an authoritative determination of their rights through a declaratory action, which is exactly what they are doing.

Finally, defendant's claim that plaintiffs commenced this action as "procedural fencing," the only <u>Dow Jones</u> factor defendant addresses, is baseless. Defendant Br. at 15-16. Plaintiffs neither "raced" to the courthouse, nor gained a "procedural advantage" from filing first. Plaintiffs filed the Complaint for declaratory judgment eight months after Schoeps first placed a cloud on their title to the Paintings by informing the Museums of his claims. The Museums permitted Schoeps' counsel to review their Records on the Paintings, and requested, repeatedly, that he share his information with them regarding the provenance of the Paintings.

12

The Museums commenced this proceeding to quiet title to the Paintings only after receiving Schoeps' counsel's letters on November 1, which contained no new or persuasive information in support of Schoeps' claims, but instead demanded that plaintiffs turn over the Paintings within 11 days and made thinly-veiled threats of litigation if the Museums failed to do so. In fact, the threat of litigation was all the more potent in view of the fact that Schoeps had already commenced litigation over these very same issues in Schoeps v. Webber in November 2006. It is simply not credible to characterize those eight months and all of the Museums' diligent research, consideration and review of this matter as a "race."

       Furthermore, there is no cognizable procedural gain to be had for the Museums in being the plaintiffs rather than the defendants in this action. Defendant's allegation that as the "natural plaintiff" in this action, plaintiffs' filing prevented him from becoming the actual plaintiff is unconvincing, particularly where he fails to identify what he would have gained as a plaintiff that he does not have as defendant. The claim that the Museums obtained an advantage by portraying themselves as "victims" to the Court and the media does not merit a response.

       Schoeps' claim that he was denied the opportunity to hear a "coherent statement" of the Museums' positions before they commenced litigation is also unavailing. Nowhere in Schoeps' counsel's November 1 letters demanding that the Museums turn over the Paintings by November 12, nor at any other time, did he express any interest in gaining a better understanding of the Museums' positions or hearing a "coherent statement" from the Museums: he asked for and received access to their Records.

       The case law on which defendant relies for his position that plaintiffs "have misused the Declaratory Judgment Act" in fact provides support for the proper nature of plaintiffs' action. See Defendant Br. at 15-16. In Great American Insurance Co. v. Houston

13

General Insurance, Co., 735 F. Supp. 581 (S.D.N.Y. 1990), the court recognized that the declaratory judgment procedure "'enable[s] a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability.'" Id. at 584 (quoting Borchard, Declaratory Judgments 280 (2d ed. 1941)).

In addition, the court in Great American Insurance Co. dismissed the declaratory judgment action only after finding that the action had been filed in New York in order to avoid an action plaintiffs knew the defendant was going to file in Texas; it was this act which the court found to be a "classic example" of forum shopping. Id. at 586; see also Capitol Records, Inc. v. Optical Recording Corp., 810 F. Supp. 1350 (S.D.N.Y. 1992) (transferring declaratory judgment action from New York to Delaware after finding plaintiffs commenced proceedings in New York to avoid the action in Delaware); Defendant Br. at 16.

In contrast to the circumstances that existed in Great American Insurance Co. and Capitol Records, here there is no allegation that plaintiffs brought this litigation to prejudice their adversary by choosing a forum in a different state. Litigating in federal rather than state court in New York causes Schoeps no prejudice. Plaintiffs brought this action because there was "an opportunity for a party to a ripe legal controversy to have that controversy resolved by a Court promptly rather than waiting for the opposing party, with the ripe substantive right to sue." Great American Insurance Co., 735 F. Supp. at 585.

Finally, Schoeps' claim that it was unfair for plaintiffs to bring an action in December to clear the cloud he had placed over two of the most important works in the Museums' respective collections the previous March because it denied him the possibility of

14

discussing a "possible settlement" is preposterous, and can only suggest that Schoeps was not seeking to litigate the merits of his claims, but rather to pressure the Museums into settling them. Schoeps points to no decision, and we know of none, requiring a party to engage in settlement discussions without regard to the validity of the claim or to that party's interest in settlement. Indeed, the one decision on which defendant purports to rely, Capitol Records, is inapplicable. Unlike in Capitol Records, where the plaintiff took advantage of the defendant's proposal to engage in further settlement discussions as an opportunity to file an action in a forum "of its own choosing," here, there have been no discussions about settlement, and defendant's November 1 letters plainly did not propose "further[ing]" any such discussion. Capitol Records, 810 F. Supp. at 1354; Defendant Br. at 16. To allege that the Complaint should be dismissed because plaintiffs did not initiate settlement discussions before filing it, is simply to suggest that defendant is unhappy that he did not succeed in his strategy of threatening action in the hopes of pushing plaintiffs to settle a case he could not win on its merits.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Schoeps' motion to dismiss the Complaint.

Dated: New York, New York
February 25, 2008

                                    Respectfully submitted,

                                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                    By:  /s/ Evan A. Davis
                                           Evan A. Davis
                                           Member of the Firm

                                           One Liberty Plaza
                                           New York, New York 10006
                                           Tel: (212) 225-2000

                                  Attorneys for The Museum of Modern Art
                                  and The Solomon R. Guggenheim Foundation

Of Counsel:

       Kirsten L. O'Connell