UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE MUSEUM OF MODERN ART, et al.,

            Plaintiffs,

     v.

JULIUS H. SCHOEPS,

            Defendant.

07 Civ. 11074 (JSR)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT JULIUS H. SCHOEPS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF**

BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, NW
Suite 1012
Washington, DC 20036

BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES................................................................................................ii

I.      INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION.............1

II.     STATEMENT OF FACTS .................................................................................................2

III.    ARGUMENT ......................................................................................................................4

      A.      The Ruling of the Court in Schoeps v. Webber that Schoeps Must Qualify
              As a Personal Representative to Litigate Ownership of the Paint Precludes --
              As a Matter of Law -- His Standing to Litigate Such Claims in His
              Personal Capacity .................................................................................................4

      B.      The Schoeps v. Webber Ruling Negates -- and Renders Moot -- Any Justiciable
              Controversy as Required for Declaratory Relief....................................................6

      C.      Schoeps Has Rendered any Controversy Moot by Disclaiming any Intention
              in His Personal Capacity to Sue the Museums to Recover the Paintings...................8

      D.      Even Assuming that the Museums Were Parties to a Justiciable Case or
              Controversy -- Which They Never Were -- the Court Should Deny their
              Petition for Declaratory Relief Because It Would Not Clarify the Legal
              Issues or Resolve the Controversy Concerning Who Owns the Painting ..................8

IV.     CONCLUSION ..................................................................................................................10

## TABLE OF AUTHORITIES
PAGE

**Federal Cases**

Beckett v. Marks, 358 F. Supp. 1180 (D.C.N.Y 1973).................................................. 8

Calderon v. Ashmus, 523 U.S. 740 (1998) ..................................................................... 9

Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734 (2d Cir. 1992) ........................ 9

Dow Jones & Company, Inc. v. Harrods Limited, 346 F.3d 357 (2d Cir. 2003) ............................ 9

Enrico's Inc. v. Rice, 730 F.2d 1250 (9th Cir. 1984) ...................................................... 7

Medimmune, Inc. v. Genentech, 127 S.Ct. 764 (2007) ............................................... 6, 7

Ming Shi Xue v. Board of Immigration Appeals, 439 F.3d 111 (2d Cir. 2006)............................ 5

Pressman v. Estate of Steinvorth, 860 F. Supp. 171 (S.D.N.Y 1994) .................................... 5

Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7th Cir. 1969)................................... 7

**State Cases**

Jackson v. Kessner, 618 N.Y.S.2d 635 (N.Y. App. Div. 1994)......................................... 4

McQuiade v. Perot, 223 N.Y. 75 (1918)............................................................... 4

Roques v. Grosjean, 66 N.Y.S.2d 348 (N.Y. Sup. 1946) ............................................... 5

Schoeps v. The Andew Lloyd Webber Foundation, Slip Op. 52183 (U), 2007 WL 4098215 (N.Y. Sup., 2007)..............................................................................................1, 3-5, 7, 10

**Statute**

Declaratory Judgment Act, 28 USC§ 2201(a) ……….…….……..……….…….…….....6

**Secondary Authority**

10B Charles Alan Wright et. al. "Federal Practice and Procedure" (1998)…….....…..…….....7, 8

12 James Wm. Moore et. al., "Moore's Federal Practice Third Edition" (2007)…….…....…......6

ii

## I. INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION

The Museum of Modern Art (MoMA) and the Solomon R. Guggenheim Foundation (Guggenheim)[1] improperly sued defendant Julius H. Schoeps (Schoeps) regarding ownership of the paintings at issue[2] without a basis either in fact or in law. The Museums lack a factual predicate for suing Schoeps because Schoeps in his personal capacity never demanded that the Museums return the Paintings: counsel for the Mendelssohn-Bartholdy heirs -- who also represents Schoeps -- demanded the return of the Paintings in the name of the heirs exclusively and not Schoeps individually. The Museums' mischaracterization of this demand as emanating from Schoeps individually is spurious and disingenuous.

