UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MUSEUM OF MODERN ART, and THE SOLOMON R. GUGGENHEIM FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>JULIUS H. SCHOEPS,<br><br>Defendant. | 07 Civ.11074 (JSR) |

### DEFENDANT JULIUS H. SCHOEPS' MEMORANDUM OF LAW IN COMPLIANCE WITH THE COURT'S MARCH 25, 2008 ORDER

BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036
Attorneys for Plaintiff

BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004
Attorneys for Plaintiff

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION ............. 1

II.  STATEMENT OF FACTS ............................................................................................ 3

    A.   The Suspicious Circumstances Under Which the Museums Acquired Both Paintings ........................................................................................................... 3

    B.   The Decision and Rationale of the Supreme Court Why Schoeps in His Individual Capacity Lacks Standing to Prosecute a Claim to Recover the Painting ... 4

III. ARGUMENT ................................................................................................................ 6

    A.   The Law of New York -- Rather than the Law of Germany -- Determines the Ultimate <u>Legal Authority</u> of Schoeps to Be Sued in this Action Regarding The Ownership of the Painting .......................................................................... 6

        1.   The Court in <u>Schoeps v. Webber</u> Ruled that Schoeps Lacked Both the Legal Capacity as Well as Standing to Bring a Judicial Action to Reclaim the Painting and Thus to Litigate the Ownership of Estate Assets ... 6

        2.   Under New York Law, "Capacity" and "Standing" Are Distinct Concepts Both of Which a Party Must Satisfy in Order to Have the Requisite Legal Authority to Litigate a Particular Claim .......................................................... 7

        3.   If – as the Court in Schoeps v. Webber Ruled – a Personal Representative Must Be Appointed to Assert the Claim of the Mendelssohn-Bartholdy Heirs To Recover the Painting, Schoeps as an Individual Legatee Beyond Doubt Lacks Standing and Legal Capacity Under New York Law To Defend this Action ...................................................................................... 9

        4.   The Court Can Entertain This Action Only by Tacitly Overruling the Decision of Justice Acosta in <u>Schoeps v. Webber</u> Denying Schoeps Standing and Legal Capacity Under New York Law, and Finding Instead that the New York Court of Appeals Would Rule that the <u>Elghanayan</u> Decision Confers Standing and Legal Capacity Upon Schoeps Personally To Litigate Ownership of the Painting ................................................... 10

    B.   Because the Federal Declaratory Remedy Is Purely Discretionary -- and Yields to "Considerations of Practicality and Wise Judicial Administration" -- the Court Should Be All the more Circumspect Before Concluding that Schoeps Has the

    Requisite Legal Capacity or Standing Under New York Law to Litigate the Ownership of Estate Assets Such as the Painting ................................................................. 11

    1. The Museums Premise Their Entire Argument for a Declaratory Ruling Against Schoeps in His Personal Capacity Upon a Legal Theory that Is Demonstrably Specious as a Matter of Substantive New York State Probate Law ........................................................................................................ 11

    2. The Court Should Decline to Entertain this Action Because Relevant New York State Law is Unclear on the Pivotal Question of Schoeps' Standing to Litigate Ownership of the Painting in His Individual Capacity Under the Distinctive Circumstances of <u>Elghanayan</u> ....................................................... 12

    3. The Museums' Acknowledgement that Their Declaratory Claim Against Schoeps in His Personal Capacity Will Not Resolve Who Owns the Painting Militates Strongly Against the Court Entertaining this Action ....... 12

    4. Because the Estate Has Not Yet Been Constituted as a Juridical Entity and Schoeps -- in His Personal Capacity -- Has Renounced Any Intention to Sue the Museums to Recover the Paintings, Litigation Against the Museums Is Neither Imminent Nor Even Currently Viable Thereby Obviating Any Immediate "Need" of the Museums for a Declaratory Ruling ...................................................................................................... 13

    5. Because the Museums Acquired Both Paintings Under Suspicious Circumstances and in Flagrant Breach of Their Fiduciary Duties as Trustees to U.S. Taxpayers to Take Affirmative Precautions Against Introducing Stolen or Nazi-Confiscated Artworks into Publicly Supported Collections – and Have Known From Inception that the Paintings Were Likely Stolen – They Have Fortified Their Equitable Entitlement to a Declaratory Remedy .............................................................. 13

