UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| THE MUSEUM OF MODERN ART, and THE SOLOMON R. GUGGENHEIM FOUNDATION, | ) ) ) ) | 07 Civ. 11074 (JSR) |
| Plaintiffs, | ) ) ) | |
| BOY LEADING A HORSE, and LE MOULIN DE LA GALETTE, Two Paintings by Pablo Picasso, | ) ) ) | |
| Plaintiffs-in-rem, | ) ) ) | |
| v. | ) ) ) | |
| JULIUS H. SCHOEPS, | ) ) | |
| Defendant. | ) ) ) ) | |

**DEFENDANT JULIUS H. SCHOEPS' REPLY MEMORANDUM OF LAW IN COMPLIANCE WITH THE COURT'S MARCH 25, 2008 ORDER**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES..................................................................................................ii

I. INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION.............1

II. STATEMENT OF FACTS.................................................................................................2

III. ARGUMENT......................................................................................................................4

    A. Because the Jurisdiction of this Court is Founded Exclusively Upon Diversity Of Citizenship the *Erie* Doctrine Requires the Court to Apply the Substantive Law of New York to Determine Whether the Museums May Sue Schoeps In His Personal Capacity for Declaratory Relief....................................................3

        1. The *Erie* Doctrine Requires the Court to Apply the Substantive Law of New York State to this Controversy .................................................3

        2. Under the *Erie* Doctrine New York State Probate Law is the Substantive State Law that Determines whether the Museums Can Maintain this Action Against Schoeps in His Personal Capacity .........................................4

        3. New York State Probate Law Precludes the Museums From Suing Schoeps in His Personal Capacity..........................................................................5

    B. In an Attempt to Evade the *Erie* Doctrine – and Substantive New York State Probate Law and Policy – the Museums Have Fabricated Fictive Bodies of Federal Law Which They Say Permit Them to Sue Schoeps in His Personal Capacity .............................................................................................8

        1. The Museums Have Concocted a Bogus "Federal Law of Quieting Title" and "Federal Law Defining Proper Parties"..............................................8

        2. The Judicial Decisions that the Museums Invoke for Their Argument Supporting Some Putative "Federal Law" of Quiet Title Repudiate the Existence of any Such Law ....................................................................8

    C. The *Erie* Doctrine Precludes Any Notion that the German Law of Capacity – Rather than New York State Probate Law of Standing – Can Determine Whether Schoeps Properly May Be Sued in This Proceeding...................................10

       1. Under the *Erie* Doctrine the German Law of Capacity Cannot Displace New York State Probate Law of Standing as Supplying the Relevant Rule of Decision in this Diversity Action ............................................................................10

       2. The Uncertainty of German Law Concerning Whether Schoeps' May Be Sued in His Personal Capacity should Disincline the Court Even More From Finding that German Law Supplies -- or Even Informs -- a Relevant Rule of Decision in this Controversy .................................................11

IV.    CONCLUSION ..................................................................................................................12

**Table of Authorities**

                                               **Page**

**Federal Cases**

Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938) ....... 1, 5

Goldsmith v. Gilliand, 24 F. 154(C.C. Or. 1885) ............. 9,10

Hanover Fire Insurance Co. v. Newman's Inc., 108 F.2d 561
  (1939)..................................................9

Pressman v. Estate of Steinworth, 860 F.Supp. 171
  (S.D.N.Y. 1994).........................................9

Spring v. Ohio Oil Co., 108 F.2d 560 (5th Cir. 1940) .......... 9

**State Cases**

Elghanayan v. Elghanayan, 598 N.Y.S. 2d 524 (App. Div. 1st Dept.
  1993) ..............................................7, 8,10

Estate of Smith, 451 N.Y.S.2d 546 (Sur. Ct. 1982) ............. 4

Genesee Valley Trust Co. v. Newborn, 6 N.Y.S.2d 498(Sup. 1938) . 5

Goodale v. Central Greyhoud Lines, 91 N.Y.S.2d 613
  (Sup. Ct. 1949) ........................................ 5

