```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
THE MUSEUM OF MODERN ART, and THE       :
SOLOMON R. GUGGENHEIM FOUNDATION,       :
                                        :    07 Civ. 11074 (JSR)
              Plaintiffs,               :
                                        :    OPINION AND ORDER
              -v-                       :
                                        :
JULIUS H. SCHOEPS,                      :
                                        :
              Defendant.                :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

      This action for declaratory judgment concerns the ownership of two rather celebrated Pablo Picasso paintings, <u>Boy Leading a Horse</u>, currently in the permanent collection of plaintiff the Museum of Modern Art, and <u>Le Moulin de la Galette</u>, currently in the permanent collection of plaintiff the Solomon R. Guggenheim Foundation. (Collectively, the two plaintiffs are referred to as the "Museums.") The two paintings were at one time in the private collection of Paul von Mendelssohn-Bartholdy (1875-1935), a prominent Jewish banker and art collector who lived in Berlin during the Nazis' rise to power. Complaint for Declaratory Relief ("Compl.") ¶ 2. Around or before the time of von Mendelssohn- Bartholdy's death, the paintings were sold to Justin K. Thannhauser, who sold <u>Boy Leading a Horse</u> to William S. Paley in 1936. <u>Id.</u> ¶¶ 1,3. Thannhauser donated <u>Moulin de la Galette</u> to the Guggenheim Foundation in 1963, and Paley donated <u>Boy Leading a Horse</u> to the Museum of Modern Art in 1964. <u>Id.</u> ¶ 1.

On March 28, 2007, counsel to defendant Julius H. Schoeps (the grand-nephew of von Mendelssohn-Bartholdy) sent letters to each Museum stating that counsel represented both Schoeps and other heirs of von Mendelssohn-Bartholdy and that they believed that von Mendelssohn-Bartholdy sold the paintings under duress.  See Request for Provenance Information and Documents Regarding Pablo Picasso's Boy Leading a Horse, Ex. 1 to Declaration of Evan A. Davis ("Davis Decl."); Request for Provenance Information and Documents Regarding Pablo Picasso's Le Moulin de la Galette, Ex. 2 to Davis Decl.  This precipitated several months of correspondence between Schoeps's counsel and the Museums that culminated on November 1, 2007, when Schoeps's counsel sent letters to both Museums demanding that the Museums return the paintings to the heirs by November 12, 2007.  See Demand for Return of Pablo Picasso's Le Moulin de la Galette, Ex. 13 to Davis Decl., at 1; Demand for Return of Pablo Picasso's Boy Leading a Horse, Ex. 14 to Davis Decl., at 1.  The letters further stated that if the Museums did not agree to return the Paintings by that time, Schoeps's counsel would "take whatever actions we deem appropriate to protect the rights of our clients."  Id.

In response, the Museums promptly initiated this action for declaratory relief, asking the Court to find that Schoeps has no valid claim to the paintings.  As the Museums subsequently confirmed, the lawsuit names Schoeps only in his individual capacity, rather than as a representative of von Mendelssohn-Bartholdy's estate or of all of the heirs.  See Memorandum of Law in Opposition to Defendant

2

Julius H. Schoeps' Motion to Dismiss the Complaint for Declaratory Relief, at 1, 8; see also transcript, 3/5/08.

Schoeps now moves to dismiss the complaint on two grounds: first, that under a recent ruling of the New York Supreme Court for New York County in Schoeps v. The Andrew Lloyd Webber Art Foundation, 2007 NY Slip Op 52183U (N.Y. Sup. Ct. Nov. 19, 2007) ("Webber"), he lacks "standing" and the "legal capacity" to defend this suit; and second, that, as a prudential matter, a declaratory judgment action against Schoeps in his individual capacity is inappropriate.[1]

In Webber, Schoeps brought suit to recover another Pablo Picasso painting from von Mendelssohn-Bartholdy's collection that is now in possession of the Andrew Lloyd Webber Art Foundation.[2] Despite Schoeps's claim that he represented all of the heirs of von-Mendelssohn-Bartholdy, the Supreme Court refused to let him proceed with the action on the heirs' behalf. Under the New York Estates, Powers and Trusts Law ("EPTL"), the Court found, an individual may only bring an action on behalf of an estate if he has obtained letters of appointment from New York Surrogate's Court; accordingly, Schoeps, who had not been so appointed, "lack[ed] standing or the

---

[1] Schoeps also moves to dismiss the complaint on the ground that the Museums have abused the declaratory judgment remedy. That argument is addressed below.

