UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

THE MUSEUM OF MODERN ART, and THE
SOLOMON R. GUGGENHEIM FOUNDATION,

                  Plaintiffs,

BOY LEADING A HORSE, and LE MOULIN DE
LA GALETTE, Two Paintings by Pablo Picasso,

                Plaintiffs-in-rem,

           - against -

JULIUS H. SCHOEPS,

                Defendant.

------------------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

07 Civ. 11074 (JSR)

**ANSWER AND
AFFIRMATIVE DEFENSES**

Plaintiffs The Museum of Modern Art ("MoMA") and The Solomon R. Guggenheim Foundation (the "Guggenheim") (collectively, the "Museums" or "Plaintiffs"), by their counsel, Cleary Gottlieb Steen & Hamilton LLP, as and for their Answer and Affirmative Defenses to Defendant's Counterclaim (the "Counterclaim"), state as follows:

<u>**INTRODUCTORY STATEMENT**</u>

Because it is necessary to cast this Answer to Defendant's Counterclaim in terms of admissions and denials, and because intertwined in a number of allegations are statements invoking the horrors of the Holocaust, the Museums wish to be plain that this pleading should in no way be read as denying those horrors. What the Museums deny is that either the Nazi Regime or the art dealer Justin K. Thannhauser ("Thannhauser") forced Paul von Mendelssohn-Bartholdy to sell Thannhauser the paintings in issue here. They deny that Paul von Mendelssohn-Bartholdy was forced to sell the Paintings because of persecution by the Nazi

Regime. They deny that Thannhauser, who was well regarded and who valued the Mendelssohn and Mendelssohn-Bartholdy families as important and influential clients, stole the Paintings or otherwise acted improperly or immorally. They deny that William S. Paley ("Paley"), a well respected businessman, purchased looted art or was anything other than a good faith purchaser for value. The Museums further respond to Defendant's Counterclaim as follows:

1.    Deny the allegations contained in paragraph 1 of the Counterclaim, except admit that Paul von Mendelssohn-Bartholdy ("von Mendelssohn-Bartholdy") was a wealthy banker in Berlin and a descendant of Moses Mendelssohn.

2.    Deny the allegations contained in paragraph 2 of the Counterclaim, except admit that the Counterclaim purports to seek the restitution of Pablo Picasso's *Boy Leading a Horse*, oil on canvas, approximately 220.3 x 130.6 cms., completed approximately 1906 ("*Boy Leading a Horse*") and *Le Moulin de la Galette*, oil on canvas, approximately 88.2 x 115.5 cms., completed approximately 1900 ("*Le Moulin de la Galette*") (collectively, the "Paintings").

3.    Admit the allegations contained in paragraph 3 of the Counterclaim, and aver that the Paintings, which had been previously gifted to von Mendelssohn-Bartholdy's second wife Elsa ("Elsa") at the time of their marriage in 1927, were not part of von Mendelssohn-Bartholdy's estate.

4.    Deny the allegations contained in paragraph 4 of the Counterclaim.

5.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Counterclaim, except admit on information and belief that Schoeps brings this action in his personal capacity as an heir of von Mendelssohn-Bartholdy and that von Mendelssohn-Bartholdy's sisters and widow, Elsa, are all deceased.

6.    Admit the allegations contained in paragraph 6 of the Counterclaim.

2

7.      Admit the allegations contained in paragraph 7 of the Counterclaim.

8.      State that paragraph 8 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, except admit that the Museums are tax-exempt organizations.

9.      Admit the allegations contained in paragraph 9 of the Counterclaim.

10.     Deny the allegations contained in paragraph 10 of the Counterclaim to the extent they involve the alleged wrongful continued possession of the Paintings, except admit that the Court has personal jurisdiction over the Museums.

11.     State that paragraph 11 of the Counterclaim consists of a legal conclusion to which no responsive pleading is necessary, except admit that the Court has jurisdiction to determine Defendant's claim to the Paintings.

12.     Deny the allegations contained in paragraph 12 of the Counterclaim to the extent they pertain to alleged events or omissions purportedly giving rise to the Counterclaim, state that the balance of paragraph 12 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, except admit that the Museums reside in this district and that the Paintings are located in this district.

13.     Admit the allegations contained in paragraph 13 of the Counterclaim.

14.     Admit the allegations contained in paragraph 14 of the Counterclaim.

15.     Deny the allegations contained in paragraph 15 of the Counterclaim, and aver that upon von Mendelssohn-Bartholdy's marriage in 1927, he gave the collection of paintings to his wife Elsa, and deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 that the collection included works by Manet, Degas or Tiepolo.

