BYRNE GOLDENBERG & HAMILTON, PLLC
John J. Byrne, Jr. (JB-6687)
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036
Telephone: (202) 857-9775
Facsimile: (202) 857-9799

BRESSLER AMERY & ROSS, P.C.
David H. Pikus (DP-7846)
Kenneth M. Moltner (KM-7778)
David Smitham (DS-7778)
17 State Street
New York, New York 10004
Telephone: (212) 425-9300
Facsimile: (212) 425-9337

Attorneys for Defendant Julius H. Schoeps

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MUSEUM OF MODERN ART, et al., | 07 Civ. 11047 (JSR) |
| Plaintiffs, | |
| v. | **DECLARATION OF JOHN J. BYRNE, JR. IN SUPPORT OF MOTION OF JULIUS H. SCHOEPS TO JOIN ADDITIONAL COUNTERCLAIMANTS** |
| JULIUS H. SCHOEPS, | |
| Defendant. | |

JOHN J. BYRNE, JR., under penalty of perjury, declares:

1. I am a member of the firm of Byrne Goldenberg & Hamilton, PLLC, attorneys for Defendant and Counterclaimant Julius H. Schoeps ("Professor Schoeps" or "Schoeps"), as well

as Ms. Edelgard von Lavergne-Peguilhen (Ms. Lavergne-Peguilhen) and Dr. Florence Kesselstatt (Dr. Kesselstatt). I am a member in good standing of the bar of the State of New York and the bar of the United States District Court for the Southern District of New York. I submit this Declaration in support of the Motion of Julius H. Schoeps to Join Additional Counterclaimants and To File A First Amended Counterclaim (Motion).

2. Professor Schoeps is now seeking to add Ms. Lavergne-Peguilhen and Dr. Kesselstatt as additional Counterclaimants to the Counterclaim he has pending against the Museum of Modern Art (MoMA) and the Solomon R. Guggenheim Foundation (Guggenheim) to recover Pablo Picasso's *Boy Leading a Horse* at MoMA and Picasso's *Le Moulin de la Galette* at the Guggenheim (the artworks will be referred to jointly as the "Paintings"). Schoeps is an heir of Paul von Mendelssohn-Bartholdy, who lost the Paintings due to Nazi persecution, as set forth in the First Amended Counterclaim.

3. Elsa von Mendelssohn-Bartholdy was married to Paul von Mendelssohn-Bartholdy until his death in May 1935. Ms. Lavergne-Peguilhen and Dr. Kesselstatt are the only heirs of Elsa von Mendelssohn-Bartholdy (Elsa). Dr. Kesselstatt is Elsa's adopted daughter and Ms. Lavergne-Peguilhen is Elsa's niece. Dr. Kesselstatt and Ms. Lavergne-Peguilhen also want to intervene in the proceedings.

4. Julius Schoeps is the great-nephew and an heir of Paul von Mendelssohn-Bartholdy. Professor Schoeps claims the Paintings as an heir of Mendelssohn-Bartholdy. Schoeps' Counterclaim in this proceeding alleges that Mendelssohn-Bartholdy lost the Paintings in Nazi Germany due to Nazi persecution by a "forced consignment" for sale of the Paintings to Berlin art dealer Justin K. Thannhauser in or around October 1934, which was followed by either: (a) a forced sale by Mendelssohn-Bartholdy to Thannhauser; or (b) Thannhauser's theft of the

Painting. (See, e.g., First Amended Counterclaim, ¶ 1 and 50, a copy of which is being filed with the Motion).

5. As noted above Ms. Lavergne-Peguilhen and Dr. Kesselstatt are the sole legal heirs of Mendelssohn-Bartholdy's widow, Elsa, and Professor Schoeps now seeks with their permission to have them joined under Fed.R. Civ.P. 20(a) because they jointly assert an alternative right to relief arising out of the same transaction or series of transactions as the current Counterclaim of Julius Schoeps, and questions of law and fact common both to Schoeps' claim to recover the Paintings and their claim arise in this action.

6. On January 4, 2008 the Court entered a Case Management Plan in this proceeding designating June 2, 2008 as the final date for joining additional parties. On April 14, 2008 the Court entered an Order denying Schoeps' motion to dismiss the Museums' Complaint for Declaratory Relief (Complaint). The Court ruled that under Fed.R.Civ.P. 17(b), and as prescribed under the relevant law of Germany, Schoeps as an individual has the legal capability to be sued -- and by necessary implication to sue -- for a declaratory ruling regarding his rights in the Paintings.

