BYRNE GOLDENBERG & HAMILTON, PLLC
John J. Byrne, Jr. (JB-6687)
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036
Telephone: (202) 857-9775
Facsimile: (202) 857-9799


BRESSLER AMERY & ROSS, P.C.
David H. Pikus (DP-7846)
Kenneth M. Moltner (KM-7778)
David Smitham (DS-7778)
17 State Street
New York, New York
Telephone (212) 425-9300
Facsimile:(202) 425-9337

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE MUSEUM OF MODERN ART, and )
THE SOLOMON R. GUGGENHEIM FOUNDATION, )

　　　　Plaintiffs,　　　　　　　) 07 Civ. 11074 (JSR)

　　　　v.　　　　　　　　　　　)

JULIUS H. SCHOEPS, )

　　　　Defendant. )

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JULIUS H. SCHOEPS TO JOIN ADDITIONAL COUNTERCLAIMANTS AND TO FILE A FIRST AMENDED COUNTERCLAIM**

I. INTRODUCTION AND SUMMARY OF SCHOEPS' POSITION

Defendant and Counterclaimant Julius H. Schoeps (Schoeps) respectfully submits this memorandum of points and authorities in support of his motion under Fed.R. Civ.P 20(a) to join as Counterclaimants in this proceeding Ms. Edelgard von Lavergne-Peguilhen (Ms. Lavergne-Peguilhen) and Dr. Florence Kesselstatt (Dr. Kesselstatt). Ms. Lavergne-Peguilhen and Dr. Kesselstatt have claims to recover the disputed Picasso paintings -- *Boy Leading a Horse* at the Museum of Modern Art (MoMA) and *Le Moulin de la Galette* at the Solomon R. Guggenheim Museum (Guggenheim) (the paintings will be referred to jointly as the "Paintings") -- that are alternative to his own claim, derive from the same transactions and occurrences, and have in common with his claim many questions both of fact and law. Accordingly, their joinder will promote the goal of judicial efficiency upon which Fed.R. Civ.P. 20(a) is based.

Ms. Lavergne-Peguilhen and Dr. Kesselstatt are the only heirs of Elsa von Mendelssohn-Bartholdy, the widow of Paul von Mendelssohn-Bartholdy (Mendelssohn-Bartholdy). Schoeps seeks to join them as Counterclaimants with him because their alternative claim to recover the disputed Paintings derives from the same facts as his own. Schoeps' Counterclaim in this proceeding alleges that Mendelssohn-Bartholdy lost the Paintings in Nazi Germany in a consignment forced by Nazi persecution followed by: (a) a paradigmatic "forced sale" or "sale under duress;" or (b) the embezzlement and theft of the Paintings by Berlin art dealer Justin K. Thannhauser. (See, e.g., First Amended Counterclaim, ¶ 46).

The alternative claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the disputed Paintings derives from the Contract for the Disposition of Property that Mendelssohn-Bartholdy

2

executed in Nazi Germany on February 8, 1935, shortly before his death in May 1935. Schoeps believes that Mendelssohn-Bartholdy included several provisions in the Contract for the Disposition of Property in an attempt to mitigate the predatory effects of intensifying Nazi persecution, among other reasons, and so to preserve as much property as possible for his heirs. These include a recital that he gifted his "paintings" to his wife Elsa when they were married in 1927. But if the jury accepts this recital is a reliable statement of historical truth -- or finds that the effect of this recital was to create a contemporaneous *inter vivos* gift of the art collection to Elsa -- then the heirs of Elsa (Ms. Lavergne-Peguilhen and Dr. Kesselstatt), rather than the heirs of Mendelssohn-Bartholdy (Schoeps), would be the rightful owners of the Paintings if the jury also finds that art dealer Thannhauser embezzled and stole the Paintings from an unsuspecting Elsa shortly after Mendelssohn-Bartholdy died.

Because the alternative claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the Painting derive from the same transactions and occurrences as Schoeps' claim, and have in common many questions of both fact and law, the joinder of their alternative claims in this proceeding will promote judicial efficiency and conserve the resources of the parties, which are the principle objectives of Fed.R.Civ.P.20(a).

Notwithstanding the apparent competing theories of ownership of the Paintings on behalf of the heirs of Elsa and Paul von Mendelssohn-Bartholdy, all such heirs have decided to expressly waive such conflicts and to proceed with one counsel in a united effort to recover the lost artworks.

## II. STATEMENT OF FACTS

On December 8, 2007 the Museums filed their Complaint for Declaratory Relief in this

proceeding seeking a ruling that Schoeps lacks any ownership interest in the Paintings.

On January 4, 2008 the Court entered a Case Management Plan in this proceeding designating June 2, 2008 as the final date for joining additional parties.

