UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

THE MUSEUM OF MODERN ART, and THE
SOLOMON R. GUGGENHEIM FOUNDATION,

                Plaintiffs,

BOY LEADING A HORSE, and LE MOULIN DE
LA GALETTE, Two Paintings by Pablo Picasso,

                Plaintiffs-in-rem,

             - against -

JULIUS H. SCHOEPS,

                Defendant.

----------------------------------------------------------------x

JULIUS H. SCHOEPS, EDELGARD VON
LAVERGNE-PEGUILHEN and FLORENCE
KESSELSTATT,

                Counterclaim-Plaintiffs,

             - against -

THE MUSEUM OF MODERN ART, and THE
SOLOMON R. GUGGENHEIM FOUNDATION,

                Counterclaim-Defendants.

----------------------------------------------------------------x

07 Civ. 11074 (JSR)

**ANSWER AND AFFIRMATIVE
DEFENSES TO THE FIRST
<u>AMENDED COUNTERCLAIM</u>**

        Plaintiffs The Museum of Modern Art ("MoMA") and The Solomon R.
Guggenheim Foundation (the "Guggenheim") (collectively, the "Museums" or "Plaintiffs"), by
their counsel, Cleary Gottlieb Steen & Hamilton LLP, as and for their Answer and Affirmative
Defenses to the First Amended Counterclaim (the "Amended Counterclaim") of Julius H.

Schoeps ("Schoeps"), Edelgard von Lavergne-Peguilhen ("Lavergne-Peguilhen") and Florence Kesselstatt ("Kesselstatt") (collectively, the "Counterclaim-Plaintiffs"), state as follows:

## INTRODUCTORY STATEMENT

Because it is necessary to cast this Answer to Counterclaim-Plaintiffs' Amended Counterclaim in terms of admissions and denials, and because intertwined in a number of allegations are statements invoking the horrors of the Holocaust, the Museums wish to be plain that this pleading should in no way be read as denying those horrors. What the Museums deny is that either the Nazi Regime or the art dealer Justin K. Thannhauser ("Thannhauser") forced Paul von Mendelssohn-Bartholdy ("von Mendelssohn-Bartholdy") to sell to Thannhauser the paintings in issue here, *Boy Leading a Horse* (1906) and *Le Moulin de la Galette* (1900) (collectively the "Paintings"). The Museums deny that von Mendelssohn-Bartholdy was forced to sell the Paintings because of persecution by the Nazi Regime. They deny that Thannhauser, who was well regarded and who valued the Mendelssohn and Mendelssohn-Bartholdy families as important and influential clients, stole the Paintings or otherwise acted improperly or immorally. They deny that William S. Paley ("Paley"), a well respected businessman, purchased looted art or was anything other than a good faith purchaser for value. The Museums further respond to Counterclaim-Plaintiffs' Amended Counterclaim as follows:

1.  Deny the allegations contained in paragraph 1 of the Amended Counterclaim, except admit that von Mendelssohn-Bartholdy was a wealthy banker in Berlin and a descendant of Moses Mendelssohn.

2.  Deny the allegations contained in paragraph 2 of the Amended Counterclaim, except admit that the Amended Counterclaim purports to seek the restitution of Pablo Picasso's *Boy Leading a Horse*, oil on canvas, approximately 220.3 x 130.6 cms.,

2

completed approximately 1906 and *Le Moulin de la Galette*, oil on canvas, approximately 88.2 x 115.5 cms., completed approximately 1900.

    3.    Admit the allegations contained in paragraph 3 of the Amended Counterclaim, except deny that von Mendelssohn-Bartholdy's second wife, Elsa Lucy Emmy Lolo von Lavergne-Peguilhen (later Countess Kesselstatt) ("Elsa"), received only a "life estate" in the assets of von Mendelssohn-Bartholdy's estate, and aver that the Paintings, which had been previously gifted to Elsa at the time of their marriage in 1927, were not part of von Mendelssohn-Bartholdy's estate.

    4.    Deny the allegations contained in paragraph 4 of the Amended Counterclaim and aver that no Counterclaim-Plaintiff is proceeding on alternative theories of ownership to support his or her claim to relief.

    5.    Admit the first sentence of paragraph 5 of the Amended Counterclaim and deny the second sentence.

    6.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in first and last sentences of paragraph 6 of the Amended Counterclaim, deny the remaining allegations of that paragraph and aver that by August 31, 1935, five Picassos, including the Paintings, had been sold or transferred to Thannhauser.

    7.    Admit that von Mendelssohn-Bartholdy executed a "Contract for the Disposition of Property," on February 8, 1935, refer to that document for the terms thereof and deny the remaining allegations contained in paragraph 7 of the Amended Counterclaim except to the extent they consist of legal conclusions and argument to which no responsive pleading is necessary.

8.     Deny the allegations contained in paragraph 8 of the Amended

Counterclaim.

9.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 9 of the Amended Counterclaim, except admit that

Counterclaim-Plaintiffs' ownership claims are competing and aver that they are entirely

inconsistent and conflicting.

10.     State that paragraph 10 of the Amended Counterclaim consists of a legal

conclusion and argument to which no responsive pleading is necessary, except admit that the

Museums are tax-exempt organizations.

11.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 11 of the Amended Counterclaim, except admit on

information and belief that Schoeps brings this action in his personal capacity as an heir of von

Mendelssohn-Bartholdy and that Elsa and von Mendelssohn-Bartholdy's sisters are all deceased.

12.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 12 of the Amended Counterclaim, except aver that

Lavergne-Peguilhen and Kesselstatt bring this action in their personal capacities as alleged heirs

of Elsa and admit that Elsa died in Switzerland in 1986.

13.     Admit the allegations contained in paragraph 13 of the Amended

Counterclaim.

14.     Admit the allegations contained in paragraph 14 of the Amended

Counterclaim.

4

15.    State that paragraph 15 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, except admit that the Museums are tax-exempt organizations.

16.    Admit the allegations contained in paragraph 16 of the Amended Counterclaim.

17.    Deny the allegations contained in paragraph 17 of the Amended Counterclaim to the extent they involve the alleged wrongful continued possession of the Paintings, except admit that the Court has personal jurisdiction over the Museums.

18.    State that paragraph 18 of the Amended Counterclaim consists of a legal conclusion to which no responsive pleading is necessary, except admit that the Court has jurisdiction to determine Counterclaim-Plaintiffs' claims to the Paintings.

