UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
JULIUS H. SCHOEPS, EDELGARD VON          :
LAVERGNE-PEGUILHEN, and FLORENCE         :
KESSELSTATT,                             :          07 Civ. 11074 (JSR)
                                         :
                Plaintiff,               :          OPINION
                                         :
                -v-                      :
                                         :
THE MUSEUM OF MODERN ART, and THE        :
SOLOMON R. GUGGENHEIM FOUNDATION,        :
                                         :
                Defendant.               :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.


          This case essentially involves claims by Julius Schoeps,

Edelgard von Lavergne-Peguilhen, and Florence Kesselstatt

("Claimants"), heirs of Paul von Mendelssohn-Bartholdy ("Paul")

and/or of his second wife, Elsa, that two Picasso paintings -- Boy

Leading a Horse (1905-1906) ("Boy") and Le Moulin de la Galette

(1900) (collectively, "the Paintings") -- once owned by Paul and now

held by, respectively, the Museum of Modern Art and the Solomon R.

Foundation ("the Museums"), were transferred from Paul and/or Elsa as

a result of Nazi duress and rightfully belong to one or more of the

Claimants.[1]   The case began as a declaratory judgment action by the

Museums seeking, in effect, to "quiet title" as to the Paintings, but

has now been reconfigured to more accurately reflect the parties'

---

[1] The Claimants have entered into a side-agreement waiving
any conflicts and agreeing to divide any recovery that any one or
more of them may obtain in this lawsuit.  See Waiver of All
Potential and Real Conflicts of Interest and Addendum to Retainer
Agreement, Ex. 46 to Declaration of Evan A. Davis in Support of
Plaintiffs' Motion for Summary Judgment ("Davis Decl.").

positions.[2]  Prior to the repositioning, the Museums moved for summary judgment granting their request for declaratory relief and dismissing all counterclaims brought by the Claimants; but the Court, by Order dated December 30, 2008, denied the Museums' motion.  See Order, 12/30/08.  The Order also informed the parties that the Court had determined that German law governs the issue of duress relating to the sale or transfer of the Paintings and that New York law governs the issue of whether the Claimants' claims are barred by laches.  By Order dated January 20, 2009, the Court further ruled that New York law, rather than Swiss law, applies to the issues raised by the parties concerning the validity and legal effect of the transfer of Boy to William Paley ("Paley") by art dealer Justin Thannhauser ("Thannhauser") in 1936.  This Opinion briefly sets forth the reasons for these various rulings.

In an action for declaratory judgment, the burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief.  Preferred Acc. Ins. Co. of N.Y. v. Grasso, 186 F.2d 987, 991 (2d Cir. 1951).  See Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2770.  This, indeed, is one of the reasons the Court subsequently repositioned the parties.  Accordingly, on this summary judgment

---

[2] Specifically, by Order dated January 20, 2009 the Court repositioned the parties and amended the caption in this case so that Schoeps -- originally defendant and counterclaim-plaintiff -- and von Lavergne-Peguilhen and Kesselstatt -- originally counterclaim-plaintiffs  -- now stand as plaintiffs, and the Museums stand as defendants.

motion, as at trial, it is the Claimants who bear the burden of establishing their rights, if any, to ownership of the Paintings. It is well-established, moreover, that summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991).  The central question on this summary judgment motion, therefore, is whether the Claimants have adduced competent evidence sufficient to create triable issues of fact as to the essential elements of their claims, viewing the evidence in the light most favorable to them.  As reflected in the Order of December 30, 2008, the Court concludes that they have.