Moreover -- and as a matter of law -- Schoeps as an individual lacks both standing as well as the legal capacity to litigate ownership of the Paintings as the court plainly ruled in <u>Schoeps v. The Andrew Lloyd Webber Art Foundation</u>, Slip Op. 52183(U), 2007 WL 4098215 (N.Y. Sup., November 17, 2007) (<u>Schoeps v. Webber</u>). The legal incapacity of Schoeps to litigate ownership of the Paintings negates -- and renders moot -- any justiciable controversy than can serve as a jurisdictional predicate for declaratory relief. Because Schoeps in his individual capacity cannot sue the Museums for the recovery of the Paintings, the Museums cannot demonstrate the requisite concreteness or immediacy of pending litigation to obtain a declaratory judgment.

Even assuming, however, that the Museums had a justiciable controversy with Schoeps,

---

[1] MoMA and the Guggenheim will be referred to jointly as the "Museums."

[2] The paintings in dispute are Pablo Picasso's *Boy Leading a Horse*, which is at MoMA, and Picasso's *Le Moulin de la Galette*, which is at the Guggenheim (the two paintings will be referred to jointly as the "Paintings").

they could not satisfy the prudential criteria New York courts consistently apply to determine whether declaratory relief is appropriate. First, a declaratory ruling will not clarify the relevant legal issues because the claimant to the Paintings -- the estate of Mendelssohn-Bartholdy -- is not before the Court and the estate may have claims and defenses that Schoeps in his personal capacity cannot assert. Second, a declaratory ruling against Schoeps will not relieve the Museums' uncertainty regarding who owns the Paintings for the same reason.

The Museums' attempt to sue Schoeps in his personal capacity must be seen for what it is: a transparent attempt to misuse the federal declaratory remedy and the judicial process to inflict costs upon Schoeps and punish him for his perceived leadership role in seeking to reclaim paintings that were wrested from his great uncle as a proximate and intended consequence of Nazi persecution and in a paradigmatic forced or duress sale. That both Museums -- in violation of their fiduciary duties as trustees to the public -- have had every reason to know from inception that they were acquiring contraband materials has spiked their ire and hardened their resolve to punish Schoeps personally.

## II. STATEMENT OF FACTS

Schoeps incorporates by reference the Statement of Facts contained in the Memorandum of Points and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiff's Complaint for Declaratory Relief filed in this proceeding on or about February 11, 2008. (Schoep's Memorandum). In addition, Schoeps invites the special attention of the Court to the relevant chronology of events as follows:

On November 1, 2007 counsel for Schoeps and the other heirs of Paul von Mendelssohn-Bartholdy (heirs) sent letters to both MoMA and Guggenheim demanding that they return the

2

Paintings to the heirs by November 12, 2007. (Memorandum of Law in Opposition to Defendant Julius H. Schoeps' Motion to Dismiss the Complaint for Declaratory Relief [Museums' Memorandum] at page 5). Most importantly, counsel made this demand in the name of the heirs of Mendelssohn-Bartholdy collectively and **not** on behalf of Schoeps personally.

On November 5 and 6, MoMA and Guggenheim respectively replied to the demand of the heirs and said -- in essence -- that they would not be able to respond by November 12 but hoped to do so by December 14. Id. at 6.

On November 19 the Supreme Court of New York issued its ruling in Schoeps v. Webber. The court in Schoeps v. Webber ruled that in his individual capacity Schoeps lacked both standing as well as the legal capacity to litigate the ownership of a painting lost in the same transaction as the disputed Paintings in this proceeding, and that to do so he first must qualify before the Surrogate's Court of New York as a personal representative of the estate of Mendelssohn-Bartholdy. Schoeps v. Webber, supra, p. 2. The court ruled explicitly that Schoeps had no standing to litigate ownership of the Paintings without first qualifying as a personal representative. "Notwithstanding the very significant issues raised by this litigation, this Court is constrained to dismiss it because plaintiff does not have standing to bring this action without being appointed a personal representative of the estate." Id. at 2.

On December 7, the Museums commenced this proceeding against Schoeps individually. The Museums make clear that they are suing Schoeps personally: "(t)he Museums are suing Schoeps in his individual capacity, not as the representative of an estate, for declaration of tangible property as against Schoeps." (Museums' Memorandum, p. 1). The Museums sued Schoeps personally even though counsel in his November 1 letters demanded the return of the

3

Paintings in the name of the heirs of Mendelssohn-Bartholdy collectively and not Schoeps personally, and despite the ruling of the Supreme Court on November 19 that Schoeps lacks both standing and the legal capacity to litigate ownership of paintings lost by Mendelssohn-Bartholdy in Nazi Germany.