IV. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Federal Cases**
Abbot Laboratories v. Gardner, 387 U.S. 136 (1967) .................................................................. 14

**State Cases**
Brandon v. Columbian Mutual Life Insurance Company, 694 N.Y.S.2d 134 (2d Dept.1999) ....... 9
Carper v. Nusbaum, 825 N.Y.S.2d 55 (App.Div.2d Dept.2006) ...................................................... 8
Community Board 7 of the Borough of Manhattan v. Schaffer, 639 N.E.2d 1 (N.Y.1994) ........... 7
Elghanayan v. Elghanayan, 598 N.Y.S.2d 524 (1st Dept. 1993) ............................................... 2, 5
Gaentner v. Benkovich, 795 N.Y.S.2d 246 (2d Dept. 2005) ......................................................... 10
Graziano v. County of Albany, 821 N.E.2d 114 (N.Y. 2004) ......................................................... 8
Jackson v. Kessner, 618 N.Y.S.2d 635 (1st Dept. 1994) ................................................................ 9
McQuaide v. Perot, 223 N.Y. 75 (1918) ......................................................................................... 9
Rovello v. Klein, 775 N.Y.S.2d 899 (2d Dept. 2004) .................................................................... 10
Schoeps v. The Andrew Lloyd Webber Art Foundation, 2007 NY Slip Op 52183U (N.Y Sup. Ct. Nov. 19, 2007) ........................................................................................................................... 1
Silver v. Pataki, 755 N.E. 2d 842 (N.Y. 2001) ............................................................................... 7
Solomon R. Guggenheim Foundation v. Lubell, 569 N.E.2d 426 (N.Y. 1991) .............................. 7
Swetson v. Dittner, 439 A.2d 334 (Conn. 1981) ........................................................................... 13
Wierdsma v. Markwood Corporation, 384 N.Y.S.2d 836 (1st Dept. 1976) ................................... 9

**Federal Rules**
Fed.R.Civ.P. 17(b) .................................................................................................................. 1, 6, 8

**Other Authorities**
Kennedy, John E, *Federal Rule 17(b) and (c): Qualifying To Litigate in Federal Court* (43 Notre Dame L. Rev.273, 289 (1968)) ................................................................................................. 8
12 James Wm. Moore et al, *Moore's Federal Practice* §57.42[5] (3d Ed. (2007)) ................... 12
10B Charles Alan Wright *Federal Practice and Procedure* §2579 (1998) ............................. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MUSEUM OF MODERN ART, and THE SOLOMON R. GUGGENHEIM FOUNDATION<br><br>Plaintiffs,<br><br>-v-<br><br>JULIUS H. SCHOEPS,<br><br>Defendant. | 07 Civ. 11074 (JSR) |

## I. INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION

Defendant Julius H. Schoeps (Schoeps) -- by his attorneys -- responds to the Order that the Court entered on March 25, 2008 instructing the parties to address the questions whether Schoeps' capacity under Fed.R.Civ.P. 17(b) to be sued should be determined by the law of New York or Germany, and whether the identify of this proceeding as one for declaratory relief should influence the Court's determination.

New York law determines Schoeps' **legal authority** to be sued because New York law decides whether Schoeps in his individual capacity has the requisite standing[1] and legal capacity to litigate ownership of the Paintings. While the concepts of "capacity" and "standing" under New York law are interrelated, they nonetheless are analytically distinct, and a party needs both to have the necessary legal authority to litigate a particular claim.

The Supreme Court in Schoeps v. The Andrew Lloyd Webber Art Foundation, 2007 NY Slip Op 52183U, 2007 WL 4098215 (N.Y. Sup. Ct. Nov. 19, 2007) (Schoeps v. Webber)

---

[1] In its March 25 Order, the Court stated that Schoeps' motion to dismiss is grounded in his lack of legal capacity to be sued. In fact, Schoeps' motion is based on lack of legal capacity and standing. Accordingly, this memo addresses the application of New York law to both of these interrelated issues.

determined that Schoeps in his individual capacity lacked standing and the legal capacity to litigate the ownership of the Paintings. The court ruled that any right of Schoeps to recover the disputed painting depends upon whether the estate of Paul von Mendelssohn-Bartholdy (Estate) has a viable judicial remedy to reclaim it, and that a personal representative must be appointed to make this determination and to represent the interests of the appropriate heirs. The Court of Appeals of New York long has made clear that when a personal representative is appointed to administer the affairs of an estate, individual legatees such as Schoeps lack standing and the legal capacity to litigate the ownership of estate assets, both in their individual capacities and also as putative representatives of the estate.