In re Chisholm's Estate, 30 N.Y.S. 2d 870(Sur. Ct. 1941) ....... 6

In re Picozzi's Estate, 172 N.Y.S. 355 (Sur.Ct. 1958) .......... 7

In re Shupack's Estate, 287 N.Y.S. 184(Sur.Ct. 1936) ........... 5

Paret v. New York Elevated Railway Company, 18 N.Y.S. 580
  (Sup. Ct. 1892) ........................................ 6

Resseau v. Bland, 491 S.E.2d 809 (Ga. 1997) .................... 9

Roques v. Grossjeans, 66 N.Y.S.2d 348 (Sup. Ct. 1946) .......... 9

Sauvage v. Sauvage, 257 N.Y.S. 325 (Sup.Ct.1932) ............ 6, 7

Swenson v. Dittner, 439 A.2d 334 (Conn. 1981) .................. 9

**Federal Rules**

28 U.S.C. §1332(a)..........................................4

Fed.R.Civ.P. 17(b).........................................10

**State Regulations**

N.Y. Est. Powers & Trusts, §13-1.1 (1966)...................5

N.Y. Est. Powers & Trusts, §13-3.5..........................1

N.Y. Surr. Ct. Proc. Act., Art. 16..........................1

**Treatises**

Steven Baicker-McKee et al., Federal Rules Civil Handbook 2008
    (Thompson-West 2008).................................4

17A James Wm. Moore et al., Moore's Federal Practice §124.1
    (2001)...............................................3

17A James Wm. Moore et al., Moore's Federal Practice §124.22
    (2001)...............................................4

I. **INTRODUCTION AND SUMMARY OF DEFENDANT SCHOEPS' POSITION**

Defendant Julius H. Schoeps (Schoeps) -- by his attorneys -- responds to the "Memorandum of Law in Response to Order Dated March 25, 2008 Requesting Additional Information and in Further Opposition to Defendant Julius H. Schoeps' Motion to Dismiss the Complaint for Declaratory Relief" (Museums' Memorandum), submitted by plaintiffs The Museum of Modern Art and The Solomon R. Guggenheim Foundation (Museums) on April 1, 2008.

The Museums' latest submission confirms that the Court cannot entertain this action without abdicating its responsibility as a federal diversity court to apply substantive New York State probate law as the relevant rule of decision in this proceeding. The decision of the U.S. Supreme Court in Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938) and its progeny (the *Erie* doctrine) require the Court to apply New York State probate law to determine whether Schoeps can litigate the ownership of the Paintings. The declared purpose of New York probate law is to provide for the orderly transfer of property from decedents to their heirs and to ensure the security of titles. Most importantly, New York state probate statutes prescribe specific procedures for foreign estates -- such as that of Paul von Mendelssohn-Bartholdy (Mendelssohn-Bartholdy) -- to secure the appointment of an ancillary personal representative in New York to recover estate assets (such as the Paintings) that are in New York. See N.Y. Surrogate Court Procedure Act Article 16 pertaining to "Foreign Estates", and N.Y. Est. Powers & Trust Law § 13-3.5 (Action or Proceeding by Foreign or Other Personal Representative).

New York probate law makes clear that in New York all property belonging to a decedent -- such as the claim of the heirs of Mendelssohn-Bartholdy to recover the Paintings -- devolve to a personal representative, and that individual legatees such as Schoeps have no authority or standing under the statutory scheme to litigate ownership of estate assets. Accordingly, under New York state probate law personal representatives not only are indispensable parties whenever third parties challenge the ownership of estate assets, they are the **only** legally recognized parties.

As Schoeps has made clear, the only way that the Court can adjudicate this controversy consistent with controlling New York state probate law is to rule that -- as a threshold matter --

New York probate law does not govern this controversy and that the New York Court of Appeals would so determine. (See Defendant Julius H. Schoeps' Memorandum of Law in Compliance with the Court's March 25, 2008 Order [Schoeps' April 1, 2008 Memorandum], p. 10-11).