[2] Schoeps initially brought the suit in federal court under a theory that, this Court found, failed to state a federal claim. The federal suit was therefore dismissed for lack of jurisdiction, without prejudice to being re-filed in state court. See Order, Schoeps v. The Andrew Lloyd Webber Art Foundation, No. 06 Civ. 12934 (S.D.N.Y. Nov. 7, 2006).

3

legal capacity to commence an action on behalf of [the] estate." <u>Id.</u> at *2-4.

Schoeps, who took the position in <u>Webber</u> that the EPTL did not apply, has represented to this Court that he "emphatically disagrees" with the Supreme Court's decision and that he has filed both a motion for leave to reargue and a Notice of Appeal. Memorandum of Points and Authorities in Support of Defendant Julius H. Schoeps' Motion to Dismiss Plaintiffs' Complaint for Declaratory Relief ("Def. Mem.") at 14-15 n.8.  Meanwhile, however, Schoeps has initiated the process of applying to the Surrogate's Court for appointment as personal representative of the estate.  <u>See</u> transcript, 3/5/08.

In the instant motion, Schoeps asserts that, because <u>Webber</u> held that he did not have "standing or the legal capacity" to bring suit, it follows that he cannot be named as a defendant in this action.  <u>Webber</u>, however, addressed the limited question of whether Schoeps had <u>representative</u> standing or <u>representative</u> capacity to bring an action on behalf of the entire estate seeking restoration of property thereto.[3]  Here, by contrast, the Museums do not seek to

---

[3] <u>Webber</u> refers both to Schoeps's lack of "standing" and his lack of "capacity"; Schoeps's submissions also refer to his "authority" to sue.  While these terms all have distinct meanings, see Black's Law Dictionary 142, 220, 1142 (8th ed. 2004) (defining "authority" as "[t]he right or permission to act legally on another's behalf, "capacity" as "the satisfaction of a legal qualification . . . that determines one's ability to sue or be sued," and "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right"), it is clear that in the context of <u>Webber</u> they all refer generally to the ability of Schoeps to bring suit on behalf of the entire estate.

4

finally adjudicate their title to the paintings as against the entire estate; rather, they seek a declaration only vis-à-vis Schoeps as an individual. Webber says nothing about this question, and is therefore inapposite.

Under Federal Rule of Civil Procedure 17(b)(1), the capacity to sue or be sued of "an individual who is not acting in a representative capacity" is determined "by the law of the individual's domicile" - in Schoeps's case, Germany.[4] See Compl. ¶ 19. Following initial briefing and oral argument on this motion on March 5, 2008, the Court requested that the parties provide further briefing on, inter alia, what German law provides as to Schoeps's capacity to be sued in the instant action. In response, the Museums submitted a statement of German law from Wolfgang Ernst, Professor of Private Law and Roman Law at the University of Zurich, attesting that under German law a declaratory suit such as this one could proceed against Schoeps in his individual capacity. See Letter of Wolfgang Ernst, dated March 28, 2008, Ex. A to Memorandum of Law in Response to Order Dated March 25, 2008 Requesting Additional Information and in Further Opposition to Defendant Julius H. Schoeps' Motion to Dismiss the Complaint for Declaratory Relief, at 3 (concluding that the "'law of the land'" in Germany, as decided by the German Federal Court, is that "a single co-heir can be sued for a negative declaration, since the defendant could 'comply' with the judgement

---

[4] The capacity to sue or be sued of one acting in a representative capacity is determined by "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).

5

without the assistance of his co-heirs"). See also Bundesgerichtshof [BGH] [Federal Court of Justice] May 20, 1992, IV ZR 231/91, 1992 Neue Juristische Wochenschrift-Rechtsprechungsreport [NJW-RR] 1151 (F.R.G.). Schoeps has offered no contrary view of German law.[5]

Simply because Schoeps may be sued in his individual capacity, however, it does not necessarily follow that a declaratory judgment against one individual heir is an appropriate way to proceed. That question involves both an issue of law and an issue of discretion. The issue of law is whether there is an "actual controversy" for declaratory judgment purposes, i.e., whether Schoeps as an individual actually has an interest adverse to that of the Museums. See 28 U.S.C. § 2201(a) (authorizing declaratory judgment remedy in cases "of actual controversy"); MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007) (holding that actual controversy requirement is met where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). Schoeps argues that Webber bars him from asserting a claim as an individual to recover the paintings, and that the most that the Museums can hope to achieve as a result of this lawsuit is a declaration to the same effect.