3

16.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Counterclaim.

17.    Deny the allegations contained in paragraph 17 of the Counterclaim, except admit that Adolf Hitler became Chancellor of Germany on January 30, 1933, and that von Mendelssohn-Bartholdy was a wealthy private banker who died in May 1935.

18.    Deny the allegations contained in paragraph 18 of the Counterclaim to the extent they pertain to matters of fact relating to Mendelssohn & Co., and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18, and aver that Jewish-owned banks, like other German banks, were adversely affected from around 1930 onwards by the world-wide economic and banking crisis commonly called the Depression.

19.    Deny the allegations contained in paragraph 19 of the Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 to the extent they pertain to matters of fact relating to the resignation of an "Aryan" employee of von Mendelssohn-Bartholdy and the designation under Nazi citizenship laws of von Mendelssohn-Bartholdy as an "alien."

20.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Counterclaim, except deny that any consignment of the Paintings was the direct and intended consequence of persecution by the Nazi Regime, and aver that the Paintings were exhibited in Buenos Aires in October 1934.

21.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Counterclaim.

4

22.    Deny the allegations contained in paragraph 22 of the Counterclaim, and aver that either von Mendelssohn-Bartholdy, on Elsa's behalf, or Elsa sold the Paintings to Thannhauser at some point after October 1934 and before August 1935.

23.    Deny the allegations contained in paragraph 23 of the Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Counterclaim to the extent they pertain to matters of fact relating to whether von Mendelssohn-Bartholdy sold any artworks from his collection before 1933.

24.    Deny the allegations contained in paragraph 24 of the Counterclaim, except, as to the last sentence, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 to the extent they pertain to matters of fact relating to what, if anything, Paley and Albert Skira ("Skira") may have said to one another at the time of the sale about Thannhauser being the owner of *Boy Leading a Horse*, and aver that Skira as agent for Paley purchased *Boy Leading a Horse* from Thannhauser for Paley's account.

25.    Deny the allegations contained in paragraph 25 of the Counterclaim, except admit that *Boy Leading a Horse* was shipped to New York after Paley purchased it in Switzerland, that in 1964 Paley executed papers donating *Boy Leading a Horse* to MoMA, retaining a life estate for himself, and that MoMA absolutely acquired *Boy Leading a Horse* when Paley died in 1990.

26.    Deny the allegations contained in paragraph 26 of the Counterclaim, except admit that Thannhauser emigrated to the United States in or around 1940, aver that *Le Moulin de la Galette* was already in New York when Thannhauser emigrated, and admit that *Le*

5

*Moulin de la Galette* has remained in New York since then except when lent for exhibition in the United States and abroad.

27.     Deny the allegations contained in paragraph 27 of the Counterclaim, except admit that Thannhauser left *Le Moulin de la Galette* as a bequest to the Guggenheim.

28.     Deny the allegations in paragraph 28 of the Counterclaim, except admit that counsel for Schoeps purported to represent the heirs of von Mendelssohn-Bartholdy on whose behalf counsel demanded the Paintings and that the Museums, through their attorneys, refused the demand on December 7, 2007.

29.     Admit the allegations contained in paragraph 29 of the Counterclaim, except deny knowledge or information sufficient to form a belief as to the exact number of discriminatory laws and decrees promulgated in early 1933 and aver that initially, and at least through the time of von Mendelssohn-Bartholdy's death in May 1935, the Nazi Regime did not target Mendelssohn & Co.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Counterclaim.

31.     Deny the allegations contained in paragraph 31 of the Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy, admit that the Flight Tax was enacted in 1931 and later expanded in scope, and aver that von Mendelssohn-Bartholdy was, up until the time of his death, free to leave Germany, and refer to the book cited therein for a true and accurate statement of its contents.

32.     Deny the allegations contained in paragraph 32 of the Counterclaim, and aver that Mendelssohn & Co. was important to the German economy and was not specifically targeted by the Nazi regime until after von Mendelssohn-Bartholdy's death in May 1935.

33.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Counterclaim, and aver that Jewish-owned banks, like other German banks, were already adversely affected by the Depression and by the banking crisis beginning in 1931 that Germany experienced in connection with the Depression.

34.    Deny the allegations contained in paragraph 34 of the Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy or to the extent they allege a uniform state of mind among German Jews at the time in question, and refer to the book cited therein for a true and accurate statement of its contents.