7. In the Order the Court intimated that it would favor the joinder in this proceeding of additional parties with a potential interest in the Paintings. The Court said that "the Court sees no reason why the heirs could not be joined in this lawsuit if either side so chose, so long as their joinder would not imperil the expeditious resolution of this matter." (Order at 11). The Court stated further that it "will entertain any motions for joinder... on the part of the heirs (which the Museums have indicated that they will not oppose...) so long as such joinder actions are filed by the previously set deadline of June 2, 2008." (Order at 12)

8. Ms. Lavergne-Peguilhen and Dr. Kesselstatt have an interest in the disputed Paintings

that is alternative to Schoeps' interest, and which arises out of the same transaction, occurrence, or series of transactions as Schoeps' interest, and which presents questions of both law and fact that are common to both Museums as Counterclaim-Defendants. Ms. Lavergne-Peguilhen and Dr. Kesselstatt's alternative interest arises under Paul von Mendelssohn-Bartholdy's February 8, 1935 Contract for the Disposition of Property (Contract). Mendelssohn-Bartholdy executed his Contract after enduring more than two years of encompassing and unrelenting Nazi persecution that devastated him financially, professionally, and socially. (First Amended Counterclaim ¶ 45). Mendelssohn-Bartholdy executed the Contract against the same historical backdrop that induced him contemporaneously to begin selling integral components of his art collection, and with the same intensifying anxieties, pressures, and perturbations about a future that was growing bleaker with each passing month. For example, in or around October 1934, Mendelssohn-Bartholdy placed the Paintings and three other Picasso artworks on consignment for sale with Berlin art dealer Justin K. Thannhauser.

  9. We believe that Mendelssohn-Bartholdy included several provisions in the Contract in response to pervasive Nazi duress, and in an attempt to mitigate the devastating effects of Nazi persecution upon his estate and to preserve as much of his estate as possible for his heirs. One such provision is the recital that Mendelssohn-Bartholdy had gifted his "paintings" to his wife, Elsa, at the time of their wedding in 1927. We believe that this provision did not accurately relate who was the legal owner of the Paintings when Mendelssohn-Bartholdy executed the Contract, and that Mendelssohn-Bartholdy in fact made no such gift of his art collection -- or any artworks -- when they were married. We believe that we can establish that Mendelssohn-Bartholdy included this recital in an attempt, among other things, to protect his art collection from potential Nazi confiscation.

10. Notwithstanding the foregoing, the Museums have vigorously asserted that Elsa was given the disputed paintings as a wedding gift. In the alternative, the Museums may argue that the February 8, 1935 Contract created a contemporaneous *inter vivos* gift of Mendelssohn-Bartholdy's art collection to Elsa. Accordingly, if the finder of fact were to conclude that Mendelssohn-Bartholdy gifted his art collection to Elsa at or before the time he executed his Contract, then there are multiple scenarios which could lead the finder of fact to conclude that the heirs of Elsa and not the heirs of Mendelssohn-Bartholdy (Professor Schoeps) are the rightful owners of the Paintings. One example should suffice. The trier of fact may find that an *inter vivos* gift was made as the result of the February 1935 Contract and -- as we believe we can establish -- Elsa was totally unaware of Mendelssohn-Bartholdy's October 1934 consignment for sale of the disputed paintings to Thannhauser. If Thannhauser then used Elsa's ignorance of the consignment to steal the paintings after Paul von Mendelssohn-Bartholdy's death in May 1935, the heirs of Elsa are the rightful owners of the paintings.

11. These circumstances make clear that the claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the Paintings derives alternatively from the same transaction, occurrence, or series of transactions as Schoeps' claim, and that questions of both fact and law that are common both to their claim as well as to the claim of Schoeps will arise in this action.

12. Professor Schoeps, the other heirs of Paul von Mendelssohn-Bartholdy, Ms. Lavergne-Peguilhen, and Dr. Kesselstatt are all aware of the conflicting interests they have in their ownership claims to the Paintings. Nonetheless, they have affirmatively and expressly stated their desire to pursue the recovery of the Painting together in a coordinated effort with one counsel in light of the unique historical circumstances under which the Paintings were lost due to Nazi persecution.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 2, 2008.

_____
John J. Byrne, Jr.