On April 14, 2008 the Court entered an Order denying Schoeps' motion to dismiss the Museums' Complaint for Declaratory Relief (Complaint). The Court ruled that under Fed.R.Civ.P. 17(b) -- and as the relevant law of Germany prescribes -- Schoeps as an individual has the legal capability to be sued -- and by necessary implication to sue -- for a declaratory ruling regarding his rights in the Paintings.

In the Order, the Court intimated that it would favor the joinder in this proceeding of additional parties with a potential interest in the Paintings. The Court said that "the Court sees no reason why the heirs could not be joined in this lawsuit if either side so chose, so long as their joinder would not imperil the expeditious resolution of this matter." (Order at 11). The Court stated further that it "will entertain any motions for joinder... on the part of the heirs (which the Museums have indicated that they will not oppose...) so long as such joinder actions are filed by the previously set deadline of June 2, 2008." (Order at 12)

On April 28, 2008, Schoeps filed his Answer and Counterclaim in this proceeding seeking, inter alia, a declaratory ruling that Mendelssohn-Bartholdy lost the Paintings in Nazi Germany as a result of a paradigmatic "forced sale" or in the alternative that the Painting was stolen, and declaring that as an heir of Mendelssohn-Bartholdy Schoeps is the rightful owner of the Paintings.

The interest of the proposed additional Counterclaimants and intervenors Ms. Lavergne-Peguilhen and Dr. Kesselstatt arises under the Contract for the Disposition of Property that Paul

von Mendelssohn-Bartholdy executed on February 8, 1935. (See accompanying Declaration of John J. Byrne (Byrne Decl.), ¶ 8). Mendelssohn-Bartholdy executed the Contract for the Disposition of Property after enduring more than two years of encompassing and unrelenting Nazi persecution that devastated him financially, professionally, and socially. (Id.; First Amended Counterclaim ¶ 45). Accordingly, Mendelssohn-Bartholdy executed the Contract for the Disposition of Property against the same historical backdrop that induced him contemporaneously to begin selling integral components of his art collection -- including the Paintings -- and with the same intensifying anxieties, pressures, and perturbations about a future that was growing bleaker with each passing month. (Byrne Decl. ¶ 8).

Schoeps believes that he can prove that Mendelssohn-Bartholdy included several provisions of the Contract for the Disposition of Property in response to pervasive Nazi duress, and in an attempt to mitigate the predatory effects of Nazi persecution upon his estate, and so to preserve as much of his property as possible for his heirs. (Byrne Decl. ¶ 9). One such provision is the recital that Mendelssohn-Bartholdy had gifted his "paintings" to his wife, Elsa, at the time of their wedding in 1927. (Id. at ¶ 9). Schoeps believes that this provision did not accurately relate who was the actual legal owner of the Paintings when Mendelssohn-Bartholdy executed the Contract for the Disposition of Property, and that Mendelssohn-Bartholdy in fact made no such gift of his art collection -- or any artworks -- when he and Elsa were married. (Id. at ¶ 9). Schoeps believes that he can establish that Mendelssohn-Bartholdy included this recital in an attempt, among other things, to protect his art collection from potential Nazi confiscation.

Notwithstanding the foregoing, the Museums have vigorously asserted that Elsa was given

5

the disputed Paintings as a wedding gift. In the alternative, the Museums may argue that the Contract for the Disposition of Property created a contemporaneous *inter vivos* gift of Mendelssohn-Bartholdy's art collection to Elsa. Accordingly, if the finder of fact were to conclude that Mendelssohn-Bartholdy gifted his art collection to Elsa at or before the time that he executed his Contract for the Disposition of Property, then there are multiple scenarios which could lead the finder of fact to conclude that the heirs of Elsa (Ms. Lavergne-Peguilhen and Dr. Kesselstatt) are the rightful owners, rather than the heirs of Mendelssohn-Bartholdy (Professor Schoeps). One example should suffice. The trier of fact may find that an *inter vivos* gift was made as the result of the February 1935 Contract for the Disposition of Property and -- as Schoeps believes that he can establish -- Elsa was totally unaware of Mendelssohn-Bartholdy's October 1934 consignment for sale of the disputed Paintings to Thannhauser. If Thannhauser then exploited Elsa's ignorance of the consignment to steal the paintings after Paul von Mendelssohn-Bartholdy's death in May 1935, the heirs of Elsa are the rightful owners of the Paintings.

Professor Schoeps, the other heirs of Paul von Mendelssohn-Bartholdy, Ms. Lavergne-Peguilhen and Dr. Kesselstatt are all aware of the conflicting interests that they have in their ownership claims to the Paintings. Nonetheless, they have affirmatively and expressly stated their desire to pursue the recovery of the Paintings together in a coordinated effort with one counsel in light of the unique historical circumstances under which the Paintings were lost due to Nazi persecution. (Byrne Decl. ¶ 12).