19.    Deny the allegations contained in paragraph 19 of the Amended Counterclaim to the extent they pertain to alleged events or omissions purportedly giving rise to the Amended Counterclaim, state that the balance of paragraph 19 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, except admit that the Museums reside in this district and that the Paintings are located in this district.

20.    Admit the allegations contained in paragraph 20 of the Amended Counterclaim.

21.    Admit the allegations contained in paragraph 21 of the Amended Counterclaim, except deny that von Mendelssohn-Bartholdy maintained a lifestyle befitting a man of dynastic wealth and aver that von Mendelssohn-Bartholdy lived a grand lifestyle as could only be prudently lived were he a man of great wealth.

22.     Deny the allegations contained in paragraph 22 of the Amended

Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 22 that the collection included works by Manet, Degas or

Tiepolo, and aver that upon von Mendelssohn-Bartholdy's marriage in 1927, he gave the

collection of paintings to his wife Elsa.

23.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 23 of the Amended Counterclaim.

24.     Deny the allegations contained in paragraph 24 of the Amended

Counterclaim, except admit that Adolf Hitler became Chancellor of Germany on January 30,

1933, and that von Mendelssohn-Bartholdy was a wealthy private banker who died in May 1935.

25.     Deny the allegations contained in paragraph 25 of the Amended

Counterclaim to the extent they pertain to matters of fact relating to Mendelssohn & Co., and

deny knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in paragraph 25, and aver that Jewish-owned banks, like other German

banks, were adversely affected from around 1930 onwards by the world-wide economic and

banking crisis commonly called the Depression.

26.     Deny the allegations contained in paragraph 26 of the Amended

Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 26 to the extent they pertain to matters of fact relating to

the resignation of an "Aryan" employee of von Mendelssohn-Bartholdy and the designation

under Nazi citizenship laws of von Mendelssohn-Bartholdy as an "alien."

27.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 27 of the Amended Counterclaim, except deny that any

consignment of the Paintings was the direct and intended consequence of persecution by the Nazi Regime, and aver that the Paintings were exhibited in Buenos Aires in October 1934.

28.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Amended Counterclaim.

29.    Deny the allegations contained in paragraph 29 of the Amended Counterclaim, and aver that either von Mendelssohn-Bartholdy, on Elsa's behalf, or Elsa sold the Paintings to Thannhauser at some point after October 1934 and before August 1935.

30.    Deny the allegations contained in paragraph 30 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Amended Counterclaim to the extent they pertain to matters of fact relating to whether von Mendelssohn-Bartholdy sold any artworks from his collection before 1933.

31.    Deny the allegations contained in paragraph 31 of the Amended Counterclaim, except, as to the last sentence, deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 to the extent they pertain to matters of fact relating to what, if anything, Paley and Albert Skira ("Skira") may have said to one another at the time of the sale about Thannhauser being the owner of *Boy Leading a Horse*, and aver that Skira as agent for Paley purchased *Boy Leading a Horse* from Thannhauser for Paley's account.

32.    Deny the allegations contained in paragraph 32 of the Amended Counterclaim, except admit that *Boy Leading a Horse* was shipped to New York after Paley purchased it in Switzerland, that in 1964 Paley executed papers donating *Boy Leading a Horse* to

7

MoMA, retaining a life estate for himself, and that MoMA absolutely acquired *Boy Leading a Horse* when Paley died in 1990.

33.    Deny the allegations contained in paragraph 33 of the Amended Counterclaim, except admit that Thannhauser emigrated to the United States in or around 1940, aver that *Le Moulin de la Galette* was already in New York when Thannhauser emigrated, and admit that *Le Moulin de la Galette* has remained in New York since then except when lent for exhibition in the United States and abroad.

34.    Deny the allegations contained in paragraph 34 of the Amended Counterclaim, except admit that Thannhauser left *Le Moulin de la Galette* as a bequest to the Guggenheim.

35.    Deny the allegations in paragraph 35 of the Amended Counterclaim, except admit that counsel for Schoeps, purporting to represent only the heirs of von Mendelssohn-Bartholdy, demanded the return of the Paintings and that the Museums, through their attorneys, refused the demand on December 7, 2007.  The Museums deny that Lavergne-Peguilhen and Kesselstatt demanded the return of the Paintings prior to the filing of this Amended Counterclaim.

36.    Admit the allegations contained in paragraph 36 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the exact number of discriminatory laws and decrees promulgated in early 1933 and aver that initially, and at least through the time of von Mendelssohn-Bartholdy's death in May 1935, the Nazi Regime did not target Mendelssohn & Co.

37.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Amended Counterclaim.

8

38.     Deny the allegations contained in paragraph 38 of the Amended

Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy,

admit that the Flight Tax was enacted in 1931 and later expanded in scope, and aver that von

Mendelssohn-Bartholdy was, up until the time of his death, free to leave Germany, and refer to

the book cited therein for a true and accurate statement of its contents.

39.     Deny the allegations contained in paragraph 39 of the Amended

Counterclaim, and aver that Mendelssohn & Co. was important to the German economy and was

not specifically targeted by the Nazi regime until after von Mendelssohn-Bartholdy's death in

May 1935.

40.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 40 of the Amended Counterclaim, and aver that Jewish-

owned banks, like other German banks, were already adversely affected by the Depression and

by the banking crisis beginning in 1931 that Germany experienced in connection with the

Depression.

41.     Deny the allegations contained in paragraph 41 of the Amended

Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy

or to the extent they allege a uniform state of mind among German Jews at the time in question,

and refer to the book cited therein for a true and accurate statement of its contents.

42.     Deny the allegations contained in paragraph 42 of the Amended

Counterclaim to the extent they pertain to matters of fact relating to von Mendelssohn-Bartholdy

and Mendelssohn & Co. or to the extent they allege a uniform view of the future among German

Jewish bankers, deny knowledge or information sufficient to form a belief as to the truth of the

9

remaining allegations contained in paragraph 42, and refer to the letter cited therein for a true and accurate statement of its contents.

43.     Deny the allegations contained in paragraph 43 of the Amended Counterclaim to the extent they pertain to matters of fact involving von Mendelssohn-Bartholdy, and deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 43 relating to the balance of the indefinite period of time covered by the allegation.