It is undisputed that, prior to 1927, the Paintings were owned by Paul von Mendelssohn-Bartholdy, a German of Jewish descent. With regard to Schoeps, the Museums argue that two documents executed in 1935 establish that Paul gave the Paintings as a wedding gift in 1927 to his second wife Elsa, née von Lavergne-Peguilhen, and that Schoeps, who is descended from Paul's sister Marie Busch, therefore has no valid claim to them.[3]  The Claimants' primary argument in

---

[3] Under German law, if no such gift had been made, Paul's sisters would have inherited the Paintings upon Elsa's death. Elsa was Paul's "first heir," while his sisters were Paul's "second heirs."  This meant that Elsa would have the equivalent of a life estate in any property that Paul possessed at his death, and upon her death such property would pass immediately by operation of law to the second heirs or, if they were no longer living, to their heirs.  Report of Wolfgang Ernst, Ex. 5 to Davis

response is that the alleged 1927 gift was in fact merely a pretext, conceived by Paul as he neared death in 1935 in response to anti-Semitic measures taken by the then-ascendent Nazi government, and was designed to protect the Paintings by putting them in the name of Elsa, who was considered "Aryan."  The Claimants point, inter alia, to records from the Lucerne branch of Thannhauser's art gallery listing Paul as the owner of the paintings in 1934, Report of Laurie A. Stein ("Stein Report"), Ex. 8 to Declaration of Evan A. Davis in Support of Plaintiffs' Motion for Summary Judgment ("Davis Decl."), at 27-28, as well as to the stark fact that there is no pre-1935 document of any kind evidencing the alleged gift.  Moreover, three of the Claimants' experts express the opinion that Paul only pretended that he had given the paintings to Elsa but actually intended to protect them and pass them on to his sisters, Rebuttal Report of Ulf Bischof, dated September 10, 2008, Ex. 14 to Davis Decl., at 3; Report of Christoph Kreutzmueller, dated July 30, 2008, Ex. 10 to Davis Decl., at 2; Report of Lucilee Roussin, dated July 30, 2008, Ex. 11 to Davis Decl., at 4.  The Court finds this evidence more than sufficient to create a triable issue of fact on this point.

Moreover, even if the jury trying this case (beginning February 2, 2009) were to find that there was a bona fide gift of the Paintings to Elsa in 1927, this would not, of itself, eliminate the Claimants' claim to the Paintings, because the other two Claimants,

---

Decl., at 13-14.

von Lavergne-Peguilhen and Kesselstatt, are heirs of Elsa[4], and the Claimants' ultimate position is that, regardless of whether the Paintings still belonged to Paul or were simply being held by him on behalf of Elsa, the transfer of the Paintings to the Museums' predecessors in interest was still voidable as the product of Nazi duress.

The Museums argue that von Lavergne-Peguilhen and Kesselstatt have waived any claim they might have as Elsa's heirs because, in their responses to the Museums' Requests for Admission, they both declined to admit that Paul gave the Paintings to Elsa in 1927 or at any point before his death, Responses of Counterclaim-Plaintiff Florence Kesselstatt to Plaintiffs and Counterclaim-Defendants' Requests for Admission ("Kesselstatt Responses"), Ex. 3 to Davis Decl., ¶¶ 58-72; Responses of Counterclaim-Plaintiff Edelgard von Lavergne-Peguilhen to Plaintiffs and Counterclaim-Defendants' Requests for Admission ("Lavergne-Peguilhen Responses"), Ex. 4 to Davis Decl., ¶¶ 58-72.  But a refusal to admit is not the equivalent of an affirmative admission of the opposite.  As for Kesselstatt's statement in her deposition that she interpreted one of the 1935 documents as merely containing a "hint" that Paul had given the Paintings to Elsa, Deposition of Florence Kesselstatt, dated July 18, 2008, Ex. 19 to Davis Decl., at 67-70, this is most likely not admissible evidence at all, and, even if it were, neither it nor the Claimants' experts' opinion that the gift was pretextual constitutes

---

[4] As noted, the Claimants have waived all conflicts between them, so as to allow their counsel to argue in the alternative.

a formal concession waiving a party's right to contest the alleged admission or opinion.  See, e.g., Guadagno v. Wallack Ader Levithan Ass'n, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997).