## III. ARGUMENT

### A. The Ruling of the Court in Schoeps v. Webber that Schoeps Must Qualify as a Personal Representative to Litigate Ownership of the Painting Precludes — As a Matter of Law -- His Standing to Litigate Such Claims in His Personal Capacity

In New York, the appointment of a personal representative to administer the affairs of an estate precludes as a matter of law the individual heirs -- either as putative representatives of the estate or in their individual capacities -- from litigating the ownership of estate property. See McQuiade v. Perot, 223 N.Y. 75 (1918), "[i]t is elementary that the executors or administrators represent the legatees, creditors and distributees in the administration of the estate; that their duty is to recover the property of the estate; and that the legatees and next of kin are concluded by their determination in respect to actions therefor and have no independent cause of action, either in their own right or the right of the estate" (emphasis added); Jackson v. Kessner, 618 N.Y.S.2d 635, 637 (N.Y. App. Div. 1994) ("[i]t is well settled that a beneficiary, absent extraordinary circumstances such as when a fiduciary unreasonably refuses to act...cannot act on behalf of the estate or exercise the fiduciary's rights with respect to estate property, even if beneficiary and fiduciary are one in the same").

Accordingly, the ruling of the court in Schoeps v. Webber that Schoeps in his individual capacity lacks standing to sue to recover paintings lost by Mendelssohn-Bartholdy in Nazi Germany, as well as the decisions in McQuaide and Jackson, make clear that as a matter of law Schoeps cannot sue or be sued regarding the ownership of estate property if -- as the court in Schoeps v. Webber ruled --    a personal representative must be appointed to administer the affairs of the Mendelssohn-Bartholdy estate.

4

The Museums misplace reliance upon <u>Pressman v. Estate of Steinvorth</u>, 860 F. Supp. 171 (S.D.N.Y 1994) and <u>Roques v. Grosjean</u>, 66 N.Y.S.2d 348 (N.Y. Sup. 1946) for the proposition that they properly may sue Schoeps in his individual capacity concerning ownership of the Paintings and that "the law requiring him to become a personal representative of the estate simply does not apply." (Museum's Memorandum at 9). These cases are inapposite for several reasons.

First, the discussion in <u>Pressman</u> to which the Museums allude is pure dicta as it addresses legal conclusions premised upon hypothetical facts. <u>See</u>, <u>e.g.</u>, <u>Ming Shi Xue v. Board of Immigration Appeals</u>, 439 F.3d 111, 121 (2d Cir. 2006). The court in <u>Pressman</u> ruled that the plaintiff in an interpleader action had waived the defense that the "universal heir" of a decedent's estate under a ruling by the Supreme Court of Venezuela could not proceed against him in her personal capacity for the recovery of certain of decedent's funds without qualifying as a personal representative. <u>Id</u>. at 176-77. The court then said that the "New York common law rule that estate executors and administrators cannot sue or be sued in the courts of New York without first obtaining ancillary letters of administration . . . does not apply when the foreign representative is suing or being sued in her individual rather than her representative capacity." <u>Id</u>. at 177.

This principle does not apply to Schoeps. First, the cited rule pertains only to "estate executors and administrators" and **not** to individual legatees. Because Schoeps is not an executor or administrator of the estate of Mendelssohn-Bartholdy, this principle cannot apply to him. Indeed, the <u>McQuaide</u> decision, <u>supra</u>, makes clear that under New York law **individual legatees** such as Schoeps have no standing in their personal capacities to litigate ownership of estate property when a **personal representative** has been appointed -- or will be appointed as required by <u>Schoeps v. Webber</u>.

The Museums' reliance upon <u>Roques</u> is also misplaced. In <u>Roques</u>, the court allowed a party who claimed "that under French law title to and the right of possession of all of the assets of the decedent vested immediately in her as sole legatee" to maintain an action in her individual rather than representative capacity. 66 N.Y.S.2d at 348. Because the court in <u>Roques</u> determined

5

that the appointment of a personal representative was not required -- unlike <u>Schoeps v. Webber</u> -- the <u>Roques</u> decision is necessarily inapposite and <u>McQuaide</u> controls.