In Schoeps v. Webber, Schoeps maintained that Elghanayan v. Elghanayan, 598 N.Y.S.2d 524 (1st Dept. 1993) affords an exception to this principle, and enables individual legatees to litigate the ownership of a decedent's property when the decedent (and thus his Estate) lacked a viable judicial remedy to reclaim it, and where the cause of action sued upon thus accrued after the decedent's death. Schoeps argued that causes of action sued upon (conversion and replevin) accrued on November 6, 2007, upon demand for the painting and the Webber Foundation's refusal to return it. The Supreme Court in Schoeps v. Webber, however, rejected this contention and Schoeps has appealed this ruling to the Appellate Division.

The discretionary and equitable character of the federal declaratory remedy should disincline the Court to conclude that under New York law Schoeps has either the requisite legal capacity or standing to litigate ownership of the Paintings. The Museums' declaratory claim against Schoeps is premised upon a baseless argument that repudiates the elemental and time-worn principle of New York State probate law that when an estate requires a personal representative the individual legatees lose all authority to sue -- or be sued -- regarding the ownership of estate assets.

Moreover, the Museums have failed to demonstrate that they have any compelling need at

2

this juncture for a declaratory remedy against Schoeps in his personal capacity because Schoeps has renounced any intention to sue them and the Estate has yet to be constituted as a juridical entity.

In addition, the Museums concede that their action -- even if successfully prosecuted to conclusion -- will not resolve the controversy regarding who owns the Paintings. Also, this action will engender the very problems that New York probate procedures and the appointment of a personal representative were intended to avoid -- to ensure an orderly administration of justice, that all proper parties are before the court, the interest of each is adequately protected, and that all are bound by any judgment. If this matter is allowed to go forward, the Museums could be proceeding against individual legatee Schoeps personally at the same time the Estate is seeking to have a "personal representative" appointed to vindicate the Estate's right to the Paintings.

Finally, because the Museums -- in breach of their fiduciary duties as trustees to the public -- have known from inception that both Paintings were likely stolen, they have forfeited any equitable right to a declaratory remedy. The inability of the Museums to show either that they are entitled to a declaratory ruling or that such ruling will resolve who owns the Paintings should dissuade the Court from entertaining an action with potentially calamitous consequences for the Estate, its constituent heirs, as well as established New York State probate law and policy.

## II. STATEMENT OF FACTS

Schoeps incorporates by reference the Statements of Facts contained in Memorandum of Points and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief ("Schoeps' Memorandum") and Reply Memorandum of Points and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief (Reply Memorandum) filed earlier in this proceeding.

### A. The Suspicious Circumstances Under Which the Museums Acquired Both Paintings

Schoeps encourages the special attention of the Court to Schoeps' Memorandum, p. 6-12,

3

relating that "(T)he Museums ignored the Nazi-era provenance of the Paintings when the Paintings were donated to the Museums." Pages 6-9 detail -- in the very words of MoMA benefactor and trustee William S. Paley who acquired *Boy Leading Horse* -- the extremely suspicious circumstances under which Paley bought this painting in 1936 in Switzerland and later donated it to MoMA. Schoeps' Memorandum, p. 8-12, relates -- through the personal notes of Guggenheim benefactor and donor Justin K. Thannhauser -- that Thannhauser acquired *Le Moulin de la Galette* from Mendelssohn-Bartholdy and confirm that when the Guggenheim received this Painting as a charitable bequest from Thannhauser in 1976 it was well aware of its conspicuous Nazi-era provenance.

### B. The Decision and Rationale of the Supreme Court Why Schoeps in His Individual Capacity Lacks Standing to Prosecute a Claim to Recover the Painting

In addition, Schoeps notes that the decision of the Supreme Court in Schoeps v. Webber made clear that Schoeps lacks both the legal capacity **as well as standing** to litigate the ownership of the disputed Picasso painting *The Absinthe Drinker (Angel Fernandez de Soto)*:

> It is well established in New York that a person who has not obtained letters as personal representative **lacks standing** or the legal capacity to commence an action on behalf of an estate...In addition, EPTL §13-3.5 states that **in order to have standing** and legal capacity to bring a claim on behalf of an estate in New York, a plaintiff must have been appointed as a personal representative in the United States, as opposed to a non-U.S. jurisdiction.