In an attempt to evade New York probate law and policy the Museums have contrived illusory bodies of federal law which they denominate as "the federal law of quiet title" and "federal law defining proper parties." But the state court and federal diversity judicial decisions that the Museums advance in support of these putative principles show that no such federal law exists.

The Museums also propose that the German law of capacity can displace New York state probate law, and can provide a rule of decision to litigate ownership of the Paintings. But as Schoeps has pointed out, under New York probate law Schoeps must have both the requisite standing as well as capacity in order to litigate ownership of the Paintings. Because Schoeps lacks standing, whether German law prescribes Schoeps' capacity is moot.

Moreover, because the Museums' own expert concedes that the German law of capacity in this context is tenuous and controversial, the Court should be most reluctant to invoke German law as supplying or even informing the relevant rule of decision in this proceeding.

Finally, a ruling by this Court that Schoeps in his individual capacity lacks any ownership rights in the Paintings would merely duplicate what New York state probate law already explicitly prescribes. In addition, allowing this suit to go forward would complicate unnecessarily the resolution of the genuine justiciable controversy that the Court ultimately will be called upon to decide -- whether the Mendelssohn-Bartholdy heirs collectively and properly constituted as a juridical estate own the Paintings.

## II. STATEMENT OF FACTS

Schoeps incorporates by reference the Statements of Facts contained in Memorandum of Points and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief ("Schoeps' Memorandum") and Reply Memorandum of Points

2

and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief (Reply Memorandum), and Schoeps' April 1, 2008 Memorandum.

## III. ARGUMENT

### A. Because the Jurisdiction of this Court is Founded Exclusively Upon Diversity of Citizenship the *Erie* Doctrine Requires the Court to Apply the Substantive Law of New York to Determine Whether the Museums May Sue Schoeps in His Personal Capacity for Declaratory Relief

#### 1. The *Erie* Doctrine Requires the Court to Apply the Substantive Law of New York State to this Controversy

It has long been axiomatic that the decision of the U.S. Supreme Court in Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938) and its progeny ("the *Erie* doctrine") "require federal courts to apply state substantive law as the rule of decision in diversity jurisdiction cases." 17A James Wm. Moore et al, Moore's Federal Practice (2001) at 124-1. As the authors of this treatise explain, the *Erie* doctrine ensures that the same state substantive law governs controversies regardless whether brought in state or federal courts:

> Under the *Erie* doctrine, federal courts in diversity cases perform the role of another state trial court in applying state statutes and common law. The *Erie* doctrine is rooted in a realization that it would be unfair for the result of litigation to depend on whether the suit is brought in state or federal court. Thus, the *Erie* doctrine had two purposes:(1) to assure uniform results on state and federal courts and discourage forum shopping between the state and federal system; and (2) to avoid inequitable administration of the laws....

Id. at § 124.01[1].

Under *Erie*, a federal diversity court must apply the substantive law of the state in which it sits:"(w)hen the *Erie* doctrine requires a federal district court to apply state law, the court must apply the state substantive law in which the district court is located. "Id. at § 124.01[3].

While federal courts have invoked several related tests to ascertain relevant substantive state law for *Erie* purposes, "[u]sually substantive law is described as the law that determines whether a party has a claim cognizable in a court, and whether the defendant has a legal defense that bars such

claim on the merits." Steven Baicker-McKee et al., Federal Rules Civil Handbook 2008 (Thompson-West 2008) at 125. In determining substantive state law federal courts also examine relevant state policies:"[f]ederal courts also look to policy considerations such as the policy underlying a statute, and pertinent public policy considerations." 17A James Wm. Moore et al., Moore's Federal Practice (2001) § 124.22[3].

Because the sole basis of the federal jurisdiction of the Court is diversity of citizenship under 28 U.S.C. § 1332(a) -- see Complaint for Declaratory Relief at par. 9 -- the *Erie* doctrine requires the Court to apply the relevant substantive law of New York State to determine whether the Museums properly may sue Schoeps in his personal capacity regarding ownership of the Paintings.