---

[5] Schoeps argues that Ernst's statement "is riddled with precautions and qualifications" that render it a "tenuous basis" on which to find that Schoeps has capacity. See Reply Memorandum of Law in Compliance with the Court's March 25, 2008 Order, at 11. The Court, however, finds Ernst's statement unequivocal on the relevant point, and, as noted, Schoeps has offered no contrary German authority.

6

The argument is unpersuasive, however, for several reasons. To begin with, it is completely inconsistent with Schoeps's repeatedly stated position that <u>Webber</u> was erroneously decided, and that he will take every appropriate step to try to have it reversed. Indeed, he has already filed a notice of appeal, which if successful, would render his argument here entirely without support.[6] Moreover, Schoeps has hedged his bets by beginning the process of obtaining letters of appointment from the New York Surrogate's Court. As a practical matter, therefore, it is entirely possible that Schoeps will become the estate representative during the pendency of this lawsuit, and could be substituted as such.

More fundamentally, <u>Webber</u>, as Schoeps conceded at oral argument, is not binding on this or any other federal court, or presumably even another state's court. <u>See</u> transcript, 3/5/08. Schoeps consistently has maintained, at least since his November 2007 demand letters, that he will "take whatever actions" he deems necessary to recover the paintings that are at issue in this case. <u>See</u> Exs. 13-14 to Davis Decl. That could well include bringing lawsuits that are in no way barred by <u>Webber</u>.

Moreover, even with respect to New York actions, the New York case law Schoeps cites for the proposition that when a personal representative has been appointed to administer the affairs of an estate, individual legatees (like Schoeps) are legally precluded from litigating ownership rights in estate property is inapposite, as no

---

[6] The Court makes clear, however, that it in no way opines on the correctness of <u>Webber</u>.

7

personal representative has yet been appointed in this case. As the Museums have pointed out, given that there is no estate representative, the only defendant they could name in this lawsuit was the one heir whose specific identity was known to them: Schoeps himself. To require the Museums to wait to file an action to quiet their title while Schoeps takes steps (or not, as he chooses) to be appointed estate representative would grant to Schoeps the unilateral power - to refuse to initiate a lawsuit while hanging the threat of one over the Museums - that the declaratory judgment remedy is designed to temper. See 10B Wright & Miller, Federal Practice and Procedure § 2751 (3d ed. 2007) ("Wright & Miller") ("[T]he declaratory- judgment remedy . . . . gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy . . . in cases in which a party who could sue for coercive relief has not yet done so.").

Under these circumstances, the Court finds that this is "a concrete case admitting of an immediate and definitive determination of the legal rights of the parties," such that a declaratory judgment remedy is appropriate. Dr. Beck & Co. G. M. B. H. v. General Electric Co., 317 F.2d 538, 539 (2d Cir. 1963) (internal quotation marks omitted).[7] The simple fact is that Schoeps, as the most

---

[7] The Court need not address Schoeps's argument under Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938), raised for the first time in his reply to the Court's March 25, 2008 Order, which is essentially that probate law is substantive in nature and so state law, rather than federal, controls here. Apart from the capacity issue, which is governed by Federal Rule of Civil Procedure 17 and so is not susceptible to Erie analysis, the question of whether or not to apply New York probate law to this

8

assertive heir of von Mendelssohn-Bartholdy, has stated his clear intent to pursue every avenue to obtain the Picasso paintings he believes were wrongfully forced from his distinguished ancestor. The Museums, as the possessors of two of those paintings, need not be obliged to sit on their hands while Schoeps decides when next to attack. See Wright & Miller § 2751 ("[The declaratory judgment remedy] relieves potential defendants 'from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure-or never.'" (citing Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219, 237 (D.N.J.1966)).

In these circumstances, it would be inappropriate for the Court to deny plaintiffs the right to proceed, even in the exercise of the Court's discretion.[8] Indeed, with respect to discretionary

---

action is simply not before the Court.