35.    Deny the allegations contained in paragraph 35 of the Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy and Mendelssohn & Co. or to the extent they allege a uniform view of the future among German Jewish bankers, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35, and refer to the letter cited therein for a true and accurate statement of its contents.

36.    Deny the allegations contained in paragraph 36 of the Counterclaim to the extent they pertain to matters of fact involving von Mendelssohn-Bartholdy, and deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 36 relating to the balance of the indefinite period of time covered by the allegation.

37.    Deny the allegations contained in paragraph 37 of the Counterclaim.

38.    Respond to the allegations contained in paragraph 38 of the Counterclaim as follows:

    (a)    Deny the allegations contained in paragraph 38(a) of the Counterclaim;

7

(b)     Deny the allegations contained in paragraph 38(b) of the
        Counterclaim, except deny knowledge or information sufficient to
        form a belief as to the truth of the allegation regarding a meeting
        between a representative of Mendelssohn & Co., and the Bank
        Commissar in 1934, and admit that the assets and liabilities of
        Mendelssohn & Co. were transferred to Deutsche Bank in 1938;

(c)     Deny the allegations contained in paragraph 38(c) of the
        Counterclaim, except deny knowledge or information sufficient to
        form a belief as to the truth of the allegation regarding the
        investigation of a Jewish manager of Mendelssohn & Co., and aver
        that von Mendelssohn-Bartholdy was not targeted by Nazi
        authorities;

(d)     Deny the allegations contained in paragraph 38(d) of the
        Counterclaim;

(e)     Deny the allegations contained in paragraph 38(e) of the
        Counterclaim, and aver that Mendelssohn & Co. did not want von
        Mendelssohn-Bartholdy to petition for a reduction of his alimony
        and agreed to take over the obligation to make the alimony
        payments after von Mendelssohn-Bartholdy's death;

(f)     Deny the allegations contained in paragraph 38(f) of the
        Counterclaim;

(g)     Deny the allegations contained in paragraph 38(g) of the
        Counterclaim that von Mendelssohn-Bartholdy acted to block

8

alleged anticipated Nazi confiscation of his property, except admit

that von Mendelssohn-Bartholdy placed a financial encumbrance

on each of Alsenstrasse and Boernicke;

(h)    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 38(h) of the

Counterclaim;

(i)    Deny the allegations contained in paragraph 38(i) of the

Counterclaim, except deny knowledge or information sufficient to

form a belief as to the truth of the allegations contained in

paragraph 38(i) relating to possible resignation from the specific

board positions mentioned;

(j)    Deny the allegations contained in paragraph 38(j) of the

Counterclaim;

(k)    Deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 38(k) of the

Counterclaim;

(l)    Deny the allegations contained in paragraph 38(l) of the

Counterclaim; and

(m)    Deny the allegations contained in paragraph 38(m) of the

Counterclaim.

39.    Deny the allegations contained in paragraph 39 of the Counterclaim,

except deny knowledge or information sufficient to form a belief as to the truth of the allegations

contained in paragraph 39 to the extent they refer to a consignment for anticipated sale of the Paintings in connection with their exhibition in Buenos Aires.

40.     Deny the allegations contained in paragraph 40 of the Counterclaim, except refer to the newspaper article and letter cited therein for a true and accurate statement of their contents, and aver that Thannhauser was not a trafficker in stolen or Nazi looted art, and that the letter the Guggenheim received from the Art Loss Register dated June 15, 2006 regarding *Le Moulin de la Galette* does not contain any reference questioning Thannhauser's integrity or the provenance of the painting.

41.     Deny the allegations contained in paragraph 41 of the Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to M. Knoedler & Co., and refer to the texts and records cited therein for a true and accurate statement of their contents.

42.     Deny the allegations contained in paragraph 42 of the Counterclaim, and aver that under the German law and practice applicable at the time, von Mendelssohn-Bartholdy had the authority to manage and deal in Elsa's property.

43.     Deny the allegations contained in paragraph 43 of the Counterclaim, and refer to the book The Deutsche Bank and the Nazi Economic War Against The Jews by Harold James (Cambridge Univ. Press 2001) for the relevant history of Mendelssohn & Co., and admit that in 1938, three years after von Mendelssohn-Bartholdy's death, Elsa sold Alsenstrasse for a modest price under pressure of the Nazi government for the Germania project.

44.     State that paragraph 44 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to Military Government Law Number 59 ("MGL No. 59") for a true and accurate statement of its contents.