### III. ARGUMENT

#### A. The Alternative Claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to Recover the Paintings Arises from the Same Occurrences and Transactions as Schoeps' Claim and Presents Common Questions of Both Law and Fact

The alternative claim of Ms. Lavergne-Peguilhen to recover the Paintings satisfies the requirements for permissive joinder under Fed.R.Civ.P. 20(a) because their claim arises from the same occurrences and transactions as Schoeps' claim, and presents common questions of both law and fact.[1] Accordingly, and consistent with the purpose of Rule 20(a) to promote judicial economy and to conserve the resources of both the courts and parties[2], the joinder of their claims in this

---

[1] In the alternative to Schoeps' motion to join Ms. Lavergne-Peguilhen and Dr. Kesselstatt under Fed.R.Civ.P. 20(a) -- prescribing permissive joinder -- Ms. Lavergne-Peguilhen and Dr. Kesselstatt move the Court for an order permitting them to intervene as of right under Fed.R.Civ.P. 24(a).

The intervention of Ms. Lavergne-Peguilhen and Dr. Kesselstatt is appropriate under Fed.R.Civ.P. 24(a) because they claim an interest relating to the disputed Paintings which is the subject of this action and they are so situated that the disposition of the action may as a practical matter impair or impede their ability to protect that interest. As stated in this Memorandum, Ms. Lavergne-Peguilhen and Dr. Kesselstatt have an interest in the Painting that is alternative to Schoeps' interest. If the finder of fact determines that the disputed Paintings were stolen or otherwise wrongfully converted and so do not belong to the Museums, then the Paintings necessarily belong either to the heirs of Mendelssohn-Bartholdy (Schoeps) or to Ms. Lavergne-Peguilhen and Dr. Kesselstatt.

Schoeps has styled this motion as seeking primarily an order under Rule 20(a) because the Court in its Order of April 14, 2008 framed the potential inclusion of additional parties in this proceeding as a question of joinder. Order at 11-12.

[2] See, e.g., Charles Alan Wright et al. 7 Wright & Miller Federal Practice and Procedure ' 1652 at 395 (2001), observing that "the purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Accordingly "(s)ubdivision (a) simply establishes a procedure under which the demands of several parties arising out of the same litigable event may be tried together, thereby avoiding the unnecessary loss of time and money to the court and the parties that the duplicate presentation of evidence relating to facts common to more than one demand for relief would entail."

proceeding is appropriate. Rule 20(a) prescribes in relevant part as follows:

> **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

As the authors of a leading treatise on federal practice and procedure point out, Rule 20 prescribes two requirements for the joinder of parties: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all parties will arise in the action."[3] Moreover, courts interpret both requirements liberally and as necessary to further the objective of judicial efficiency: "(t)he transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."[4]

The claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the Paintings satisfy both requirements.[5] First, their claim arises from the same transactions or occurrences as Schoeps'

---

[3] Wright & Miller, supra note 2 at ¶ 1653. See also Blededell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989), noting that Rule 20 prescribes two cumulative requirements for joinder.

[4] Wright & Miller, supra note 2 at ¶ 1653.

[5] The claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt also is appropriately alternative to Schoeps' claim within the meaning of Rule 20(a). As stated in 4 James Wm. Moore, Moore's Federal Practice ¶ 20.03 (3d ed. 2007), "(t)he express recognition that parties may plead in the alternative is consistent with the modern pleading philosophy of the Rules which allows claims for relief in the alternative." See also Amalgamated Packaging Industries, Limited v. National Container Corp. (Delaware, 14 F.R.D. 194, 195 (S.D.N.Y. 1953), allowing two plaintiffs to plead

proceeding is appropriate. Rule 20(a) prescribes in relevant part as follows:

> **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

As the authors of a leading treatise on federal practice and procedure point out, Rule 20 prescribes two requirements for the joinder of parties: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all parties will arise in the action."[3] Moreover, courts interpret both requirements liberally and as necessary to further the objective of judicial efficiency: "(t)he transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy."[4]

The claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the Paintings satisfy both requirements.[5] First, their claim arises from the same transactions or occurrences as Schoeps'

---

[3] Wright & Miller, supra note 2 at ¶ 1653. See also Blededell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989), noting that Rule 20 prescribes two cumulative requirements for joinder.

[4] Wright & Miller, supra note 2 at ¶ 1653.