44.     Deny the allegations contained in paragraph 44 of the Amended Counterclaim.

45.     Respond to the allegations contained in paragraph 45 of the Amended Counterclaim as follows:

> (a)     Deny the allegations contained in paragraph 45(a) of the Amended Counterclaim;
>
> (b)     Deny the allegations contained in paragraph 45(b) of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegation regarding a meeting between a representative of Mendelssohn & Co., and the Bank Commissar in 1934, and admit that the assets and liabilities of Mendelssohn & Co. were transferred to Deutsche Bank in 1938;
>
> (c)     Deny the allegations contained in paragraph 45(c) of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegation regarding the investigation of a Jewish manager of Mendelssohn & Co., and aver

10

that von Mendelssohn-Bartholdy was not targeted by Nazi
authorities;

(d)    Deny the allegations contained in paragraph 45(d) of the Amended
Counterclaim;

(e)    Deny the allegations contained in paragraph 45(e) of the Amended
Counterclaim, and aver that Mendelssohn & Co. did not want von
Mendelssohn-Bartholdy to petition for a reduction of his alimony
and agreed to take over the obligation to make the alimony
payments after von Mendelssohn-Bartholdy's death;

(f)    Deny the allegations contained in paragraph 45(f) of the Amended
Counterclaim;

(g)    Deny the allegations contained in paragraph 45(g) of the Amended
Counterclaim that von Mendelssohn-Bartholdy acted to block
alleged anticipated Nazi confiscation of his property, except admit
that von Mendelssohn-Bartholdy placed a financial encumbrance
on each of Alsenstrasse and Boernicke;

(h)    Deny knowledge or information sufficient to form a belief as to the
truth of the allegations contained in paragraph 45(h) of the
Amended Counterclaim;

(i)    Deny the allegations contained in paragraph 45(i) of the Amended
Counterclaim, except deny knowledge or information sufficient to
form a belief as to the truth of the allegations contained in

11

paragraph 45(i) relating to possible resignation from the specific board positions mentioned;

(j)    Deny the allegations contained in paragraph 45(j) of the Amended Counterclaim;

(k)    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45(k) of the Amended Counterclaim;

(l)    Deny the allegations contained in paragraph 45(l) of the Amended Counterclaim; and

(m)    Deny the allegations contained in paragraph 45(m) of the Amended Counterclaim.

46.    Deny the allegations contained in paragraph 46 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 to the extent they refer to a consignment for anticipated sale of the Paintings in connection with their exhibition in Buenos Aires.

47.    Deny the allegations contained in paragraph 47 of the Amended Counterclaim, except refer to the newspaper article and letter cited therein for a true and accurate statement of their contents, and aver that Thannhauser was not a trafficker in stolen or Nazi looted art, and that the letter the Guggenheim received from the Art Loss Register dated June 15, 2006 regarding *Le Moulin de la Galette* does not contain any reference questioning Thannhauser's integrity or the provenance of the painting.

48.    Deny the allegations contained in paragraph 48 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of

the allegations pertaining to M. Knoedler & Co., and refer to the texts and records cited therein for a true and accurate statement of their contents.

49.     Deny the allegations contained in paragraph 49 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 relating to the alleged consignment of the five Picassos, and aver that under the German law and practice applicable at the time, von Mendelssohn-Bartholdy had the authority to manage and deal in Elsa's property.

50.     Deny the allegations contained in paragraph 50 of the Amended Counterclaim, and refer to the book The Deutsche Bank and the Nazi Economic War Against The Jews by Harold James (Cambridge Univ. Press 2001) for the relevant history of Mendelssohn & Co., and admit that in 1938, three years after von Mendelssohn-Bartholdy's death, Elsa sold Alsenstrasse for a modest price under pressure of the Nazi government for the Germania project.

51.     State that paragraph 51 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to Military Government Law Number 59 ("MGL No. 59") for a true and accurate statement of its contents.

52.     State that paragraph 52 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

53.     State that the first sentence of paragraph 53 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, refer to MGL No. 59 for a true and accurate statement of its contents, and deny knowledge or

13

information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53.

54.    State that paragraph 54 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

55.    State that paragraph 55 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to MGL No. 59 for a true and accurate statement of its contents.

56.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Amended Counterclaim, and refer to the National Security Council Policy Report and the U.S. State Department letter to the British Ambassador dated March 15, 1949 for a true and accurate statement of their contents.

57.    State that paragraph 57 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, refer to the MGL No. 59 for a true and accurate statement of its contents, and respond to the remaining allegations contained in paragraph 57 as follows:

> (a)    State that paragraph 57(a) of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the Berlin Restitution Law of 1949 for a true and accurate statement of its contents;
>
> (b)    State that paragraph 57(b) of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary, and refer to the British Military Law 59 and

14

French law Order No. 45-770 and Decree No-1344 for a true and
accurate statement of their contents;

(c)     State that paragraph 57(c) of the Amended Counterclaim consists
of a legal conclusion and argument to which no responsive
pleading is necessary, and refer to the Treaty of Transition of 1954
for a true and accurate statement of its contents; and

(d)     State that paragraph 57(d) of the Amended Counterclaim consists
of a legal conclusion and argument to which no responsive
pleading is necessary, and refer to Bundesruckerstattungsgesetz
(BrüG), BGB1. 1957, and the Property Settlement Act of 1990 for
a true and accurate statement of their contents.

58.     State that paragraph 58 of the Amended Counterclaim consists of a legal
conclusion and argument to which no responsive pleading is necessary, and refer to the legal
authorities and texts cited therein for a true and accurate statement of their contents.

59.     State that paragraph 59 of the Amended Counterclaim consists of a legal
conclusion and argument to which no responsive pleading is necessary, and refer to the legal
authorities and texts cited therein for a true and accurate statement of their contents.

60.     State that paragraph 60 of the Amended Counterclaim consists of a legal
conclusion and argument to which no responsive pleading is necessary, and refer to the legal
authorities and texts cited in paragraph 60 for true and accurate statements of their contents.

61.     State that paragraph 61 of the Amended Counterclaim consists of a legal
conclusion and argument to which no responsive pleading is necessary, and refer to the legal
authorities and texts cited therein for a true and accurate statement of their contents.

62.     Deny the allegations contained in paragraph 62 of the Amended

Counterclaim, except to the extent that paragraph 62 consists of a legal conclusion and argument

to which no responsive pleading is necessary.

63.     State that paragraph 63 of the Amended Counterclaim consists of a legal

conclusion and argument to which no responsive pleading is necessary, and refer to the legal

authorities and texts cited therein for a true and accurate statement of their contents.