The Museums next argue that even if one or all of the Claimants can bring a claim, the claim must fail because Paul's or Elsa's transfer of the Paintings was not the product of duress or other invalidity.  As a preliminary matter, the Court agrees with the Museums that this is an issue governed, as a substantive matter, by German law.  New York choice of law rules govern in diversity cases, see Finance One Public Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005), and New York applies interest analysis to choice-of-law questions, Istim, Inc. v. Chemical Bank, 78 N.Y.2d 342, 346-47 (1991).  The New York Court of Appeals has laid down five factors to be considered in determining which forum's law will govern a contract dispute, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile or place of business of the contracting parties.  Maryland Cas. Co. v. Continental Cas. Co., 332 F.3d 145, 151-52 (2d Cir. 2003) (citing Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994)).  All five of these factors plainly support the application of German law to the issue of whether the transfer of these German-held Paintings in 1935 was a product of Nazi duress or the like.[5]

_____

[5] Under one possible view of the facts, the Paintings were in Switzerland at the Lucerne branch of the Thannhauser gallery as early as 1932, see Stein Report at 29, before any transfer was made.  Neither party, however, has argued that Swiss law applies

If German law applies, the next issue is whether one is talking about the ordinary German Civil Code, which dates back to 1900 and is still in place, or whether the standard that should be invoked is that contained in Military Government Law 59 ("MGL 59"), a law put in place by the Allies during the postwar occupation of Germany that establishes a presumption that property was confiscated if it was transferred between January 30, 1933 and May 8, 1945 by a person subject to Nazi persecution.  But MGL 59 did not displace the German Civil Code.  It simply established a limited regime under which claims brought in a particular tribunal, which no longer exists, and by a given deadline, which has passed, were entitled to a special presumption, which is no longer available.  Cf. Dreyfus v. Von Finck, 534 F.2d 24, 29 (2d Cir. 1976) ("Military Law 59 created its own regulations and its own tribunals to interpret and enforce them.  It was completely self-contained.").  Thus MGL 59 neither applies to this case nor precludes the claim here asserted.  Indeed, the only German court decision that has been provided to this Court in its entirety -- a 2008 judgment from the Berlin District Court -- allowed a claim similar to the one here asserted to go forward, without benefit of the MGL presumption and without the claim being barred by the expiration of MGL 59.

The relevant provisions of the German Civil Code, or Bürgerliches Gesetzbuch ("BGB"), that are relevant here to Claimants' claim of duress or other such invalidity are BGB § 138 and § 123.

to the duress question; the choice, both sides agree, is between New York and German law.

Under BGB § 138, a contract may be declared void <u>ab initio</u> if it is entered into when one party is at a distinct disadvantage in bargaining -- for example, if that party is in "dire need" -- and its terms lopsidedly favor the other party.  Report of Wolfgang Ernst ("Ernst Report"), Ex. 5 to Davis Decl., at 76.  Under BGB § 123, a party may rescind a contract if he or she entered into it because of a threat.  <u>Id.</u> at 104.

While the record regarding the transfers of these Paintings is meagre, it is informed by the historical circumstances of Nazi economic pressures brought to bear on "Jewish" persons and property, or so a jury might reasonably infer, and, in this context, the Court concludes that Claimants have adduced competent evidence sufficient to create triable issues of fact as to whether they have satisfied the elements of a claim under BGB § 138 and/or BGB § 123.  For example, Claimants have adduced competent evidence that Paul never intended to transfer any of his paintings and that he was forced to transfer them only because of threats and economic pressures by the Nazi government.  Summary judgment is therefore not appropriate.