**B.    The <u>Schoeps v. Webber</u> Ruling Negates -- and Renders Moot -- Any Justiciable Controversy as Required for Declaratory Relief**

The Schoeps ruling obviates the requirement of the Declaratory Judgment Act that declaratory relief is not appropriate unless there is an "actual controversy" between the parties.[3] The Supreme Court recently reiterated the time worn criteria for ascertaining whether a requisite case or controversy exists for declaratory relief: "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Medimmune, Inc. v. Genentech</u>, 127 S.Ct. 764, 771 (2007) (citing <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)). The authors of 12 Moore's Federal Practice (Third Edition) have expressed this criterion as follows: "[s]tated differently, declaratory relief is appropriate when and only when one or both parties have pursued a course of conduct that will result in imminent or inevitable litigation unless the issue is resolved by declaratory relief." 12 James Wm. Moore <u>et al.</u>, "Moore's Federal Practice Third Edition" § 57.22[2](c) at 57-52 (2007). And "[i]f there is no actual controversy there is no discretionary action that a court can take." <u>Id</u>. at § 57.22[1].

Beyond question the Museums are not embroiled in any "controversy" within the meaning of these authorities. First, Schoeps in his personal capacity never made a demand upon the Museums for the return of the Paintings: counsel made the demand on behalf of the **heirs collectively**. Nor did Schoeps ever imply in the November 1 letters that **he** would sue the Museums if they refused to return the Paintings. So Schoeps -- in his individual capacity --

---

[3] The Declaratory Judgment Act, 28 U.S.C. § 2201(a), prescribes in relevant part that [i]n a case of <u>actual controversy</u> within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration...." (Emphasis supplied)

simply has no stake in this matter.

Moreover, the court in Schoeps v. Webber precluded any threat that Schoeps -- either in his personal capacity or as a supposed representative of the estate -- might sue the Museums for the return of the Paintings. So it scarcely can be said that Schoeps personally has "pursued a course of conduct that will result in imminent or inevitable litigation." Schoeps in his personal capacity has pursued no course of conduct against the Museums whatsoever. The real adversaries of the Museums -- and claimants to the Paintings -- are the heirs collectively, and they have yet to be constituted as a juridical entity, although they are moving expeditiously to qualify an appropriate personal representative.

To the extent, then, that there ever was a justiciable controversy between Schoeps and the Museums regarding the ownership of the Paintings (which there was not), the Schoeps v. Webber ruling -- by negating Schoeps' status as a judicially viable plaintiff -- rendered that controversy moot. Courts, of course, will not award declaratory relief when a case has become moot. 10B Charles Alan Wright et. al. "Federal Practice and Procedure" § 2757 at 495 (1998). Moreover, "the presence of a controversy must be measured at the time the court acts. It is not enough that there may have been a controversy ...if subsequent events have put an end to the controversy." Id.

Courts consistently have recognized that an intervening judicial decision -- such as the Schoeps v. Webber ruling -- may moot a controversy and thereby negate the predicate for declaratory relief. See, e.g., Enrico's Inc. v. Rice, 730 F.2d 1250, 1253 (9th Cir. 1984) (ruling that a judicial decision invalidating the pricing scheme of an administrative agency mooted a subsequent declaratory challenge to the scheme and observing that "[i]n the case at bar we cannot see the threat or immediate injury to plaintiff that is necessary to demonstrate the existence of a case or controversy"); Watkins v. Chicago Housing Authority, 406 F.2d 1234, 1235-36 (7th Cir. 1969) (ruling that when a municipal housing authority settled lawsuits that restored tenants to their premises, a declaratory challenge by the tenants to the legality of their pending eviction had become mooted).

7

Correspondingly, because the <u>Schoeps</u> decision vitiated any legal capability of Schoeps to sue the Museums to recover the Paintings, it thereby precluded any possibility that Schoeps might sue them and so mooted any potential controversy.