Schoeps v. Webber, at 2-3.[2]

Moreover, the court dismissed Schoeps' claim to recover the controverted painting expressly upon his lack of judicial standing: "(t)hus, based on all the foregoing reasons, the instant action is

---

[2] The Court of Appeals of New York has made clear for more than 90 years that if a personal representative is appointed to represent the heirs or an estate -- or must be so appointed -- the legatees in their individual capacities (such as Schoeps in this proceeding) have neither the legal capacity or standing to sue or to be sued concerning the ownership of assets belonging to the estate. See pages 9-10, infra.

4

dismissed inasmuch as plaintiff does not have standing to pursue this action." Id. at 4.

The Supreme Court underscored further that any entitlement that either Schoeps or the other Mendelssohn-Bartholdy heirs had to the disputed painting **derived solely from the estate** of Mendelssohn-Bartholdy: "(t)hus, the only way that plaintiff and the other heirs have any ownership rights to the painting is if Paul von Mendelssohn-Bartholdy's estate was the rightful owner of the painting and these alleged heirs...inherited rights to the painting. Id. at 3.

Based upon its review of the record, the Supreme Court questioned whether the legitimate heirs to the painting were the descendants of Mendelssohn-Bartholdy or the descendants of his widow Elsa, since some evidence indicated that Elsa may have acquired the Painting from Paul before it was sold. Id. at 3. The court declared that these considerations made it all the more imperative that the New State Surrogate's Court -- which the New York Legislature has invested with special authority and expertise in probate matters -- ascertain the rightful heirs and qualify an appropriate personal representative to represent them:

> This scenario highlights the complexities involved in determining rightful heirs to an estate, which is why the New York Legislature designated the Surrogate's Court as the gatekeeper for actions involving estate-related claims. The appointment of a personal representative protects all the parties from the after-the-fact claims from persons who alleged not to have assigned their interest to plaintiff. Id. at 4.

The court also rejected Schoeps' reliance upon Elghanayan v. Elghanayan, 598 N.Y.S.2d 524 (1st Dept. 1993), as affording Schoeps a judicial remedy in his personal capacity to recover the Painting. Schoeps had invoked Elghanayan for the proposition that when (and in the admittedly unusual instance) that a judicial action for the recovery of property belonging to a decedent does not accrue until after the decedent died, the claim to recover such property does not (and indeed cannot) belong to the decedent's estate but instead can be prosecuted by the heirs in their individual capacities. The court, however, disagreed with this argument and observed that regardless whether Mendelssohn-Bartholdy had a viable judicial remedy to reclaim the Painting during his lifetime, "the wrong nonetheless occurred during his lifetime and thus any rights to the painting necessarily

5

belonged to his estate at the time of his death." Schoeps v. Webber, 2007 WL 4098215 at 3.[3]

## III. ARGUMENT

### A. The Law of New York -- Rather than the Law of Germany -- Determines the Ultimate Legal Authority of Schoeps to Be Sued in this Action Regarding the Ownership of the Painting

#### 1. The Court in Schoeps v. Webber Ruled that Schoeps Lacked Both the Legal Capacity as Well as Standing to Bring a Judicial Action to Reclaim the Painting and Thus to Litigate the Ownership of Estate Assets

In Schoeps v. Webber, the Supreme Court ruled that Schoeps as an individual lacked **both** the capacity and as well standing to litigate ownership of the Paintings on behalf of the Estate: "(i)t is well established in New York that a person who has not obtained letters as personal representative lacks standing or the legal capacity to commence an action on behalf of an estate." 2007 WL 4098215 at 2. The court expressly dismissed Schoeps' claim because he lacked the requisite standing: "[t]hus, based on all the foregoing reasons, the instant action is dismissed inasmuch as plaintiff does not have standing to pursue this action." Id. at 4.

This distinction between "capacity" and "standing" is important for several reasons. First, as discussed, infra, under New York law these concepts -- although related -- are analytically distinct, and a party must satisfy both in order to have the requisite legal authority to litigate a particular matter. Accordingly, regardless whether under Fed.R.Civ.P 17(b) New York or German law determines Schoeps' legal capacity to sue or be sued, Schoeps lacks the legal authority to be sued regarding ownership of the Paintings because he lacks the requisite standing under New York law.