### 2. Under the *Erie* Doctrine New York State Probate Law is the Substantive State Law that Determines whether the Museums Can Maintain this Action Against Schoeps in His Personal Capacity

Under the *Erie* doctrine, New York State probate law and policy prescribe the substantive body of New York State law that determines whether the Museums have a viable claim against Schoeps in his personal capacity for declaratory relief. There can be no doubt but that the attempt of the Museums to sue an individual legatee of the Mendelssohn-Bartholdy estate (Schoeps) concerning the ownership of an asset that -- as a matter of substantive New York State probate law -- belongs to the estate and to which the personal representative holds legal title implicates the probate law and policy of New York.

The declared purpose and scope of New York State probate law confirm this conclusion. As the court explained in Estate of Smith, 451 N.Y.S.2d 546, 548 (Sur. Ct. 1982):("T)he primary purpose of the entire law of descent and distribution of this State (EPTL Art. 4) ... is to ensure the 'orderly settlement of estates and dependability of titles to property passing under intestacy

4

law'"(Citations omitted). New York courts also have recognized that New York state probate law controls how personal property -- and title to personal property -- passes from decedents to their heirs. "It is apparent that the main object of statutes relating to the affairs of descendants is to establish the manner of devolution of the property of a person who has died, and to regulate the procedure by which title thereto shall pass to another." In re Shupack's Estate, 287 N.Y.S. 184, 188-89 (Sur.Ct. 1936).

Because the attempt of the Museums to sue Schoeps in his personal capacity regarding his ownership interest in property that belongs to the Estate of Paul von-Mendelssohn-Bartholdy concerns how -- and whether -- title to such property devolves to the heirs of Mendelssohn-Bartholdy, New York state probate law is the relevant substantive state law that supplies the rule of decision in this diversity action.

### 3. New York State Probate Law Precludes the Museums From Suing Schoeps in His Personal Capacity

As Schoeps made clear in his Memorandum of April 1, 2008 if -- as the Supreme Court of New York ruled in Schoeps v. Webber -- a personal representative must be appointed to represent the heirs of Mendelssohn-Bartholdy, Schoeps lacks both the requisite standing as well as the capacity to litigate the ownership of the Painting. Memorandum at 6-11.

Substantive New York State probate law and policy corroborate the inability of Schoeps to litigate ownership of the Painting. Under New York law, the personal property of decedents pass to a legal representative:"(t)he law is well settled that the title to personal property vests in the legal representative of the decedent...." Genesee Valley Trust Co. v. Newborn, 6 N.Y.S.2d 498, 504 (Sup. 1938); Goodale v. Central Greyhoud Lines, 91 N.Y.S.2d 613, 615 (Sup. Ct. 1949):"[t]he title to the assets of the estate of a deceased person rests in the administrator ..." See also N.Y. Est. Powers & Trusts § 13-1.1(a) (1966), designating certain assets as personal property and prescribing that all

personal property of a decedent devolves to the personal representative:"(f)or purposes of administration of an estate, the following assets of the decedent are personal property and together with every other specie of personal property pass to the personal representative..."

Under New York probate law, the title of the personal representative to property of the decedent excludes the interests of the individual legatees as well as all other parties:"[t]he title to the assets of the estate of a deceased person, pending administration, rests in the administrator...and his title and authority extends so completely to all such property as to exclude for the time being creditors, legatees, and all others beneficially interested in the Estate." Sauvage v. Sauvage, 257 N.Y.S. 325, 328 (Sup.Ct.1932) (Citation omitted).

In New York, the executor or personal representative of an estate occupies a position similar to a trustee of a trust, and -- as in a trust -- the individual beneficiaries possess no independent rights in the assets of the estate. As the court in In re Chisholm's Estate, 30 N.Y.S. 2d 870, 873 (Sur. Ct. 1941) instructed, "the executor, like any other trustee of an express trust, was the legal owner of the property, representing the interests of all persons possessing ultimate rights to participation therein...Neither the creditors nor possible distributees possess any rights in rem in the estate assets."