[8] There is no merit to Schoeps's claim that dismissal is warranted in the exercise of the Court's discretion because the Museums filed this suit "surreptitiously to gain an improper procedural advantage," Def. Mem. at 15, and thus have abused the declaratory judgment remedy. Indeed, given that it was Schoeps who initially threatened the Museums with litigation, it is difficult to take this argument seriously. More importantly, Schoeps can identify no "illicit tactical advantage," Def. Mem. at 17, that the Museums have obtained by filing suit. His contention that the Museums filed in order to portray themselves as "victims" to the Court and to the public does not warrant a response. And he has not alleged the typical advantage obtained by declaratory judgment plaintiffs who win a so-called "race to the courthouse": the opportunity to choose a forum unfavorable to the defendant. See, e.g., N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters Local 747, 04 Civ. 9949, 2005 U.S. Dist. LEXIS 4385, at *60-61 (S.D.N.Y. Mar. 21, 2005). The only alleged prejudice that Schoeps's counsel was able to identify at oral argument was that if Schoeps prevailed in this action, a judgment in his favor would not result in the heirs' recovering possession of the paintings, as this is merely an action for declaratory judgment against Schoeps individually. Any judgment against the Museums,

9

issues, the only one that the Court finds it prudent to consider is whether the remaining heirs of von Mendelssohn-Bartholdy, of whom there are apparently around forty, see transcript 3/5/08, should be joined to this lawsuit under Federal Rule of Civil Procedure 19(a). Although neither party has moved for joinder, courts frequently do - and indeed should - consider the issue sua sponte because a primary purpose of Rule 19 is to protect the rights of an absentee party. See Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 382-383 (2d Cir. 2006). As the Museums repeatedly have emphasized, however, they seek in this action declarations of their property rights in the paintings only vis-à-vis Schoeps as an individual, rather than a final adjudication that they hold title to the paintings. They do so because it is Schoeps who has challenged their ownership. Consequently, there is neither a risk that "in [the heirs'] absence, the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), nor a risk that resolving the instant controversy in the heirs' absence will legally or "as a practical matter" impair the heirs' ability to protect their own interests in the paintings, Fed. R. Civ. P. 19(a)(1)(B)(i).

The Second Circuit repeatedly has explained that where a party seeks simply to adjudicate its rights as against a particular claimant but not finally allocate title, it is not necessary to join other claimants. See MasterCard Int'l, 471 F.3d at 387 (holding that

---

however, would be binding on them in future actions by principles of collateral estoppel, so the Court sees no genuine prejudice to Schoeps that could result from this action.

10

joinder of current or competing titleholders is necessary only when the relief sought is a declaration that the plaintiff is the titleholder); Brody v. Village of Port Chester, 345 F.3d 103 (2d Cir. 2003) (holding that current titleholder would only have to be joined if the appropriate remedy for the plaintiff would be to reconvey his property); cf. Oneida Indian Nation v. New York, 732 F.2d 261, 265 (2d Cir. 1984) ("Ordinarily, a judgment in an ejectment or quiet title action will not affect the interests of others than the parties or those in privity with them. Such actions do not operate in rem upon the land itself, and therefore principles of collateral estoppel by judgment are not implicated."); Goldsmith v. Gilliland, 24 F. 154, 158 (C.C. Ore. 1885) (holding that a plaintiff in possession of property may bring suit to quiet title against any or all tenants-in-common with competing claims).

    That said, the Court sees no reason why the heirs could not be joined to this lawsuit if either side so chose, so long as their joinder would not imperil the expeditious resolution of this matter. As Schoeps's counsel informed the Court during oral argument (echoing the claim put forth in his demand letters to the Museums), while Schoeps is the moving force, his counsel also represents the remaining heirs of von Mendelssohn-Bartholdy. The Court therefore has no doubt that Schoeps's counsel can, in a timely manner, apprise the heirs that this lawsuit is pending and determine their interest in joining it. The Court will entertain any motions for joinder on the part of the Museums, or on the part of the heirs (which the Museums have indicated they will not oppose, see Memorandum of Law in

Opposition to Defendant Julius H. Schoeps' Motion to Dismiss the Complaint for Declaratory Relief at 10), so long as such joinder motions are filed by the previously set deadline of June 2, 2008.

For the foregoing reasons, the motion to dismiss is denied. The parties shall proceed with this litigation in accordance with the Case Management Plan previously ordered by the Court on January 4, 2008.

SO ORDERED.

Dated: New York, NY
April 14, 2008

JED S. RAKOFF, U.S.D.J.