45.     State that paragraph 45 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

46.     State that the first sentence of paragraph 46 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, refer to MGL No. 59 for a true and accurate statement of its contents, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 46.

47.     State that paragraph 47 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

48.     State that paragraph 48 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

49.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49, and refer to the National Security Council Policy Report and the U.S. State Department letter to the British Ambassador dated March 15, 1949 for a true and accurate statement of their contents.

50.     State that paragraph 50 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, refer to the MGL No. 59 for a true and accurate statement of its contents, and respond to the remaining allegations contained in paragraph 50 as follows:

    (a)     State that paragraph 50(a) of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is

11

necessary, and refer to the Berlin Restitution Law of 1949 for a true and accurate statement of its contents;

(b)    State that paragraph 50(b) of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the British Military Law 59 and French law Order No. 45-770 and Decree No-1344 for a true and accurate statement of their contents;

(c)    State that paragraph 50(c) of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the Treaty of Transition of 1954 for a true and accurate statement of its contents; and

(d)    State that paragraph 50(d) of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to Bundesruckerstattungsgesetz (BrüG), BGB1. 1957, and the Property Settlement Act of 1990 for a true and accurate statement of their contents.

51.    State that paragraph 51 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the legal authorities and texts cited therein for a true and accurate statement of their contents.

52.    State that paragraph 52 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the legal authorities and texts cited therein for a true and accurate statement of their contents.

53.    State that paragraph 53 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the legal authorities and texts cited in paragraph 53 for true and accurate statements of their contents.

54.    State that paragraph 54 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the legal authorities and texts cited therein for a true and accurate statement of their contents.

55.    Deny the allegations contained in paragraph 55 of the Counterclaim, except to the extent that paragraph 55 consists of a legal conclusion and argument to which no responsive pleading is necessary.

56.    State that paragraph 56 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the legal authorities and texts cited therein for a true and accurate statement of their contents.

57.    Deny the allegations contained in paragraph 57 of the Counterclaim, except to the extent that paragraph 57 consists of a legal conclusion and argument to which no responsive pleading is necessary.

58.    Deny the allegations contained in paragraph 58 of the Counterclaim, and aver that more provenance information has become readily accessible through the efforts of various parties.

59.    Deny the allegations contained in paragraph 59 of the Counterclaim, and refer to the NEPIP website for a true and accurate statement of its history and for an understanding of its operations.

60.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Counterclaim.

61.    Deny the allegations contained in paragraph 61 of the Counterclaim to the extent they pertain to matters of fact relating to the Paintings, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61.

62.    Deny the allegation contained in paragraph 62 of the Counterclaim that the Paintings were relinquished under duress or that Elsa was likely unaware of their sale, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62 of the Counterclaim.

63.    Deny the allegations contained in paragraph 63 of the Counterclaim, except admit that von Mendelssohn-Bartholdy died following a period of coronary disease on May 10, 1935, and that on his death Elsa took over his affairs.

64.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Counterclaim, except deny that von Mendelssohn-Bartholdy was in financial distress or selling art due to financial distress, and aver that von Mendelssohn-Bartholdy himself estimated his estate assets in February 1935 at RM 1,700,000, exclusive of the collection of paintings given to Elsa and familial property.

65.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Counterclaim, and aver that Elsa likely knew of the sale of the Paintings and that she lived until 1986 and that Defendant's mother, who was von Mendelssohn-Bartholdy's niece and was 20 years old at the time of von Mendelssohn-Bartholdy's death in 1935, lived until the 1990s.

66.    Deny the allegations contained in paragraph 66 of the Counterclaim to the extent they pertain to matters of fact relating to the Paintings, deny knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66, and refer to the testimony of Ambassador Stuart E. Eizenstat for a true and accurate statement of its contents.

       67.     Admit generally that interested parties, including the Museums, have made important efforts to facilitate the bringing of legitimate Holocaust and other art restitution claims, and respond to the remaining allegations contained in paragraph 67 of the Counterclaim as follows:

      (a)     State that paragraph 67(a) of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the texts cited therein for a true and accurate statement of their contents;

      (b)     Deny the allegations contained in paragraph 67(b) of the Counterclaim, and refer to the records of the Congressional hearings and the AAMD guidelines cited in paragraph 67(b) of the Counterclaim for a true and accurate statement of their contents;

      (c)     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67(c) of the Counterclaim, except deny that provenance information was unavailable prior to this initiative;

      (d)     Admit the allegations contained in paragraph 67(d) of the Counterclaim to the extent that they allege that the Washington Conference was held and that officials from 44 countries attended, and refer to the "Washington Principles" for a true and accurate

statement of their contents and to the website of the U.S.