[5] The claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt also is appropriately alternative to Schoeps' claim within the meaning of Rule 20(a). As stated in 4 James Wm. Moore, Moore's Federal Practice ¶ 20.03 (3d ed. 2007), "(t)he express recognition that parties may plead in the alternative is consistent with the modern pleading philosophy of the Rules which allows claims for relief in the alternative." See also Amalgamated Packaging Industries, Limited v. National Container Corp. (Delaware, 14 F.R.D. 194, 195 (S.D.N.Y. 1953), allowing two plaintiffs to plead

claim. Courts interpret this requirement liberally as consonant with the purpose of Fed.R.Civ.P. 20(a), and require only that the two claims have a "logical relationship": "(t)he courts treat the terms 'transaction' and 'occurrence' synonymously, and use the concept of 'logical relationship' to define 'transactional relatedness' under the permissive party joinder rule."[6]

The claim of Schoeps on the one hand, and the claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt on the other, derive from the same transactions and occurrences, and have a "logical relationship" within the meaning of the authorities interpreting Fed.R.Civ.P. 20(a). Both claims are premised upon the intensive Nazi persecution of Mendelssohn-Bartholdy that induced him to consign the disputed Paintings to art dealer Justin Thannhauser in or around October 1934, and that resulted later either in a:(1) a paradigmatic "forced sale" of the Paintings by Mendelssohn-Bartholdy to Thannhauser, or; (2) an embezzlement and theft of the Paintings by Thannhauser from an unsuspecting Elsa after Mendelssohn-Bartholdy died. (Byrne Decl. ¶ 4). There can be no doubt, then, that the claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the disputed Paintings are premised upon the same transactions and occurrences that underlie Schoeps' claim and that the two claims have more than a mere "logical relationship", and in fact are nearly congruent.

The claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt also will present common questions of both fact and law with Schoeps' claim. The requirement that the claims present at least

---

claims for recovery alternatively against a single defendant in a breach of warranty action and observing that "a right to single recovery is stated so that permissive joinder is appropriate...Rule 20, Fed. Rules Civ. Proc...."

[6] 4 James Wm. Moore et al., Moore's Federal Practice ' 20.05[2] (3d ed. 2007).

one common question of law or fact "is the easier requirement to satisfy"[7], and courts interpret this requirement liberally. As the authors of 4 James Wm. Moore, Moore's Federal Practice (3d ed. 2007) relate:

> Rule 20 does not require much in the way of commonality. First, the Rule requires only a single common question, not multiple common questions. Second, the common questions may be one of either law or of fact. Third, the common question need not be the most important, or predominant, issue in the case.[8]

Many questions of both fact and law are common to the claim of Schoeps on the one hand and Ms. Lavergne-Peguilhen and Dr. Kesselstatt on the other. These include: the multitude of factual questions concerning the scope and extent of Nazi persecution that Mendelssohn-Bartholdy suffered; whether Nazi persecution induced Mendelssohn-Bartholdy to consign and later sell the Paintings to art dealer Thannhauser in a "forced sale"; whether Thannhauser embezzled and stole the Paintings after Mendelssohn-Bartholdy died; whether Nazi persecution induced Mendelssohn-Bartholdy to include several recitals and other provisions in his Contract for the Disposition of Property of February 8, 1935 in an effort to mitigate Nazi predation; and, what effect, if any, these recitals and provisions had on who succeeded to the ownership rights of the Paintings.

---

[7] 4 James Wm. Moore et al., Moore's Federal Practice ' 20.04[1] (3d ed. 2007).

[8] Id. at ' 20.04[1]. See also 7 Charles Alan Wright et al., Federal Practice and Procedure (3d ed. 2001) at ' 1653, relating that "Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact." Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1422 (S.D.N.Y. 1989), "(t)he rule does not require that all questions of law and fact raised by the dispute be common...On the contrary, Rule 20(a) provides for a joinder of parties if there is any question of law or fact common to all..."

These common and pervasive questions make clear that joining the alternative claims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt both will promote judicial economy and conserve the resources of the parties as Fed.R.Civ.P 20(a) envisions.

## IV. CONCLUSION

The foregoing establishes that the claim of Ms. Lavergne-Peguilhen and Dr. Kesselstatt to recover the Paintings derives alternatively from the same transaction, occurrence, or series of transactions as Schoeps' claim, and that questions of both fact and law that are common both to their claim as well as to the claim of Schoeps will arise in this action. Accordingly, in the interests of judicial economy the Court should exercise its discretion to permit the joinder of the counterclaims of Ms. Lavergne-Peguilhen and Dr. Kesselstatt.

Respectfully submitted,

_____/S/_____
John J. Byrne, Jr. (JB-6687)
BYRNE GOLDENBERG & HAMILTON, PLLC
1025 Connecticut Avenue, N.W.
Suite 1012
Washington, D.C. 20036

Telephone: (202) 857-9775
Facsimile: (202) 857-9799

BRESSLER AMERY & ROSS, P.C.
David H. Pikus (DP-7846)
Kenneth M. Moltner (KM-7778)
David Smitham (DS-7778)
17 State Street
New York, New York 10004

Telephone: (212) 425-9300
Facsimile: (212) 425-9337
Attorneys for Defendant Julius H. Schoeps