64.     Deny the allegations contained in paragraph 64 of the Amended

Counterclaim, except to the extent that paragraph 64 consists of a legal conclusion and argument

to which no responsive pleading is necessary.

65.     Deny the allegations contained in paragraph 65 of the Amended

Counterclaim, and aver that more provenance information has become readily accessible through

the efforts of various parties.

66.     Deny the allegations contained in paragraph 66 of the Amended

Counterclaim, and refer to the Nazi-Era Provenance Internet Portal ("NEPIP") website for a true

and accurate statement of its history and for an understanding of its operations.

67.     Deny knowledge or information sufficient to form a belief as to the truth

of the allegations contained in paragraph 67 of the Amended Counterclaim.

68.     Deny the allegations contained in paragraph 68 of the Amended

Counterclaim to the extent they pertain to matters of fact relating to the Paintings, and deny

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in paragraph 68.

69.     Deny the allegation contained in paragraph 69 of the Amended

Counterclaim that the Paintings were relinquished under duress or that Elsa was likely unaware

16

of their sale, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69 of the Amended Counterclaim.

70.    Deny the allegations contained in paragraph 70 of the Amended Counterclaim, except admit that von Mendelssohn-Bartholdy died following a period of coronary disease on May 10, 1935, and that on his death Elsa took over his affairs.

71.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 of the Amended Counterclaim, except deny that von Mendelssohn-Bartholdy was in financial distress or selling art due to financial distress, and aver that von Mendelssohn-Bartholdy himself estimated his estate assets in February 1935 at RM 1,700,000, exclusive of the collection of paintings given to Elsa and familial property.

72.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Amended Counterclaim, and aver that Elsa likely knew of the sale of the Paintings and that she lived until 1986 and that Counterclaim-Plaintiff Schoeps' mother, who was von Mendelssohn-Bartholdy's niece and was 20 years old at the time of von Mendelssohn-Bartholdy's death in 1935, lived until the 1990s.

73.    Deny the allegations contained in paragraph 73 of the Amended Counterclaim to the extent they pertain to matters of fact relating to the Paintings, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 73, and refer to the testimony of Ambassador Stuart E. Eizenstat for a true and accurate statement of its contents.

74.    Admit generally that interested parties, including the Museums, have made important efforts to facilitate the bringing of legitimate Holocaust and other art restitution

17

claims, and respond to the remaining allegations contained in paragraph 74 of the Amended

Counterclaim as follows:

(a)     State that paragraph 74(a) of the Amended Counterclaim consists

        of a legal conclusion and argument to which no responsive

        pleading is necessary, and refer to the texts cited therein for a true

        and accurate statement of their contents;

(b)     Deny the allegations contained in paragraph 74(b) of the Amended

        Counterclaim, and refer to the records of the Congressional

        hearings and the AAMD guidelines cited in paragraph 74(b) of the

        Amended Counterclaim for a true and accurate statement of their

        contents;

(c)     Deny knowledge or information sufficient to form a belief as to the

        truth of the allegations contained in paragraph 74(c) of the

        Amended Counterclaim, except deny that provenance information

        was unavailable prior to this initiative;

(d)     Admit the allegations contained in paragraph 74(d) of the

        Amended Counterclaim to the extent that they allege that the

        Washington Conference was held and that officials from 44

        countries attended, and refer to the "Washington Principles" for a

        true and accurate statement of their contents and to the website of

        the U.S. Department of State for a history of the Washington

        Conference;

18

(e)     Deny the allegations contained in paragraph 74(e) of the Amended
Counterclaim, except deny knowledge or information sufficient to
form a belief as to how Schoeps learned that von Mendelssohn-
Bartholdy had sold *Boy Leading a Horse* to Thannhauser and refer
to the agreement between the Association of Art Museum
Directors and the American Association of Museums, and the
NEPIP System for a true and accurate statement of their contents;

(f)     Deny the allegations contained in paragraph 74(f) of the Amended
Counterclaim and refer to the website of the Special Envoy for
Holocaust issues for a true and accurate description of its mission
and activities; and

(g)     Deny the allegations contained in paragraph 74(g) of the Amended
Counterclaim, and refer to the website of the Holocaust Claims
Processing Office of the New York State Banking Department for
a true and accurate statement of its activities.

75.     Deny the allegations contained in paragraph 75 of the Amended
Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of
the allegations pertaining to when Schoeps discovered that von Mendelssohn-Bartholdy sold *Boy
Leading a Horse*, and admit that Provenance Research Project is linked to the NEPIP System and
that *Boy Leading a Horse* is listed on the NEPIP.

76.     Deny the allegations contained in paragraph 76 of the Amended
Counterclaim, except refer to the NEPIP website for a true and accurate statement of its
activities.

77.    Deny the allegations contained in paragraph 77 of the Amended Counterclaim to the extent they relate to von Mendelssohn-Bartholdy or the Paintings and to the extent they assert diligence in the investigation and in the bringing of this claim, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77.

78.    State that paragraph 78 of the Amended Counterclaim consists largely of legal conclusions and argument about the policies of the United States and the state of New York to which no responsive pleading is required and, to the extent it does not, deny the allegations contained in paragraph 78.

79.    State that paragraph 79 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary and deny that permitting the Museums to raise the defense of laches in this case would frustrate applicable federal or state policies.

80.    Deny the allegations contained in paragraph 80 of the Amended Counterclaim.

81.    Deny the allegations contained in paragraph 81 of the Amended Counterclaim.

82.    Deny the allegations contained in paragraph 82 of the Amended Counterclaim, except admit that due to persecution by the Nazi Regime of Jews in Europe, there was enormous displacement of art, and refer to the American Commission Circular for a true and accurate statement of its contents.

83.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Amended Counterclaim, and refer to the

20

circular letter issued by the U.S. Department of State in 1951 for a true and accurate statement of its contents.

84.    Admit the allegations contained in paragraph 84 of the Amended Counterclaim.

85.    Admit generally the allegations contained in paragraph 85 of the Amended Counterclaim that issues of Nazi looted art have been covered by the news media, and refer to the publications cited therein for a true and accurate statement of their contents.

86.    Admit the truth of the allegations contained in paragraph 86 of the Amended Counterclaim, and refer to the memoirs cited therein for a true and accurate statement of their contents.

87.    Deny knowledge or information sufficient to form a belief as to the truth of the causation alleged in paragraph 87 of the Amended Counterclaim, except admit that James Rorimer headed the Metropolitan Museum of Art in New York and that Thomas Carr Howe served as the director of the San Francisco Legion of Honor, and refer to the memoirs mentioned therein for a true and accurate statement of their contents.