Although German law governs the issue of duress, the Claimants frame their substantive claims (originally, counterclaims) in common law terms like "conversion" and "replevin."  In that regard, the Museums argue that Claimants may not bring such claims without first having been appointed as representatives of the relevant estate by the New York Surrogate.  The Museums rely on <u>Schoeps v. The Andrew Lloyd Webber Art Foundation</u>, 2007 NY Slip Op 52183U (N.Y. Sup. Ct. Nov. 19, 2007) ("<u>Webber</u>"), in which the New

York Supreme Court held that one of the Claimants in this case, Julius Schoeps, did not have standing to bring a similar restitution claim for a painting once owned by Paul because he had not been appointed representative of Paul's estate.

It is true that under New York law, a cause of action possessed by the decedent at the time of his or her death may be brought subsequently by a representative of the decedent only if the plaintiff has been appointed personal representative of the decedent's estate by the New York Surrogate.  See, e.g., George v. Mt. Sinai Hospital, 47 N.Y.2d 170, 177 (1979).  At the same time, however, when under the relevant foreign inheritance law there is no estate but rather property passes immediately by operation of law to the decedent's heirs, this requirement does not apply.  Roques v. Grosjean, 66 N.Y.S.2d 348, 349 (N.Y. Sup. Ct. 1946); Bodner v. Bank Paribas, 114 F. Supp. 2d 117, 126 (E.D.N.Y. 2000); Pressman v. Estate of Steinworth, 860 F. Supp. 171, 177 (S.D.N.Y. 1994).  As the Claimants point out, the Museums' own expert witness explains that under German law there is no estate as there is under American law; rather, the decedent's assets vest immediately in his or her heirs at death.  Ernst Report at 11.  The Webber court was not squarely presented with this issue as no similar authority had been introduced in that case.  Webber at *4.  In light of Roques, this Court is constrained to disagree with the dictum in Webber that Bodner is contrary to New York law.[6]  The Claimants' failure to be appointed

---

[6] This is not to say that the authorities cited in Webber are not accurate statements of New York law; all stand for the

representatives of the relevant estates is not therefore a bar to
bringing their conversion and replevin claims.  It is, indeed,
difficult to imagine how the Claimants could be appointed
representatives of Paul's or Elsa's estates when, according to the
Museums' witness, no such estates ever existed or would exist under
German law.

Although German law governs the issue of whether the transfer
of the Paintings from Paul or Elsa was a product of duress or the
like, there is a separate issue of what law governs the validity and
legal effect of the sale of <u>Boy</u> to Paley in 1936, since that sale, of
which some record exists, might create a "good faith purchaser"
defense for the Museum of Modern Art (to which Paley willed the
painting) even if the transfer from Paul or Elsa were infected with
duress.  Claimants say that New York law governs this issue, while
Museums say it is governed by the law of Switzerland, where the sale
occurred.

The issue is indeed pertinent, as Swiss and New York law
provide different applicable standards.  See <u>Finance One Public Co.</u>
<u>Ltd. v. Lehman Bros. Special Fin., Inc.</u>, 414 F.3d 325, 331 (2d Cir.
2005) (choice of law analysis is not necessary in the absence of an
actual conflict between the laws of the two relevant jurisdictions).
"New York case law has long protected the right of the owner whose
property has been stolen to recover that property, even if it is in

---

valid proposition that an action on behalf of a New York estate
must be brought by a representative duly appointed by the New
York Surrogate.  <u>See, e.g.</u>, <u>Tajan v. Pavia & Harcourt</u>, 257 A.D.2d
299, 302 (1st Dept. 1999).