### C. Schoeps Has Rendered any Controversy Moot by Disclaiming any Intention in His Personal Capacity to Sue the Museums to Recover the Paintings

Schoeps has negated any controversy by disclaiming any intention to sue the Museums in his personal capacity to recover the Paintings. As the authors of 10B Wright & Miller "Federal Practice and Procedure" declare, there can be no controversy "if the opposing party disclaims the assertion of countervailing rights. A case is moot when the issue presented no longer are "live" or the parties no longer have a legally cognizable interest in the outcome." 10B Charles Alan Wright et. al., "Federal Practice and Procedure" § 2757 at 495 (1998); <u>see also</u> <u>Beckett v. Marks</u>, 358 F. Supp. 1180, 1184 (D.C.N.Y 1973) (observing that "a statement by the United States that it does not intend to violate the claimed [First Amendment] rights of the plaintiff can suffice to make the case moot").

Schoeps has expressly disclaimed any intention in the immediate future to sue the Museums in his personal capacity. (<u>See</u> accompanying Reply Declaration of John J. Byrne, Jr. ¶ 2-3). Schoeps' disclaimer obviates the concreteness and immediacy necessary to constitute a justiciable controversy and thereby renders any potential controversy moot.

### D. Even Assuming that the Museums Were Parties to a Justiciable Case or Controversy -- Which They Never Were -- the Court Should Deny their Petition for Declaratory Relief Because It Would Not Clarify the Legal Issues or Resolve the Controversy Concerning Who Owns the Painting

Even if the Court had a justiciable controversy before it -- which it does not -- the Court nonetheless should deny the petition of the Museums for a declaratory judgment because the Museums can satisfy neither of the two criteria courts consider in awarding relief. The U.S. Court of Appeals for the Second Circuit repeatedly has stated these criteria as follows:

"(1) whether the judgment will serve a useful purpose in clarifying or settling the legal

issues involved; and

(2) whether the judgment would finalize the controversy and offer relief from uncertainty."

See, e.g., Dow Jones & Company, Inc. v. Harrods Limited, 346 F.3d 357, 359 (2d Cir. 2003);
Continental Casualty Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir. 1992).

A declaratory ruling would not clarify or settle the relevant legal issues regarding who owns the Painting because the proper parties are not before the Court. As noted, the heirs collectively -- which comprise the estate of Mendelssohn-Bartholdy -- are the proper claimant to the Paintings, and not Schoeps in his personal capacity. The relevant legal issues cannot be framed until the estate of Mendelssohn Bartholdy -- represented by a judicially appointed personal representative -- is before the Court. The estate may have claims and defenses that Schoeps in his personal capacity is not entitled to assert.

Nor would a declaratory ruling against Schoeps personally "finalize" the controversy and remove uncertainty about who owns the Paintings. As the authors of 10B Charles Alan Wright "Federal Practice and Procedure" explain, "[o]ne of the most important considerations that may induce a court to deny declaratory relief is that the judgment would not settle the controversy between the parties...the courts look with disfavor on piecemeal litigation of the matters in controversy and may refuse declaratory relief on those grounds." 10B Charles Alan Wright et. al. "Federal Practice and Procedure" § 2759. As the Supreme Court recently stated, a litigant may not use a declaratory judgment action to obtain piecemeal adjudication that **would not finally and conclusively** resolve the underlying controversy. Calderon v. Ashmus, 523 U.S. 740, 749 (1998).

A declaratory ruling against Schoeps would not terminate litigation or resolve the question who owns the Paintings. The Museums admit that they "are not seeking a declaratory judgment

9

against the estate, but against Schoeps himself..." (Museums' Memorandum at 9). But -- as the court in <u>Schoeps v. Webber</u> made clear -- the claim to recover the Paintings belongs to the estate of Mendelssohn Bartholdy, and not to Schoeps. So a declaratory ruling against Schoeps will in no way "finalize" the controversy or relieve the Museums' uncertainty regarding who owns the Paintings.

## IV. CONCLUSION

For the foregoing reasons and those set forth in Defendant's Memorandum, the Court should dismiss with prejudice the Museums' Complaint for Declaratory Relief.

Respectfully submitted,

John J. Byrne, Jr. (JB-6687)
BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036

Telephone: (202) 857-9775
Facsimile: (202) 857-9799

BRESSLER AMERY & ROSS, P.C.
David. H. Pikus (DP-7846)
Kenneth M. Moltner (KM-7778)
David Smitham (DS-7778)
17 State Street
New York, New York 10004
Telephone: (212) 425-9300
Facsimile: (212) 425-9337

Attorneys for Defendant Julius H. Schoeps