---

[3] Schoeps maintains that the "harm" under New York law occurred when the Webber Foundation refused the Mendelssohn-Bartholdy heirs' demand for the return of the painting. Under New York's "demand and refusal" rule, the Webber Foundation's possession of the artwork was lawful until that time. See Solomon R. Guggenheim

6

Second, because Schoeps requires standing in addition to legal capacity in order to litigate ownership of the Paintings, New York law -- rather than German law -- determines ultimately whether Schoeps has the necessary legal authority to be sued because New York law determines whether Schoeps has the requisite standing.

Finally, the distinction between "capacity" and "standing" is important under New York law because -- as the court in Schoeps v. Webber intimated and as discussed infra -- New York law long has recognized that when a personal representative has been (or must be) appointed to represent the heirs of an estate, the individual legatees (such as Schoeps) lack both the legal capacity as well as standing **either** as individuals or as putative representatives of the estate to litigate the ownership of estate assets.

### 2. Under New York Law, "Capacity" and "Standing" Are Distinct Concepts Both of Which a Party Must Satisfy in Order to Have the Requisite Legal Authority to Litigate a Particular Claim

New York courts consistently have recognized that the concepts of "capacity" and "standing" -- while interrelated -- are distinctive and that a party must have both in order to have authority to litigate a particular claim. As the court in Silver v. Pataki, 755 N.E. 2d 842, 846 (N.Y. 2001) explained, "(c)apacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing." While the concept of capacity (or lack thereof) "does not admit of precise or comprehensive definition" it often "depends purely upon a litigants' status. A natural person's status as an infant, an adjudicated incompetent or, formerly, a felony prisoner, for example, could disqualify that individual from seeking relief in court...." Community Board 7 of the Borough of Manhattan v. Schaffer, 639 N.E.2d 1, 4 (N.Y.1994).

"Standing", on the other hand, "is and element of the larger question of 'justiciability'" and is "[o]ften informed by considerations of public policy"... (Id. at 3.) To demonstrate standing,

---

Foundation v. Lubell, 569 N.E.2d 426 (N.Y. 1991).

7

plaintiffs must show both that they have been injured, and also that the individual law or statute in question was intended to protect the particular interest that they are asserting. As the court instructed in Carper v. Nusbaum, 825 N.Y.S.2d 55, 63 (App.Div.2d Dept.2006):

> Specifically, this familiar two-part test requires a plaintiff first to establish that he or she will actually be harmed by the challenged action...Second, the injury a plaintiff asserts must fall within the zone of interests sought to be promoted or protected by the statutory provision or recognized common-law relationship pursuant to which a defendant has acted...

Moreover, "(w)ithout **both** capacity and standing, a party lacks authority to sue". Graziano v. County of Albany, 821 N.E.2d 114, 117 (N.Y. 2004).(Emphasis supplied).

Accordingly, to litigate ownership of the Paintings, Schoeps must have both the requisite legal capacity as well as the necessary standing under New York law. The conclusion that New York rather than German law determines ultimately whether Schoeps has the requisite legal authority to be sued regarding ownership of the Paintings is consonant with the observation that the purpose of Fed.R.Civ.P. 17(b) regarding capacity is merely uniformity, and that courts sometimes have defined the relevant issue as substantive and so governed by the law of the forum:

> The purpose of the general clause testing individual capacity by domicile law is to give one uniform test for individuals, regardless of the particular federal court in which they litigate. Even though this is a change from previous practice, the new test of domicile has had little impact in litigated cases since 1938. The test has sometimes been ignored by defining the problem at hand as substantive, the resolution thus being dependent upon the application of the law of the forum.

See John E. Kennedy, "Federal Civil Rule 17(b) and (c):Qualifying to Litigate in Federal Court", 43 Notre Dame L. Rev.273, 289 (1968).

### 3. If -- as the Court in Schoeps v. Webber Ruled -- a Personal Representative Must Be Appointed to Assert the Claim of the Mendelssohn-Bartholdy Heirs To Recover the Painting, Schoeps as an Individual Legatee Beyond Doubt Lacks Standing and Legal Capacity Under New York Law To Defend this Action

For more than 90 years the New York Court of Appeals has made clear that when a personal representative is appointed to administer the affairs of an estate, the individual legatees (such as Schoeps) **as a matter of law** are precluded from litigating the ownership of estate property either in their own right or on behalf of the estate:

> It is elementary that the executors or administrators represent the legatees, creditors and distributees in the administration of the estate; that their duty is to recover the property of the estate; and that the legatees and next of kin are concluded by their determination in respect to actions therefore and have no independent cause of action, either in their own right or the right of the estate.