New York courts long have recognized that a cause of action in favor of the decedent -- such as the right of the Mendelssohn-Bartholdy heirs to recover the Paintings -- is personal property that passes to a personal representative. See, e.g., Paret v. New York Elevated Railway Company, 18 N.Y.S. 580, 582 (Sup. Ct. 1892), ruling that a cause of action for damages to rental property was a personal asset that passed to the executor or administrator of the decedent's estate, and that the next of kin were precluded from prosecuting this claim in their personal capacities:"[t]he right of action is a personal asset...The executors and administrators (of the decedent) were entitled to recover the damages sustained during her lifetime...as part of the estate to be administered by them. The plaintiffs were without authority to maintain a suit for the recovery of

6

such damages, while the right of action therefore was vested in the executors and administrators."

Because personal representatives have legal title to all of the decedent's assets and represent the interests of each individual legatee, they are indispensable parties in any action brought by a third party claiming an estate asset. For example, in In re Picozzi's Estate, 172 N.Y.S. 355 (Sur.Ct. 1958) -- on facts not dissimilar to those at bar -- the plaintiff alleged that the decedent held a forged and unpaid mortgage on the his property, and brought a quiet title action seeking to have the widow of the decedent appointed as a personal representative to represent the decedent's estate in the proceeding. Id. at 356. The court rejected the contention of the widow that "the proposed action should be brought against the distributees of the decedent rather than an administrator appointed by this court", and ruled that "[a]n administrator of the decedent is a necessary party in an action involving the validity of the mortgage, since title to personal property vests in the personal representative...." Id. at 356. See also Sauvage v. Sauvage, 257 N.Y.S. 325, 327-28 (Sup.Ct. 1932), ruling that service of a warrant of attachment upon an attorney for an estate legatee who also was the estate personal representative was defective because the attorney had in his possession no property belonging to the legatee personally -- but rather only property belonging to the estate -- and the warrant of attachment failed to comply with the procedure prescribed for service upon a personal representative. Id. at 328.

These authorities confirm that under substantive New York State probate law Schoeps as an individual legatee lacks any legally defensible interest in the Paintings, and so cannot be sued in his personal capacity for a declaration of his ownership rights.

As Schoeps pointed out, the Court can entertain this action only if it decides that New York State probate law and policy -- as a threshold matter -- do not apply to Schoeps. See Schoeps' April 1, 2008 Memorandum at 10-11. To do this, however, the Court must decide -- in the final analysis -- that the New York Court of Appeals would conclude that Schoeps v. Webber was wrongly decided, and that the narrow principle of Elghanayan v. Elghanayan, 598 N.Y.S. 2d 524

7

(App. Div. 1st Dept. 1993) instead controls. <u>See</u> Schoeps' April 1, 2008 Memorandum at 10-11. As Schoeps observed, the <u>Elghanayan</u> decision arguably dispenses with the requirement that a personal representative be appointed to prosecute a claim on behalf of the heirs of a decedent when -- in the admittedly unusual instance -- such claim accrues after the decedent died. (<u>Id</u>. at 10-11). But -- as Schoeps argued -- the uncertainty of New York State law on this question recommends that the Court decline this action. (<u>Id</u>. at 12).

### B. In an Attempt to Evade the *Erie* Doctrine -- and Substantive New York State Probate Law and Policy -- the Museums Have Fabricated Fictive Bodies of Federal Law Which They Say Permit Them to Sue Schoeps in His Personal Capacity

#### 1. The Museums Have Concocted a Bogus "Federal Law of Quieting Title" and "Federal Law Defining Proper Parties"

In their Memorandum the Museums refer to "the federal law of quiet title" (Memorandum at 2) and a "federal law defining proper parties" (<u>Id</u>. at 2-3) which they say give them the right to seek a declaratory ruling against Schoeps in his personal capacity. According to Schoeps' count, the Museums refer to some putatively controlling (or at least relevant) "federal law" no fewer than **seven times** in their four pages of textual discussion.