Department of State for a history of the Washington Conference;

(e)     Deny the allegations contained in paragraph 67(e) of the

Counterclaim, except deny knowledge or information sufficient to

form a belief as to how Schoeps learned that von Mendelssohn-

Bartholdy had sold *Boy Leading a Horse* to Thannhauser and refer

to the agreement between the Association of Art Museum

Directors and the American Association of Museums, and the

NEPIP System for a true and accurate statement of their contents;

(f)     Deny the allegations contained in paragraph 67(f) of the

Counterclaim and refer to the website of the Special Envoy for

Holocaust issues for a true and accurate description of its mission

and activities; and

(g)     Deny the allegations contained in paragraph 67(g) of the

Counterclaim, and refer to the website of the Holocaust Claims

Processing Office of the New York State Banking Department for

a true and accurate statement of its activities.

68.     Deny the allegations contained in paragraph 68 of the Counterclaim,

except deny knowledge or information sufficient to form a belief as to the truth of the allegations

pertaining to when Schoeps discovered that von Mendelssohn-Bartholdy sold *Boy Leading a*

*Horse*, and admit that Provenance Research Project is linked to the NEPIP System and that *Boy*

*Leading a Horse* is listed on the NEPIP.

69.    Deny the allegations contained in paragraph 69 of the Counterclaim, except refer to the NEPIP website for a true and accurate statement of its activities.

70.    Deny the allegations contained in paragraph 70 of the Counterclaim to the extent they relate to von Mendelssohn-Bartholdy or the Paintings and to the extent they assert diligence in the investigation and in the bringing of this claim, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70.

71.    State that paragraph 71 of the Counterclaim consists largely of legal conclusions and argument about the policies of the United States and the state of New York to which no responsive pleading is required and, to the extent it does not, deny the allegations contained in paragraph 71.

72.    State that paragraph 72 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary and deny that permitting the Museums to raise the defense of laches in this case would frustrate applicable federal or state policies.

73.    Deny the allegations contained in paragraph 73 of the Counterclaim.

74.    Deny the allegations contained in paragraph 74 of the Counterclaim.

75.    Deny the allegations contained in paragraph 75 of the Counterclaim, except admit that due to persecution by the Nazi Regime of Jews in Europe, there was enormous displacement of art, and refer to the American Commission Circular for a true and accurate statement of its contents.

76.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Counterclaim, and refer to the circular letter issued by the U.S. Department of State in 1951 for a true and accurate statement of its contents.

77.    Admit the allegations contained in paragraph 77 of the Counterclaim.

78.    Admit generally the allegations contained in paragraph 78 of the Counterclaim that issues of Nazi looted art have been covered by the news media, and refer to the publications cited therein for a true and accurate statement of their contents.

79.    Admit the truth of the allegations contained in paragraph 79 of the Counterclaim, and refer to the memoirs cited therein for a true and accurate statement of their contents.

80.    Deny knowledge or information sufficient to form a belief as to the truth of the causation alleged in paragraph 80 of the Counterclaim, except admit that James Rorimer headed the Metropolitan Museum of Art in New York and that Thomas Carr Howe served as the director of the San Francisco Legion of Honor, and refer to the memoirs mentioned therein for a true and accurate statement of their contents.

81.    Admit the allegations contained in paragraph 81 of the Counterclaim, except refer to the text cited therein for a true and accurate statement of its contents.

82.    Refer to the publication cited in paragraph 82 of the Counterclaim for a true and accurate statement of its contents.

83.    Admit the allegations contained in paragraph 83 of the Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations as to what Defendant believes the art world was alerted.

84.    Deny the allegations contained in paragraph 84 of the Counterclaim, except admit that the Museums were aware of the existence in the marketplace of Nazi confiscated art, and deny that the Paintings were in fact Nazi confiscated art.

85.    Deny the allegations contained in paragraph 85 of the Counterclaim.

86.    State that paragraph 86 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is required, and refer to the legal texts and authorities cited therein for a true and accurate statement of their contents.

87.    State that paragraph 87 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is required, and refer to the legal texts and authorities cited therein for a true and accurate statement of their contents.