88.    Admit the allegations contained in paragraph 88 of the Amended Counterclaim, except refer to the text cited therein for a true and accurate statement of its contents.

89.    Refer to the publication cited in paragraph 89 of the Amended Counterclaim for a true and accurate statement of its contents.

90.    Admit the allegations contained in paragraph 90 of the Amended Counterclaim, except deny knowledge or information sufficient to form a belief as to the truth of the allegations as to what Defendant believes the art world was alerted.

91.     Deny the allegations contained in paragraph 91 of the Amended

Counterclaim, except admit that the Museums were aware of the existence in the marketplace of

Nazi confiscated art, and deny that the Paintings are in fact Nazi confiscated art.

92.     Deny the allegations contained in paragraph 92 of the Amended

Counterclaim.

93.     State that paragraph 93 of the Amended Counterclaim consists of a legal

conclusion and argument to which no responsive pleading is required, and refer to the legal texts

and authorities cited therein for a true and accurate statement of their contents.

94.     State that paragraph 94 of the Amended Counterclaim consists of a legal

conclusion and argument to which no responsive pleading is required, and refer to the legal texts

and authorities cited therein for a true and accurate statement of their contents.

95.     Deny the allegations contained in paragraph 95 of the Amended

Counterclaim, except admit that Paley donated *Boy Leading a Horse* to MoMA in 1964,

retaining a life estate, and that MoMA absolutely acquired the painting upon Paley's death in

1990.

96.     Deny the allegations contained in paragraph 96 of the Amended

Counterclaim, and aver that in 1936 Skira purchased *Boy Leading a Horse* for the account of and

as agent for Paley, who likely followed the news, and was therefore likely aware of certain

publicly reported events in Nazi Germany, and admit that Paley was a sophisticated art collector

who held positions as a trustee and president of MoMA.

97.     Deny the allegations contained in paragraph 97 of the Amended

Counterclaim.

22

98.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 98 of the Amended Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

99.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 99 of the Amended Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

100.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 100 of the Amended Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

101.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 101 of the Amended Counterclaim, and refer to the memoir cited therein for a true and accurate statement of its contents.

102.    Deny the allegations contained in paragraph 102 of the Amended Counterclaim, except admit that Skira did not inform Paley that Thannhauser was the owner of the painting.

103.    Admit the allegations contained in paragraph 103 of the Amended Counterclaim, except refer to the memoir cited therein for a true and accurate statement of its contents.

104.    Deny the allegations of paragraph 104 of the Amended Counterclaim, except to the extent they consist of a legal conclusion and argument to which no responsive pleading is necessary.

23

105.     Deny the allegations contained in paragraph 105 of the Amended Counterclaim, except admit Paley passed away in 1990, and refer to the publication cited therein for a true and accurate statement of its contents.

106.     Deny the allegations contained in paragraph 106 of the Amended Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

107.     Deny the allegations contained in paragraph 107 of the Amended Counterclaim.

108.     Deny the allegations contained in paragraph 108 of the Amended Counterclaim.

109.     Deny the allegations contained in paragraph 109 of the Amended Counterclaim, and aver that in 1963 Thannhauser agreed to bequeath *Le Moulin de la Galette* to the Guggenheim and that in 1978 the painting entered the museum's permanent collection.

110.     Deny the allegations contained in paragraph 110 of the Amended Counterclaim, and aver the Guggenheim began researching the provenance and history of the works of art Thannhauser had agreed to bequeath to it well before 1972, and that the research was not conducted solely for the purpose of the publication entitled Guggenheim Museum: Thannhauser Collection.

111.     Admit the allegations contained in paragraph 111 of the Amended Counterclaim.

112.     Admit the allegations contained in paragraph 112 of the Amended Counterclaim, except refer to the document cited therein for a true and accurate statement of its contents.

113.    Admit the allegations contained in paragraph 113 of the Amended Counterclaim, and aver that the questions Daniel Catton Rich asked of Thannhauser were based not only on Thannhauser's 1972 annotations, but also on research performed by the Guggenheim, and refer to the document cited therein for a true and accurate statement of its contents.

114.    Deny the allegations contained in paragraph 114 of the Amended Counterclaim, except refer to the document cited therein for a true and accurate statement of its contents.

115.    Deny the allegations contained in paragraph 115 of the Amended Counterclaim, and aver that Elsa became the owner of *Le Moulin de la Galette* when von Mendelssohn-Bartholdy gifted his collection of paintings to her upon their marriage in 1927, deny knowledge or information sufficient to form a belief as to the truth of the allegation that *Le Moulin de la Galette* was exhibited in Buenos Aires with the intention of attempting to sell it there, and refer to the documents cited therein for a true and accurate statement of their contents.

116.    Admit the allegations contained in paragraph 116 of the Amended Counterclaim, except refer to the publication cited therein for a true and accurate statement of its contents.

117.    Deny the allegations contained in paragraph 117 of the Amended Counterclaim, and respond to the remaining allegations contained in paragraph 117 of the Amended Counterclaim as follows:

(a)    Deny the allegations contained in paragraph 117(a) of the Amended Counterclaim;

25

(b)    Deny the allegations contained in paragraph 117(b) of the Amended Counterclaim, except admit that von Mendelssohn-Bartholdy was from Berlin, and refer to the documents cited therein for a true and accurate statement of their contents;

(c)    Admit the allegation contained in paragraph 117(c) of the Amended Counterclaim that the persecution of the Jews by the Nazi Regime started with its rise to power in 1933, and aver that it increased in intensity throughout the Nazi Regime;

(d)    Deny the allegations contained in paragraph 117(d) of the Amended Counterclaim;

(e)    Deny the allegations contained in paragraphs 117(e)(1) and (2) of the Amended Counterclaim to the extent they pertain to matters of fact during von Mendelssohn-Bartholdy's lifetime; and

(f)    Deny the allegations contained in paragraph 117(f) of the Amended Counterclaim, and refer to the documents cited therein for a true and accurate statement of their contents.

118.    Deny the allegations contained in paragraph 118 of the Amended Counterclaim.

119.    Deny the allegations contained in paragraph 119 of the Amended Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

26

120.    Deny the allegations contained in paragraph 120 of the Amended Counterclaim, and refer to the publication cited therein for a true and accurate statement of its contents.