the possession of a good-faith purchaser for value." <u>Solomon R.</u>
<u>Guggenheim Foundation v. Lubell</u>, 77 N.Y.2d 311, 317 (1991). <u>See</u>
<u>also, e.g.</u>, <u>Phelps v. McQuade</u>, 158 A.D. 528, 530 (1st Dept. 1913)
("The possession of personal property obtained by common-law larceny
confers no title which can protect an innocent purchaser from the
thief."); <u>Candela v. Port Motors, Inc.</u>, 208 A.D.2d 486, 487 (2d Dept.
1994) (holding that, under UCC 2-403(1), one who purchased a stolen
car cannot convey good title to a subsequent purchaser for value).
Under Swiss law, on the other hand, owners of stolen goods receive
less protection.  A party who acquires an object in good faith
becomes the owner even if the seller was not authorized to transfer
ownership, the purchaser's good faith is presumed, and the exception
enabling the owner of lost or stolen property to reclaim it even from
a good faith purchaser applies only for five years.  <u>See</u> <u>Bakalar v.</u>
<u>Vavra</u>, No. 05 Civ. 3037, 2008 WL 4067335, at *6 (S.D.N.Y. Sept. 2,
2008); <u>Autocephalos Greek-Orthodox Church of Cyprus v. Goldberg &</u>
<u>Feldman Fine Arts, Inc.</u>, 717 F. Supp. 1374, 1400 (D. Ind. 1989),
<u>aff'd</u> 917 F.2d 278 (7th Cir. 1990).

    As previously noted, New York applies interest analysis to
choice of law questions.  <u>Istim</u>, 78 N.Y.2d at 346-47.  In disputes
over transfers of personal property, interest analysis will often
lead to the conclusion that the law of the forum where the transfer
took place applies, the same result that would have been reached
under the traditional <u>lex loci delicti rule</u>.  <u>See, e.g.</u>,
<u>Kunstammlungen Zu Weimar v. Elicofon</u>, 536 F. Supp. 829, 845-46
(E.D.N.Y. 1981).  But such a result is not inevitable, and where

another forum has a more significant relationship to the parties and the property, that forum's law will apply.  <u>See</u> Restatement 2d of Conflict of Laws § 245.  In particular, when the parties did not intend that the property would remain in the jurisdiction where the transfer took place, that forum will have a lesser interest in having its law applied.  <u>Restatement 2d of Conflict of Laws</u> § 244 cmt. f; <u>Autocephalos</u>, 717 F. Supp. at 1394.

Here, <u>Boy</u> was held at the time of its sale by the Galerie Rosengart in Lucerne, Switzerland, which was, according to the Museums' expert, a branch gallery run by Thannhauser but a legally independent entity.  Stein Report at 33, 24-25.   But <u>Boy</u> was immediately shipped to New York, where Paley lived, Stein Report at 34, and the painting was paid for by a check made out to a New York bank, <u>see</u> Letter from Albert Skira to William Paley dated August 27, 1936, Ex. 56 to Davis Decl.  The owner of <u>Boy</u>, whether Paul, Elsa, or Thannhauser, was not a Swiss resident or citizen at the time.  And <u>Boy</u> has been in New York for over 70 years and is now the property of a major New York cultural institution that is also a party to this action.  Under these circumstances, interest analysis leads to the conclusion that New York law applies to the sale of <u>Boy</u> to Paley, and the Claimants' claims as to <u>Boy</u> are therefore not barred by Swiss law.

Finally, the Museums assert that the claims are barred by laches.  The parties agree that New York law governs this issue.  See transcript, December 18, 2008.  As the Court indicated in its December 30, 2008 Order, the fact-intensive question of whether

laches bars Claimants' action will be the subject of an evidentiary hearing conducted by the Court simultaneously with the jury's trial of the merits of the case.  Summary judgment is inappropriate at th stage because genuine questions of fact exist as to, <u>inter alia</u>, whether Elsa knew she had a potential claim to the Paintings during her lifetime and whether the Museums, as Claimants argue, had reaso to know that the Paintings were misappropriated and so are barred from invoking laches by the doctrine of "unclean hands."

Although the Court has also considered, and rejected, variou other arguments made by the Museums, the foregoing expresses the basic reasoning underlying the Court's Order of December 30, 2008 denying the Museums' motion for summary judgment, as well as the supplemental Order of January 20, 2009.

Dated: New York, NY
       January 27, 2009

JED S. RAKOFF, U.S.D.J.