McQuaide v. Perot, 223 N.Y. 75, 79 (1918).

New York courts consistently have characterized this inability of individual legatees to litigate the ownership of estate assets when a personal representative has been appointed as a lack of standing. See, e.g., Wierdsma v. Markwood Corporation, N.Y.S.2d 836 (App.Div. 1st Dept. 1976) ("Plaintiffs lack standing to sue...Plaintiff's claim ...is in reality, merely one to recover estate assets. Such a claim is maintainable by the executors of the estate. The legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property"); Brandon v. Columbian Mutual Life Insurance Company, 694 N.Y.S.2d 134, 134 (App.Div. 2d Dept.1999) ("plaintiff lacks standing to sue on behalf of the decedent's estate since she had not received letters of administration...."); see also Jackson v. Kessner, 618 N.Y.S.2d 635, 637 (App. Div. 1st Dept. 1994) ("[w]hile plaintiff is both the sole beneficiary and the executrix of her mother's estate, the law is clear that, in her individual capacity as beneficiary,

9

plaintiff could have no part in that action...The legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property...."); Rovello v. Klein, 775 N.Y.S.2d 899, 900 (App. Div. 2d Dept. 2004) ("[i]f there is any right of recovery ... such right is an asset of the estate and an action may be maintained thereon only by a duly authorized representative of the estate"); Gaentner v. Benkovich, 795 N.Y.S.2d 246, 249 (App. Div. 2d Dept. 2005) ("[a]n executor, who is charged with the duty of recovering the property of the estate, must represent the legatees in the administration of the estate, and legatees have no independent right to maintain an independent cause of action for the recovery of property of the estate...").

There can be no doubt then -- and under well-established New York "black letter law" -- that if the court in Schoeps v. Webber correctly ruled that only a personal representative of the rightful heirs can sue to recover the Paintings, then Schoeps in his individual capacity lacks standing to litigate ownership of the Paintings and to be sued in this action.

    4. **The Court Can Entertain This Action Only by Tacitly Overruling the Decision of Justice Acosta in Schoeps v. Webber Denying Schoeps Standing and Legal Capacity Under New York Law, and Finding Instead that the New York Court of Appeals Would Rule that the Elghanayan Decision Confers Standing and Legal Capacity Upon Schoeps Personally to Litigate Ownership of the Painting**

Only by tacitly overruling the decision of the Supreme Court in Schoeps v. Webber and ruling that the Elghanayan decision confers standing and legal capacity on Schoeps in his personal capacity to litigate ownership of the Paintings can the Court permit this proceeding to go forward. It is worth noting that Schoeps' has invoked Elghanayan for the singular proposition that in the rare instance when a decedent dies before a judicial remedy exists to afford his estate a remedy to reclaim stolen property, the right to recover such property belongs to the individual legatees in their

10

personal capacities rather than to the estate, and correspondingly -- then -- no personal representative need be appointed to sue to recover such property. As noted, Justice Acosta rejected this argument, and found that because the wrong causing Mendelssohn-Bartholdy to lose the painting occurred during his lifetime, the remedy to reclaim the painting belongs to his estate. Schoeps v. Webber, 2007 WL 4098215 at 3.

    Schoeps has filed a Notice of Appeal of this ruling.

### B. Because the Federal Declaratory Remedy Is Purely Discretionary -- and Yields to "Considerations of Practicality and Wise Judicial Administration" -- the Court Should Be All the More Circumspect Before Concluding that Schoeps Has the Requisite Legal Capacity or Standing Under New York Law to Litigate the Ownership of Estate Assets Such as the Painting

#### 1. The Museums Premise Their Entire Argument for a Declaratory Ruling Against Schoeps in His Personal Capacity Upon a Legal Theory that Is Demonstrably Specious as a Matter of Substantive New York State Probate Law

The Museums maintain that they are entitled to prosecute a declaratory claim against Schoeps in his individual capacity regarding ownership of the Paintings -- notwithstanding that a personal representative must be appointed to represent the estate of Mendelssohn-Bartholdy, as the court ruled in Schoeps v. Webber. (Museums Memorandum at pages 8-10). As demonstrated above, however, this argument is patently erroneous because it repudiates the McQuaide decision and its many progeny. These authorities make clear that if a personal representative must be appointed to administer an estate, individual legatees such as Schoeps lack standing -- both in their individual capacities and as putative representatives of the estate -- to litigate the ownership of estate assets.