But neither a "federal law of quiet title" nor a "federal law defining proper parties" exist in the manner that the Museums intimate. Much less can either displace -- as the necessary rule of decision in this proceeding -- the elemental black letter principle of substantive New York State probate law that determines whether the Museums can prosecute this action against Schoeps in his individual capacity. As Schoeps made clear in his memorandum of April 1, 2008, that principle is that when a personal representative is appointed to administer the affairs of an estate the individual legatees, such as Schoeps, lack both the requisite standing and capacity -- both individually and as supposed representatives of the estate or other heirs -- to litigate the ownership of estate assets. Schoeps' Memorandum of April 1, 2008 at pages 9-10.

#### 2. The Judicial Decisions that the Museums Invoke for Their Argument Supporting Some Putative "Federal Law" of Quiet Title Repudiate the Existence of any Such Law

The several judicial decisions that the Museums advance in support of their argument that relevant "federal law" permits them to sue Schoeps in his personal capacity show that no such

8

federal law exists. The Museums declare that "[u]nder federal...law, a quiet title action may be brought by a plaintiff against any of the parties claiming to have an interest in the property, in order to determine that plaintiff's rights solely against the defendant. See Pls.' Opp. Br. 8-10." (Museums' April 1, 2008 Memorandum at 3).

In support of this argument the Museums cite six judicial decisions, three of which are state court rulings: Roques v. Grossjeans, 66 N.Y.S.2d 348 (Sup. Ct. 1946); Resseau v. Bland, 491 S.E.2d 809 (Ga. 1997); Swenson v. Dittner, 439 A.2d 334, 336 (Conn. 1981). The other three are federal judicial decisions: Pressman v. Estate of Steinworth, 860 F.Supp. 171, 177 (S.D.N.Y. 1994); Spring v. Ohio Oil Co., 108 F.2d 560, 561 (5th Cir. 1940); Goldsmith v. Gilliand, 24 F. 154, 158 (C.C. Or. 1885).

Schoeps showed the Court why the Museums had misplaced reliance upon Roques and Pressman in its Reply Memorandum (Id. at 5), and will not address those decisions here. The Resseau and Swenson decisions merely apply the quiet title statutes of Georgia and Connecticut to actions involving real property when the probate laws of neither state are implicated. See Resseau, 491 S.E.2d 809, 811; Swenson, 439 A.2d 334, 336. These decisions rule only that under the specific state statutes in question a co-owner of a parcel of real estate need not join all co-tenants or putative co-tenants in order to file a quiet title action against a single adverse claimant. Ibid. Neither decision purports to address "federal law" or raises any question involving the application of state probate law.

The Spring and Goldsmith decisions are but federal diversity actions that apply the quiet title statutes of Texas and Oregon, respectively, to actions seeking to quiet title to real estate and that similarly entail no probate consequences. In Spring the court ruled that the state of Texas and other corporate and individual defendants were not necessary or indispensable parties in a action that an oil company brought under Texas law against a competing lease holder to quiet its title to a parcel of real estate. Hanover Fire Insurance Co. v. Newman's Inc., 108 F.2d 561, 562 (1939). The

antiquated Goldsmith decision similarly addressed the question whether non-defendant co-tenants of a parcel of real property were necessary parties in a quiet title action brought under Oregon law. The court concluded that the other co-tenants -- who were residents of the then "Washington Territory" -- need not be joined as co-defendants in a quiet title action under Oregon law as their joinder would destroy the diversity jurisdiction of the court ("because the jurisdiction of the United States courts, where the same depends upon the citizenship of the parties, does not extend between a citizen of state and territory.") Goldsmith, 24 F. at 156-157.

Accordingly, the Museums' argument that relevant "federal law" permits them to sue Schoeps in his personal capacity is unfounded.

### C. The *Erie* Doctrine Precludes Any Notion that the German Law of Capacity -- Rather than New York State Probate Law of Standing -- Can Determine Whether Schoeps Properly May Be Sued in This Proceeding

#### 1. Under the *Erie* Doctrine the German Law of Capacity Cannot Displace New York State Probate Law of Standing as Supplying the Relevant Rule of Decision in this Diversity Action

As Schoeps made clear in his Memorandum of April 1, 2008, under New York State probate law Schoeps must have both the requisite standing as well as capacity in order to be sued regarding ownership of the Paintings. Memorandum at 7-9. As Schoeps demonstrated in his April 1, 2008 memorandum and herein as well, New York probate law denies Schoeps standing -- as an individual legatee -- to litigate the ownership of property belonging to the Estate. There can be no doubt that if the Museums brought this action in a New York State court, the state court would so rule (assuming, of course, that the court did not find the Elghanayan decision controlling).