88.    Deny the allegations contained in paragraph 88 of the Counterclaim, except admit that Paley donated *Boy Leading a Horse* to MoMA in 1964, retaining a life estate, and that MoMA absolutely acquired the painting upon Paley's death in 1990.

89.    Deny the allegations contained in paragraph 89 of the Counterclaim, and aver that in 1936 Skira purchased *Boy Leading a Horse* for the account of and as agent for Paley, who likely followed the news, and was therefore likely aware of certain publicly reported events in Nazi Germany, and admit that Paley was a sophisticated art collector who held positions as a trustee and president of MoMA.

90.    Deny the allegations contained in paragraph 90 of the Counterclaim.

91.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91 of the Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

92.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92 of the Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

93.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93 of the Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

94.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

95.     Deny the allegations contained in paragraph 95 of the Counterclaim, except admit that Skira did not inform Paley that Thannhauser was the owner of the painting.

96.     Admit the allegations contained in paragraph 96 of the Counterclaim, except refer to the memoir cited therein for a true and accurate statement of its contents.

97.     Deny the allegations of paragraph 97 of the Counterclaim, except to the extent they consist of a legal conclusion and argument to which no responsive pleading is necessary.

98.     Deny the allegations contained in paragraph 98 of the Counterclaim, except admit Paley passed away in 1990, and refer to the publication cited therein for a true and accurate statement of its contents.

99.     Deny the allegations contained in paragraph 99 of the Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

100.    Deny the allegations contained in paragraph 100 of the Counterclaim.

101.    Deny the allegations contained in paragraph 101 of the Counterclaim.

102.    Deny the allegations contained in paragraph 102 of the Counterclaim, and aver that in 1963 Thannhauser agreed to bequeath *Le Moulin de la Galette* to the Guggenheim and that in 1978 the painting entered the museum's permanent collection.

103.    Deny the allegations contained in paragraph 103 of the Counterclaim, and aver the Guggenheim began researching the provenance and history of the works of art Thannhauser had agreed to bequeath to it well before 1972, and that the research was not conducted solely for the purpose of the publication entitled <u>Guggenheim Museum: Thannhauser Collection</u>.

104.    Admit the allegations contained in paragraph 104 of the Counterclaim.

105.    Admit the allegations contained in paragraph 105 of the Counterclaim, except refer to the document cited therein for a true and accurate statement of its contents.

106.    Admit the allegations contained in paragraph 106 of the Counterclaim, and aver that the questions Daniel Catton Rich asked of Thannhauser were based not only on Thannhauser's 1972 annotations, but also on research performed by the Guggenheim, and refer to the document cited therein for a true and accurate statement of its contents.

107.    Deny the allegations contained in paragraph 107 of the Counterclaim, except refer to the document cited therein for a true and accurate statement of its contents.

108.    Deny the allegations contained in paragraph 108 of the Counterclaim, and aver that Elsa became the owner of *Le Moulin de la Galette* when von Mendelssohn-Bartholdy gifted his collection of paintings to her upon their marriage in 1927, deny knowledge or information sufficient to form a belief as to the truth of the allegation that *Le Moulin de la Galette* was exhibited in Buenos Aires with the intention of attempting to sell it there, and refer to the documents cited therein for a true and accurate statement of their contents.

109.    Admit the allegations contained in paragraph 109 of the Counterclaim,
except refer to the publication cited therein for a true and accurate statement of its contents.

110.    Deny the allegations contained in paragraph 110 of the Counterclaim, and
respond to the remaining allegations contained in paragraph 110 of the Counterclaim as follows:

(a)    Deny the allegations contained in paragraph 110(a) of the
Counterclaim;

(b)    Deny the allegations contained in paragraph 110(b) of the
Counterclaim, except admit that von Mendelssohn-Bartholdy was
from Berlin, and refer to the documents cited therein for a true and
accurate statement of their contents;

(c)    Admit the allegation contained in paragraph 110(c) of the
Counterclaim that the persecution of the Jews by the Nazi Regime
started with its rise to power in 1933, and aver that it increased in
intensity throughout the Nazi Regime;

(d)    Deny the allegations contained in paragraph 110(d) of the
Counterclaim;

(e)    Deny the allegations contained in paragraphs 110(e)(1) and (2) of
the Counterclaim to the extent they pertain to matters of fact
during von Mendelssohn-Bartholdy's lifetime; and

(f)    Deny the allegations contained in paragraph 110(f), and refer to the
documents cited therein for a true and accurate statement of their
contents.