121.    Deny the allegations contained in paragraph 121 of the Amended Counterclaim, refer to the letter cited therein for a true and accurate statement of its contents, and aver that the letter the Guggenheim received from the Art Loss Register dated June 15, 2006 regarding *Le Moulin de la Galette* contained no reference questioning Thannhauser's integrity.

122.    Deny the allegations contained in paragraph 122 of the Amended Counterclaim.

123.    Deny the allegations contained in paragraph 123 of the Amended Counterclaim, except admit that the Guggenheim placed *Le Moulin de la Galette* on NEPIP in 2007 and that the painting met the criteria for inclusion on NEPIP, and aver that the Guggenheim began writing the report for inclusion on the NEPIP System and inquired and received a letter from the Art Loss Register before being contacted by Counterclaim-Plaintiffs' counsel.

124.    Deny the allegations contained in paragraph 124 of the Amended Counterclaim, except to the extent that paragraph 124 consists of a legal conclusion and argument to which no responsive pleading is necessary.

## COUNT ONE
### (Conversion)

125.    In response to paragraph 125 of the Amended Counterclaim, repeat and reallege paragraphs 1 through paragraph 125 hereof as if fully set forth herein.

126.    State that paragraph 126 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

127.    Deny the conflicting allegations contained in paragraph 127 of the Amended Counterclaim.

128.    Deny the allegations in paragraph 128 of the Amended Counterclaim, except admit that counsel for Schoeps purported to represent the heirs of von Mendelssohn-Bartholdy, on whose behalf counsel demanded the Paintings on November 1, 2007 and that the Museums, through their attorneys, refused the demand on December 7, 2007, and aver that Lavergne-Peguilhen and Kesselstatt did not demand the return of the Paintings on November 1, 2007.

129.    Deny the allegations contained in paragraph 129 of the Amended Counterclaim.

## COUNT TWO
### (Replevin)

130.    In response to paragraph 130 of the Amended Counterclaim, repeat and reallege paragraphs 1 through paragraph 130 hereof as if fully set forth herein.

131.    Deny the conflicting allegations contained in paragraph 131 of the Amended Counterclaim, except admit that the Paintings are unique.

132.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 132 of the Amended Counterclaim.

133.    Deny the allegations contained in paragraph 133 of the Amended Counterclaim, except admit that the Paintings are in the possession of the Museums.

134.    Deny the allegations contained in paragraph 134 of the Amended Counterclaim.

135.    Deny the allegations in paragraph 135 of the Amended Counterclaim, except admit that counsel for Schoeps purported to represent the heirs of von Mendelssohn-

28

Bartholdy, on whose behalf counsel demanded the Paintings on November 1, 2007, and that the Museums, through their attorneys, refused the demand on December 7, 2007, and aver that Lavergne-Peguilhen and Kesselstatt did not demand the return of the Paintings on November 1, 2007.

136.    Deny the allegations contained in paragraph 136 of the Amended Counterclaim.

## COUNT THREE
### (Request for Declaratory Relief under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201)

137.    In response to paragraph 137 of the Amended Counterclaim, repeat and reallege paragraphs 1 through paragraph 137 hereof as if fully set forth herein.

138.    State that paragraph 138 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

139.    Deny the allegations contained in paragraph 139 of the Amended Counterclaim, except state that the balance of paragraph 139 of the Amended Counterclaim consists of a legal conclusion and argument to which no responsive pleading is necessary.

140.    Deny the allegations contained in paragraph 140 of the Amended Counterclaim, except admit that Counterclaim-Plaintiffs purport to seek a declaratory judgment.

## AFFIRMATIVE DEFENSES AS TO COUNTERCLAIM-PLAINTIFF SCHOEPS
### First Affirmative Defense

141.    Schoeps fails to state a claim upon which relief can be granted under the applicable German and Swiss law for the reasons, among others, that he fails to allege 1) that Thannhauser intentionally took advantage of any distress being experienced by von Mendelssohn-Bartholdy, or by Elsa, who is not alleged to have been financially or otherwise debilitated under the Nazi regime, and 2) the price Thannhauser paid for the Paintings.

### Second Affirmative Defense

142.    Schoeps does not have a claim under German or New York law because the Paintings were given as a wedding gift to Elsa in 1927.

### Third Affirmative Defense

143.    Schoeps' claim was relinquished and released under German and New York law when his grandparents, and the other sisters of von Mendelssohn-Bartholdy and their spouses, relinquished and released any right to the Paintings by signing the legal protocol acknowledging the validity of von Mendelssohn-Bartholdy's 1935 Contract of Inheritance, including its provision that von Mendelssohn-Bartholdy's art collection had previously been gifted to Elsa and was excluded from the estate.

### Fourth Affirmative Defense

144.    Schoeps' claims are barred under German, Swiss and New York law because Elsa, the owner of the Paintings, waived any claim to the Paintings when she did not include any such claims in the claims she made for restitution after the war.

### Fifth Affirmative Defense

145.    Schoeps is not entitled to restitution under the Allied restitution laws, such as MGL No. 59, because those laws required that claims be made by specific deadlines, the latest of which was December 1949.

### Sixth Affirmative Defense

146.    Schoeps' and his predecessors' in interest failure to make restitution claims for the Paintings under the Allied restitution laws, such as MGL No. 59, and the German restitution laws within the time limits provided in those laws precludes Schoeps from making any claim for the Paintings under the applicable German contract law for setting aside a sale.

### Seventh Affirmative Defense

147.    Schoeps is not entitled to restitution under the German restitution laws of

1957 for the Federal Republic of Germany and/or 1990 for the former German Democratic

Republic, because those laws had deadlines for the making of restitution claims that have since

passed, and moreover, those laws apply with minor exceptions only to property that is shown to

have been taken by the German state.

### Eighth Affirmative Defense
### (Claims against MoMA)

148.    Schoeps' claims are barred under Swiss and New York law by Paley's

good faith purchase for value of *Boy Leading a Horse* given that Thannhauser did not steal the

painting.  Under Swiss law, good faith is presumed absent proof to the contrary.  Moreover,

nothing in the circumstances here suggests bad faith.

### Ninth Affirmative Defense

149.    Under Swiss and German law, Schoeps' claims are barred by the

presumption that possessors have good title to the property in their possession.  Therefore,

Schoeps will need to rebut the presumption that Thannhauser had and the Guggenheim has good

title to *Le Moulin de la Galette*, and that Thannhauser and Paley had, and MoMA has, good title

to *Boy Leading a Horse*, which he will be unable to do.