The inability of the Museums to support their petition for a declaratory ruling against Schoeps in his personal capacity with a legal argument that is not **conspicuously wrong** as a matter of well-established black letter New York probate law counsels against the Court entertaining this action.

### 2. The Court Should Decline to Entertain this Action Because Relevant New York State Law is Unclear on the Pivotal Question of Schoeps' Standing to Litigate Ownership of the Painting in His Individual Capacity Under the Distinctive Circumstances of <u>Elghanayan</u>

As the authors of 12 James Wm. Moore et al. Moore's Federal Practice §57.42[5] (3d Ed. 2007) advise, "(w)hen a federal court must interpret state law and that law is unclear, the federal court should decline to render a declaratory judgment based on an uncertain interpretation of the law." While the <u>McQuaide</u> decision and its progeny rebuke the Museums' argument that the Court can entertain this action notwithstanding that a personal representative must be appointed to represent the Estate, whether -- on the other hand -- the <u>Elghanayan</u> decision necessarily confers standing and legal capacity upon Schoeps to litigate ownership of the Paintings in his individual capacity is not well-established under New York law.  See <u>Schoeps v. Webber</u>.  As noted, Schoeps has appealed the court's interpretation of <u>Elghanayan</u> to the Appellate Division.

That the answer to this question is less than clear under New York law -- and an appropriate New York State appellate court will address it -- favor the Court declining this action.

### 3. The Museums' Acknowledgement that Their Declaratory Claim Against Schoeps in His Personal Capacity Will Not Resolve Who Owns the Painting Militates Strongly Against the Court Entertaining this Action

As Schoeps related in his Reply Memorandum, the U.S. Court of Appeals for the Second Circuit repeatedly has instructed that declaratory relief should not be accorded unless it will "finalize the controversy and offer relief from uncertainty." (Reply Memorandum at 8-10 and authorities cited therein.)  As noted, "courts look with disfavor on piecemeal litigation of the matters in controversy and may refuse declaratory relief on those grounds." (Citing 10B Charles Alan Wright "Federal Practice and Procedure" §2579 (1998).

The Museums, however, arrogate a right to a declaratory ruling against Schoeps even though they admit that a declaration that Schoeps in his individual capacity does not own the Paintings will not be binding against the other heirs, will not resolve the ultimate question of who

12

owns the Paintings, nor will it forestall future piecemeal litigation. (Museums Memorandum at page 10, citing <u>Swetson v. Dittner</u>, 439 A.2d 334, 336 (Conn. 1981) for the proposition that "only parties to an action to quiet title are bound by the judgment", and other authorities for the contention that not all parties with an interest in property need be joined in a quiet title action).

The irony of the Museums' position -- of course -- is that the court in <u>Schoeps v. Webber</u> **already has ruled** that Schoeps in his individual capacity lacks a judicially enforceable claim to the Painting. Of what value then is a declaratory ruling by this Court to the same effect which the Museums concede will not be binding upon the Estate or other heirs and will not resolve the ownership question?

> **4. Because the Estate Has Not Yet Been Constituted as a Juridical Entity and Schoeps -- in His Personal Capacity -- Has Renounced Any Intention to Sue the Museums to Recover the Paintings, Litigation Against the Museums Is Neither Imminent Nor Even Currently Viable Thereby Obviating Any Immediate "Need" of the Museums for a Declaratory Ruling**

As Schoeps pointed out in his Reply Memorandum, because Schoeps has disclaimed any intention to sue the Museums to recover the Paintings, he has mooted any controversy that the Museums have with **Schoeps in his personal capacity** regarding who owns the Paintings. (Reply Memorandum at 8). Accordingly, the Museums lack a concrete and immediate controversy with Schoeps -- likely to lead to imminent litigation -- which they need to justify declaratory relief.