Accordingly, whatever role Fed.R.Civ.P. 17(b) may play in determining Schoeps' "capacity", this rule cannot displace or frustrate elemental New York State probate law and its corresponding purposes and policies.

## 2. The Uncertainty of German Law Concerning Whether Schoeps' May Be Sued in His Personal Capacity Should Disincline the Court Even More From Finding that German Law Supplies -- or Even Informs -- a Relevant Rule of Decision in this Controversy

The Museums acknowledge that the German law concerning whether Schoeps may be sued in his individual capacity is anything but clear. The opinion of their expert -- Prof. Dr. Wolfgang Ernst, L.L.M.(Yale) -- is riddled with precautions and qualifications. For example Dr. Ernst begins by observing that the entire question of co-heirs and their standing under German law has spawned much controversy: "I must start with the warning that questions of co-heirs and their procedural standing as well as the res judicata effects of different procedural strategies have caused quite a lot of controversies." (Letter from Prof. Dr. Wolfgang Ernst, L.L.M. to Evan A. Davis dated March 26, 2008 at par. 3).

Dr. Ernst then relates that under German law -- just as in New York -- co-heirs lack standing to sue regarding assets belonging to an estate (Par.4), and that "(i)f someone has a claim against the estate...it is necessary to sue all co-heirs as so-called necessary co-defendants." (Par. 5a)

Dr. Ernst explains that even the German judicial decision that he invokes for the proposition that an individual heir may be sued for declaratory relief is not well regarded in German law: "(t)his judgment has to be considered to constitute the 'law of the land', although it has not, in the doctrinal literature, met with undivided approval". (Par. 5b). Dr. Ernst then points out that "(a) judgment thus obtained against an isolated co-heir does not legally bind the uninvolved co-heirs." (Par. 5b)

Accordingly, the relevant German law concerning capacity provides a most tenuous basis indeed for allowing this action to proceed.

11

## IV. CONCLUSION

For the foregoing reasons, and for those set forth in Schoeps' Memorandum, Reply Memorandum, and Memorandum of April 1, 2008 the Court should dismiss or stay this proceeding.

Respectfully submitted,

_____
John J. Byrne, Jr. (JB-6687)
BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036

Telephone: (202) 857-9775
Facsimile: (202) 857-9799


BRESSLER AMERY & ROSS, P.C.
David H. Pikus (DP-7846)
Kenneth M. Moltner (KM 7778)
David Smitham (DS-7778)
17 State Street
New York, New York 10004

Telephone: (212) 425-9300
Facsimile: (212) 425-9337

Attorneys for Defendant Julius H. Schoeps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE MUSEUM OF MODERN ART, et al.,     07 Civ. 11074 (JSR)

                 Plaintiffs,     **AFFIDAVIT OF SERVICE**

- against -

JULIUS H. SCHOEPS,

                 Defendant.

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK    )

        Leslie Milstein, being sworn, says:

    1.     I am not a party to the within action, I am over eighteen (18) years of age and I reside in Brooklyn, New York.

    2.     On April 8, 2008, I caused a true copy of the annexed DEFENDANT JULIUS H. SCHOEPS REPLY MEMORANDUM OF LAW IN COMPLIANCE WITH THE COURT'S MARCH 25, 2008 ORDER to be sent by hand to the following person at the following address:

         Evan A. Davis, Esq.
         Cleary Gottlieb Steen & Hamilton, LLP
         1 Liberty Plaza, 42nd Floor
         New York, NY 10006

_Leslie Milstein_
Leslie Milstein

Sworn to before me this
8th day of April 2008

_/s/_
Notary Public

KENNETH M. MOLTNER
Notary Public, State of New York
No. 02MO5052599
Qualified in New York County
Commission Expires Nov. 27, 20__