111.    Deny the allegations contained in paragraph 111 of the Counterclaim.

112.    Deny the allegations contained in paragraph 112 of the Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

113.    Deny the allegations contained in paragraph 113 of the Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

114.    Deny the allegations contained in paragraph 114 of the Counterclaim, refer to the letter cited therein for a true and accurate statement of its contents, and aver that the letter the Guggenheim received from the Art Loss Register dated June 15, 2006 regarding *Le Moulin de la Galette* contained no reference questioning Thannhauser's integrity.

115.    Deny the allegations contained in paragraph 115 of the Counterclaim.

116.    Deny the allegations contained in paragraph 116 of the Counterclaim, except admit that the Guggenheim  placed *Le Moulin de la Galette* on NEPIP in 2007 and that the painting met the criteria for inclusion on NEPIP, and aver that the Guggenheim began writing the report for inclusion on the NEPIP System and inquired and received a letter from the Art Loss Register before being contacted by Defendant's counsel.

117.    Deny the allegations contained in paragraph 117 of the Counterclaim, except to the extent that paragraph 117 consists of a legal conclusion and argument to which no responsive pleading is necessary.

## COUNT ONE
### (Conversion)

118.    In response to paragraph 118 of the Counterclaim, repeat and reallege paragraphs 1 through paragraph 118 hereof as if fully set forth herein.

119.    State that paragraph 119 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

120.    Deny the allegations contained in paragraph 120 of the Counterclaim.

23

121.    Deny the allegations in paragraph 121 of the Counterclaim, except admit that counsel for Schoeps purported to represent the heirs of von Mendelssohn-Bartholdy on whose behalf counsel demanded the Paintings and that the Museums, through their attorneys, refused the demand on December 7, 2007.

122.    Deny the allegations contained in paragraph 122 of the Counterclaim.

## COUNT TWO
### (Replevin)

123.    In response to paragraph 123 of the Counterclaim, repeat and reallege paragraphs 1 through paragraph 123 hereof as if fully set forth herein.

124.    Deny the allegations contained in paragraph 124 of the Counterclaim, except admit that the Paintings are unique.

125.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 125 of the Counterclaim.

126.    Deny the allegations contained in paragraph 126 of the Counterclaim, except admit that the Paintings are in the possession of the Museums.

127.    Deny the allegations contained in paragraph 127 of the Counterclaim.

128.    Deny the allegations in paragraph 128 of the Counterclaim, except admit that counsel for Schoeps purported to represent the heirs of von Mendelssohn-Bartholdy on whose behalf counsel demanded the Paintings and that the Museums, through their attorneys, refused the demand on December 7, 2007.

129.    Deny the allegations contained in paragraph 129 of the Counterclaim.

### COUNT THREE
### (Request for Declaratory Relief under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201)

130.    In response to paragraph 130 of the Counterclaim, repeat and reallege paragraphs 1 through paragraph 130 hereof as if fully set forth herein.

131.    State that paragraph 131 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

132.    Deny the allegations contained in paragraph 132 of the Counterclaim, except state that the balance of paragraph 132 of the Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

133.    Deny the allegations contained in paragraph 133 of the Counterclaim, except admit that Schoeps purports to seek a declaratory judgment.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

134.    Defendant fails to state a claim upon which relief can be granted under the applicable German and Swiss law for the reasons, among others, that he fails to allege 1) that Thannhauser intentionally took advantage of any distress being experienced by von Mendelssohn-Bartholdy, and 2) the price Thannhauser paid for the Paintings.

### Second Affirmative Defense

135.    Defendant does not have a claim under German or New York law because the Paintings were given as a wedding gift to Elsa in 1927.

### Third Affirmative Defense

136.    Defendant's claim was relinquished and released under German and New York law when his grandparents, and the other sisters of von Mendelssohn-Bartholdy and their spouses, relinquished and released any right to the Paintings by signing the legal protocol

acknowledging the validity of von Mendelssohn-Bartholdy's 1935 Contract of Inheritance, including its provision that von Mendelssohn-Bartholdy's art collection had previously been gifted to Elsa and was excluded from the estate.

### Fourth Affirmative Defense

137.    Defendant's claims are barred because Elsa, the owner of the Paintings, waived any claim to the Paintings when she did not include any such claims in the claims she made for restitution after the war.

### Fifth Affirmative Defense

138.    Defendant is not entitled to restitution under the Allied restitution laws, such as MGL No. 59, because those laws required that claims be made by specific deadlines, the latest of which was December 1949.