### Tenth Affirmative Defense

150.    Schoeps' claims are barred, in whole or in part, by the equitable doctrine

of laches because Schoeps and all of his predecessors in interest, and Elsa as the owner of the

Paintings prior to their sale to Thannhauser, should in the exercise of reasonable diligence have

made a demand for restitution of the Paintings, were it concluded that such a demand was

justified, while relevant witness to the events in question were still alive, and his and their failure
to do so has caused prejudice to the Museums.

## **Eleventh Affirmative Defense**

151.    Schoeps' claims are time barred in whole or in part under New York law.

The Paintings were not stolen, confiscated, or taken by physical threat or the equivalent.

Therefore, the rule that a demand need not be made within a reasonable period of time applicable

to stolen property in the hands of a good faith purchaser is not applicable here and Schoeps, all

of Schoeps' predecessors in interest, Elsa (as the owner of the Paintings prior to their sale to

Thannhauser), and Lavergne-Peguilhen and Kesselstatt had an obligation to make a demand for

their restitution within a reasonable period of time.  See concurring opinion of Judge Jon O.

Newman in Hoelzer v. City of Stamford, 933 F.2d 1131, 1139 (2d Cir. 1991).  Such reasonable

period of time expired before any demand was in fact made by Schoeps.  Schoeps has the burden

of proving that his demand for restitution was timely under this standard.

## **Twelfth Affirmative Defense**
## **(Claims Against the Guggenheim)**

152.    Schoeps' claims against the Guggenheim are barred by the statute of

limitations under New York law for the additional reason that the Guggenheim, not being a

purchaser for value, stands in the shoes of Thannhauser and the limitations period for any claim

against him would run from the date of the allegedly wrongful transfer.

## **Thirteenth Affirmative Defense**

153.    Schoeps' claims are time barred under Swiss and German law.  The

Paintings were located either in Switzerland or Germany at the time of their sale to Thannhauser.

The failure of Schoeps and all of his predecessors in interest, and Elsa (as the owner of the

Paintings at the time of their sale to Thannhauser) and Lavergne-Peguilhen and Kesselstatt, to

32

seek restitution of the Paintings within a reasonable period of time gave rise to reasonable grounds for belief that no claim would be made. Under Swiss and German law this delay in seeking restitution precludes the making of this belated claim.

### Fourteenth Affirmative Defense

154.    While Schoeps has capacity under Rule 17 of the Federal Rules of Civil Procedure, and the German law to which Rule 17 points, to bring a claim for restitution in his individual capacity, he does not have such capacity or standing under New York law, only the capacity or standing to sue for a counter declaratory judgment. Under the Erie doctrine, this conflict must be resolved in favor of applying state law.

### Fifteenth Affirmative Defense

155.    Even if the Erie doctrine does not preclude the application of German law to the ability of individual heirs to sue for replevin or damages, the claim is still defective under German law because German law requires that the remedy requested provide for the receipt of damages or the delivery of property in trust for all the proper heirs not just the heir initiating the suit.

### Sixteenth Affirmative Defense

156.    Schoeps does not have the authority under German law to bring claims concerning the Paintings based on his share of the Paul von Mendelssohn-Bartholdy estate which was derived from his mother's estate because an executor has been appointed to administer his mother's estate.

### Seventeenth Affirmative Defense

157.    There is no legal basis for Schoeps' request for an award of his costs, expenses and interest.

33

### Additional Affirmative Defenses

158.    Plaintiffs hereby give notice that they intend to rely upon any other defense or defenses that may become available or appear during pretrial proceedings in this case and hereby reserve the right to amend this Answer and Affirmative Defenses to the Amended Counterclaim to plead and assert any such additional affirmative defenses as they become known and appropriate during the course of litigation.

## AFFIRMATIVE DEFENSES AS TO COUNTERCLAIM PLAINTIFFS LAVERGNE-PEGUILHEN AND KESSELSTATT

### First Affirmative Defense

159.    Lavergne-Peguilhen and Kesselstatt fail to state a claim upon which relief can be granted because they have not made a plain statement of a claim showing that they are entitled to relief but have rather pled that they are entitled to relief only if Counterclaim-Plaintiff Schoeps is not entitled to relief and, upon information and belief, have no justiciable stake in the controversy in view of their agreement with Counterclaim-Plaintiff Schoeps.

### Second Affirmative Defense

160.    Lavergne-Peguilhen and Kesselstatt fail to state a claim on which relief can be granted because their claim is predicated solely on Elsa's ownership of the paintings during the Nazi regime and Elsa is not alleged to be a target of persecution during that regime.

### Third Affirmative Defense

161.    Lavergne-Peguilhen and Kesselstatt fail to state a claim upon which relief can be granted under the applicable German and Swiss law for the reasons, among others, that they fail to allege 1) that Thannhauser intentionally took advantage of any distress being experienced by von Mendelssohn-Bartholdy, or by Elsa, who is not alleged to have been

financially or otherwise debilitated under the Nazi regime, and 2) the price Thannhauser paid for the Paintings.

### Fourth Affirmative Defense

162.    Lavergne-Peguilhen and Kesselstatt's claims are barred because Elsa, the owner of the Paintings, waived any claim to the Paintings when she did not include any such claims in the claims she made for restitution after the war.

### Fifth Affirmative Defense

163.    Lavergne-Peguilhen and Kesselstatt are not entitled to restitution under the Allied restitution laws, such as MGL No. 59, because those laws required that claims be made by specific deadlines, the latest of which was December 1949, and, in addition Elsa was not persecuted or directly exposed to persecutory measures on any of the prohibited grounds.

### Sixth Affirmative Defense

164.    Lavergne-Peguilhen and Kesselstatt's failure to make restitution claims for the Paintings under the Allied restitution laws, such as MGL No. 59, and the German restitution laws within the time limits provided in those laws precludes Lavergne-Peguilhen and Kesselstatt from making any claim for the Paintings under the applicable German contract law for setting aside a sale.

### Seventh Affirmative Defense

165.    Lavergne-Peguilhen and Kesselstatt are not entitled to restitution under the German restitution laws of 1957 for the Federal Republic of Germany and/or 1990 for the former German Democratic Republic, because those laws had deadlines for the making of restitution claims that have since passed, and moreover those laws apply with minor exceptions only to property that is shown to have been taken by the German state, and because the owner of the

paintings during the Nazi regime, Elsa, was not persecuted or directly exposed to persecutory measures on any of the prohibited grounds.