> **5. Because the Museums Acquired Both Paintings Under Suspicious Circumstances and in Flagrant Breach of Their Fiduciary Duties as Trustees to U.S. Taxpayers to Take Affirmative Precautions Against Introducing Stolen or Nazi-Confiscated Artworks into Publicly Supported Collections -- and Have Known From Inception that the Paintings Were Likely Stolen -- They Have Forfeited Their Equitable Entitlement to a Declaratory Remedy**

The Unclean Hands of the Museums in acquiring both Paintings precludes them from seeking a declaratory remedy against Schoeps. The U.S. Supreme Court -- in <u>Abbot Laboratories v.</u>

13

Gardner, 387 U.S. 136, 155 (1967) -- observed that "the declaratory judgment and injunctive remedies are equitable in nature, and other equitable defenses may be imposed." Accordingly, as the authors of 10B Charles Alan Wright, et al. "Federal Practice and Procedure" (1998) relate, in deciding whether to accord declaratory relief courts consider "any inequitable conduct on the part of the party seeking the declaration." Id. at §2759.

The circumstances under which the Museums admittedly acquired each Painting denote bad faith, as well as breaches of the fiduciary duties of care and precaution as public trustees which equitably preclude the Museums from prosecuting a declaratory action against Schoeps. Schoeps related these circumstances at Schoeps' Memorandum, p. 6-12.

MoMA benefactor and former trustee William S. Paley -- who donated *Boy Leading Horse* to MoMA -- described (and all but celebrated) the suspicious circumstances under which he bought the Painting in Switzerland in 1936 from art dealer Albert Skira, who was collaborating with art dealer Justin Thannhauser on the sale. According to Paley, Skira offered him this "priceless" Picasso masterpiece at a "quite modest" price but refused to identify the owner. (Reply Memorandum at 7-8). Most tellingly, Skira neglected to relate that the Painting recently belonged to the prominent Jewish banker and modern art collector Paul von Mendelssohn-Bartholdy of Berlin, Germany. Had Thannhauser and Skira acquired the Painting from Mendelssohn-Bartholdy in a legitimate arms-length transaction, they would have had every incentive to include Mendelssohn-Bartholdy's name in the provenance because the Painting's association with such an esteemed collector would have enhanced its commercial value. But instead Skira sold the Painting to Paley as if he had much to hide, and Paley could not have cared less. (See Schoeps' Memorandum at pages 7-8).

That both Museums -- as tax-payer supported public "trustees" no less -- have known from inception that they likely were acquiring stolen property disqualifies them from equitable relief, repudiating any right that they otherwise might have to hasten an action to remove a "cloud" from

14

their putative ownership or to "clear title" to the Paintings.

## IV. CONCLUSION

For the foregoing reasons, and for those set forth in Schoeps' Memorandum and Reply Memorandum, the Court should dismiss or stay this proceeding.

Respectfully submitted,

/s/ John J. Byrne, Jr.

John J. Byrne, Jr. (JB-6687)
BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036

Telephone: (202) 857-9775
Facsimile: (202) 857-9799

BRESSLER AMERY & ROSS, P.C.
David H. Pikus (DP-7846)
Kenneth M. Moltner (KM 7778)
David Smitham (DS-7778)
17 State Street
New York, New York 10004

Telephone:(212) 425-9300
Facsimile:(212) 425-9337

Attorneys for Defendant Julius H. Schoeps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

THE MUSEUM OF MODERN ART, et al.,           07 Civ. 11074 (JSR)

               Plaintiffs,           **AFFIDAVIT OF SERVICE**

- against -

JULIUS H. SCHOEPS,

               Defendant.
_____

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NEW YORK  )

       Alicia Kereczman, being sworn, says:

       1.    I am not a party to the within action, I am over eighteen (18) years of age and I reside in Staten Island, New York.

       2.    On April 1, 2008, I caused a true copy of the annexed DEFENDANT JULIUS H. SCHOEPS MEMORANDUM OF LAW IN COMPLIANCE WITH THE COURT'S MARCH 25, 2008 ORDER to be sent by hand to the following person at the following address:

               Evan A. Davis, Esq.
               Cleary Gottlieb Steen & Hamilton, LLP
               1 Liberty Plaza, 42nd Floor
               New York, NY  10006

_____
Alicia Kereczman

Sworn to before me this
1st day of April 2008

_____
Notary Public

KENNETH M. MOLTNER
Notary Public, State of New York
No. 02MO5052599
Qualified in New York County
Commission Expires Nov. 27, 20__