### Sixth Affirmative Defense

139.    Defendant's failure to make restitution claims for the Paintings under the Allied restitution laws, such as MGL No. 59, and the German restitution laws within the time limits provided in those laws precludes Defendant from making any claim for the Paintings under the applicable contract law for setting aside a sale.

### Seventh Affirmative Defense

140.    Defendant is not entitled to restitution under the German restitution laws of 1957 for the Federal Republic of Germany and/or 1990 for the former German Democratic Republic, because those laws had deadlines for the making of restitution claims that have since passed, and moreover, they, for the most part, apply only to property that is shown to have been taken by the German state.

### Eighth Affirmative Defense
### (Claims against MoMA)

141.    Defendant's claims are barred under Swiss and New York law by Paley's good faith purchase for value of *Boy Leading a Horse* given that Thannhauser did not steal the painting. Under Swiss law, good faith is presumed absent proof to the contrary. Moreover, nothing in the circumstances here suggests bad faith.

### Ninth Affirmative Defense

142.    Under Swiss and German law, Defendant's claims are barred by the presumption that possessors have good title to the property in their possession. Therefore, Defendant will need to rebut the presumption that Thannhauser had and the Guggenheim has good title to *Le Moulin de la Galette*, and that Thannhauser and Paley had, and MoMA has, good title to *Boy Leading a Horse*, which he will be unable to do.

### Tenth Affirmative Defense

143.    Defendant's claims are barred, in whole or in part, by the equitable doctrine of laches because Schoeps and all of his predecessors in interest, and Elsa as the owner of the Paintings prior to their sale to Thannhauser, should in the exercise of reasonable diligence have made a demand for restitution of the Paintings, were it concluded that such a demand was justified, while relevant witness to the events in question were still alive, and his and their failure to do so has caused prejudice to the Museums.

### Eleventh Affirmative Defense

144.    Defendant's claims are time barred in whole or in part under New York law. The Paintings were not stolen, confiscated, or taken by physical threat or the equivalent. Therefore, the rule that demand need not be made within a reasonable period of time applicable to stolen property in the hands of a good faith purchaser is not applicable here and Schoeps, and

27

all of Schoeps' predecessors in interest, and Elsa as the owner of the Paintings prior to their sale

to Thannhauser, had an obligation to make a demand for their restitution within a reasonable

period of time. See concurring opinion of Judge Jon O. Newman in Hoelzer v. City of Stamford,

933 F.2d 1131, 1139 (2d Cir. 1991). Such reasonable period of time expired before any demand

was in fact made by Schoeps. Schoeps has the burden of proving that his demand for restitution

was timely under this standard.

### Twelfth Affirmative Defense
### (Claims Against the Guggenheim)

145.    Defendant's claims against the Guggenheim are barred by the statute of

limitations under New York law for the additional reason that the Guggenheim, not being a

purchaser for value, stands in the shoes of Thannhauser and the limitations period for any claim

against him would run from the date of the allegedly wrongful transfer.

### Thirteenth Affirmative Defense

146.    Defendant's claims are time barred under Swiss and German law.  The

Paintings were located either in Switzerland or Germany at the time of their sale to Thannhauser.

The failure of Schoeps and all of his predecessors in interest, and Elsa as the owner of the

Paintings at the time of their sale to Thannhauser, to seek restitution of the Paintings within a

reasonable period of time gave rise to reasonable grounds for belief that no claim would be

made.  Under Swiss and German law this delay in seeking restitution precludes the making of

this belated claim.

### Fourteenth Affirmative Defense

147.    While Schoeps has capacity under Rule 17 of the Federal Rules of Civil

Procedure, and the German law to which Rule 17 points, to bring a claim for restitution in his

individual capacity, he does not have such capacity or standing under New York law, only the

28

capacity or standing to sue for a counter declaratory judgment. Under the Erie doctrine, this conflict must be resolved in favor of applying state law.

### Fifteenth Affirmative Defense

148.    There is no legal basis for Defendant's request for an award of his costs, expenses and interest.

### Additional Affirmative Defenses

149.    Plaintiffs hereby give notice that they intend to rely upon any other defense or defenses that may become available or appear during pretrial proceedings in this case and hereby reserve the right to amend this Answer and Affirmative Defenses to the Counterclaims to plead and assert any such additional affirmative defenses as they become known and appropriate during the course of litigation.

Dated: New York, New York
       May 22, 2008

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
       Evan A. Davis
       Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Plaintiffs The Museum of Modern Art
and The Solomon R. Guggenheim Foundation