### Eighth Affirmative Defense
### (Claims against MoMA)

166. Lavergne-Peguilhen and Kesselstatt's claims are barred under Swiss and New York law by Paley's good faith purchase for value of *Boy Leading a Horse* given that Thannhauser did not steal the painting. Under Swiss law, good faith is presumed absent proof to the contrary. Moreover, nothing in the circumstances here suggests bad faith.

### Ninth Affirmative Defense

167. Under Swiss and German law, Lavergne-Peguilhen and Kesselstatt's claims are barred by the presumption that possessors have good title to the property in their possession. Therefore, Lavergne-Peguilhen and Kesselstatt will need to rebut the presumption that Thannhauser had, and the Guggenheim has, good title to *Le Moulin de la Galette*, and that Thannhauser and Paley had, and MoMA has, good title to *Boy Leading a Horse*, which they will be unable to do.

### Tenth Affirmative Defense

168. Lavergne-Peguilhen and Kesselstatt's claims are barred, in whole or in part, by the equitable doctrine of laches because Elsa, as the owner of the Paintings prior to their sale to Thannhauser, and her successors in interest, including Lavergne-Peguilhen and Kesselstatt, should in the exercise of reasonable diligence have made a demand for restitution of the Paintings, were it concluded that such a demand was justified, while relevant witness to the events in question were still alive, and their failure to do so has caused prejudice to the Museums.

### Eleventh Affirmative Defense

169.   Lavergne-Peguilhen and Kesselstatt's claims are time barred in whole or in part under New York law. The Paintings were not stolen, confiscated, or taken by physical threat or the equivalent. Therefore, the rule that a demand need not be made within a reasonable period of time applicable to stolen property in the hands of a good faith purchaser is not applicable here and Elsa , as the owner of the Paintings prior to their sale to Thannhauser, and her successors in interest, including Lavergne-Peguilhen and Kesselstatt, had an obligation to make a demand for their restitution within a reasonable period of time. See concurring opinion of Judge Jon O. Newman in Hoelzer v. City of Stamford, 933 F.2d 1131, 1139 (2d Cir. 1991). Lavergne-Peguilhen and Kesselstatt have the burden of proving that a demand for restitution was timely under this standard. Lavergne-Peguilhen and Kesselstatt cannot meet this burden because no such demand has been made by Lavergne-Peguilhen and Kesselstatt and the reasonable period of time for making such a demand has expired.

### Twelfth Affirmative Defense
### (Claims Against the Guggenheim)

170.   Lavergne-Peguilhen and Kesselstatt's claims against the Guggenheim are barred by the statute of limitations under New York law for the additional reason that the Guggenheim, not being a purchaser for value, stands in the shoes of Thannhauser and the limitations period for any claim against him would run from the date of the allegedly wrongful transfer.

### Thirteenth Affirmative Defense

171.   Lavergne-Peguilhen and Kesselstatt's claims are time barred under Swiss and German law. The Paintings were located either in Switzerland or Germany at the time of their sale to Thannhauser. The failure of Lavergne-Peguilhen, Kesselstatt and Elsa (as the owner

37

of the Paintings at the time of their sale to Thannhauser) to seek restitution of the Paintings within a reasonable period of time gave rise to reasonable grounds for belief that no claim would be made. Under Swiss and German law, this delay in seeking restitution precludes the making of this belated claim.

## Fourteenth Affirmative Defense

172.    While Lavergne-Peguilhen and Kesselstatt have capacity under Rule 17 of the Federal Rules of Civil Procedure, and the German law to which Rule 17 points, to bring a claim for restitution in their individual capacity, they do not have such capacity or standing under New York law, only the capacity or standing to sue for a counter declaratory judgment. Under the Erie doctrine, this conflict must be resolved in favor of applying state law.

## Fifteenth Affirmative Defense

173.    Even if the Erie doctrine does not preclude the application of German law to the ability of individual heirs to sue for replevin or damages, the claim is still defective under German law because German law requires that the remedy requested provide for the receipt of damages or the delivery of property in trust for all the proper heirs not just the heir initiating the suit.

## Sixteenth Affirmative Defense

174.    Lavergne-Peguilhen and Kesselstatt, by virtue of permissively joining this lawsuit as Counterclaim-Plaintiffs, rather than intervening with their own answer and claim under Rule 24, are bound by Schoeps' Answer, which contains admissions that bar their claims.

## Seventeenth Affirmative Defense

175.    There is no legal basis for Lavergne-Peguilhen and Kesselstatt's request for an award of their costs, expenses and interest.

## Additional Affirmative Defenses

176.    Plaintiffs hereby give notice that they intend to rely upon any other defense or defenses that may become available or appear during pretrial proceedings in this case and hereby reserve the right to amend this Answer and Affirmative Defenses to the Amended Counterclaim to plead and assert any such additional affirmative defenses as they become known and appropriate during the course of litigation.

## REQUEST FOR DECLARATORY JUDGMENT

In as much as the Counterclaim-Plaintiffs have asked this Court to declare the rights of the parties, Counterclaim-Defendants request that in conformance with the pleadings herein, and the proof, this Court declare the rights of the parties as follows:

1.  Counterclaim-Defendants are entitled to a declaratory judgment that no presumption of duress applies to the sale of the Paintings to Thannhauser.

2.  Counterclaim-Defendants are entitled to a declaratory judgment that the available facts establish the sale was not made under duress, whether such a presumption exists or not.

3.  Counterclaim-Defendants are entitled to a declaratory judgment that Counterclaim-Plaintiffs' claims are barred by the equitable doctrine of laches because they and their predecessors in interest unreasonably delayed in bringing their claims and Counterclaim-Defendants were prejudiced by that delay.

4.  Counterclaim-Defendants are entitled to a declaratory judgment that Counterclaim-Plaintiffs' claims of a right of possession to the Paintings are barred by the applicable laws of Switzerland or Germany.

39

5. Counterclaim-Defendants are entitled to a declaratory judgment that Counterclaim-Plaintiffs' claims are invalid because they are not the proper claimants to the Paintings.

6. Counterclaim-Defendants are entitled to a declaratory judgment that Counterclaim-Plaintiffs have no valid claims to the Paintings.

Dated: New York, New York
June 25, 2008

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Evan A. Davis
Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Plaintiffs The Museum of Modern Art
and The Solomon R. Guggenheim Foundation