```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JULIUS H. SCHOEPS, EDELGARD VON          :
LAVERGNE-PEGUILHEN, and FLORENCE         :
KESSELSTATT,                             :    07 Civ. 11074 (JSR)
                                         :
               Plaintiffs,               :    MEMORANDUM ORDER
                                         :
          -v-                            :
                                         :
THE MUSEUM OF MODERN ART and THE         :
SOLOMON R. GUGGENHEIM FOUNDATION,        :
                                         :
               Defendants.               :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

     At the heart of this action are issues of considerable public import.  Plaintiffs, heirs of Paul von Mendelssohn-Bartholdy and his wife, claim that two of New York's foremost cultural institutions turned a blind eye to the fact that great works of art in their collections -- Pablo Picasso's <u>Boy Leading a Horse</u> (1905-1906), now owned by the Museum of Modern Art, and Picasso's <u>Le Moulin de la Galette</u> (1900), now owned by the Solomon R. Guggenheim Collection -- were sold by von Mendelssohn-Bartholdy against his will because of Nazi duress in the 1930s.  The defendant museums, for their part, originated this action (in the form of a declaratory judgment action) to clear their names (or so they said) and to combat what they alleged, in effect, was an effort by plaintiffs and their counsel to use the facade of Nazi iniquities to extort monies from public institutions that were vulnerable to bad publicity.

     On February 2, 2009, the morning that trial was to commence, the parties announced in open court that, after over a year of

litigation, they had reached a settlement.  <u>See</u> transcript 2/2/09. Counsel for the Museum of Modern Art and the Solomon R. Guggenheim Foundation (the "Museums") indicated that "for a sum certain," which was to remain confidential under the settlement agreement, there would be "complete peace" between the parties and the paintings would remain with the Museums.  <u>Id.</u>  The Court, after confirming that all affected parties consented to the dismissal of the case with prejudice, accepted the parties' stipulation of dismissal.  <u>Id.</u>  The Court, however, also asked the parties to submit, under seal, a copy of the signed settlement agreement once executed, so that the Court could determine whether it was appropriate and within the Court's power to make the settlement public.  The parties consented.  <u>Id.</u>

After receiving the signed agreement, the Court, by Order dated March 6, 2009, directed the parties to submit letters stating whether they objected to making the settlement agreement public and setting forth the grounds for any such objection.  By letter that same day, the Museums informed the Court that they no longer had any objection to making the settlement terms public and that they were prepared to waive the confidentiality provision to which the parties had previously agreed.  Plaintiffs, however, submitted a letter dated March 13, 2009 stating that they objected to disclosure of the settlement terms.  Their letter set forth the general legal principles that weigh against disclosure of settlement agreements, without, however, stating the particular reasons for their objection.

The Court finds the confidentiality provision of the settlement agreement and the plaintiffs' objection to disclosure to be against the public interest and a troubling reversal of the parties' previously stated positions on this issue. From the outset, the parties on both sides portrayed this lawsuit as of considerable public interest because of the importance of establishing the truth concerning the sensitive issues involved. The Museums, when they first brought this action seeking declaratory judgment, stated that they were "prepared to have all factual and legal issues surrounding [plaintiffs'] claims to the Paintings resolved by this Court," Compl. ¶ 8, and they have subsequently reiterated that "they are and remain committed to transparency in their actions," Letter from Evan Davis to the Honorable Jed S. Rakoff dated January 15, 2009. They have portrayed themselves as institutions dedicated to serving the public by enriching its cultural life, see, e.g., Compl. ¶¶ 13-18, and they have characterized the plaintiffs' claims as entirely baseless and, essentially, extortionate, see, e.g., id. ¶¶ 46-55. The plaintiffs, for their part, have claimed loudly throughout that they were vindicating a historical injustice.

Despite these protestations, and despite the fact that the Museums are not-for-profit education corporations who, by their own admission, hold their collections for the public trust, see Compl. ¶ 13, the parties chose to enter into a settlement agreement that -- for reasons that remain entirely unexpressed -- contained a confidentiality clause. Had the Museums been public agencies of New

3

York State or City, any such provision would have been contrary to New York's Freedom of Information Law ("FOIL"). See N.Y. Pub. Off. L. §§ 84-90; see also Washington Post Co. v. New York State Ins. Dep't, 61 N.Y.2d 557, 567 (1984) (stating that promises of confidentiality by a state agency do not affect the status of documents as records subject to required disclosure under FOIL, nor do such promises affect the applicability of any exemption under FOIL's provisions). It is hard to see why institutions that proclaim their public status and that seek and receive public support should view themselves as not owing a similar obligation, even if one is not imposed by law.[1] Yet it was only after being pressed by the Court that the Museums retreated from their position of seeking confidentiality and stated that they no longer oppose disclosure.

Plaintiffs, however, for reasons wholly unexplained and seemingly no more compelling than concealing the amount of money going into their pockets, remain opposed. Even after giving allowance for the fact that plaintiffs, who are citizens of foreign countries, may be somewhat unfamiliar with the transparency typical of United States courts, the fact that the plaintiffs, who repeatedly sought to clothe themselves as effectively representatives of victims of one of the most criminal political regimes in history, should

---

[1] Cf. Metropolitan Museum Historic Dist. Coalition v. De Montebello, 20 A.D.3d 28, 37-38, 796 N.Y.S.2d 64 (1st Dep't 2005) (holding that the Metropolitan Museum of Art is not a governmental "agency" and so is not subject to FOIL's provisions).

4

believe that there is any public interest in maintaining the secrecy of their settlement baffles the mind and troubles the conscience.

This case is thus very different, in many respects, from the ordinary case that courts of the Second Circuit have had in mind when they have enforced confidentiality provisions in settlement agreements.  See, e.g., Fed. Deposit Ins. Co. v. Ernst & Ernst, 677 F.2d 230 (2d Cir. 1982); Palmieri v. State of New York, 779 F.2d 861 (2d Cir. 1985).  Indeed, one of our sister circuits has noted in dictum that the broad brush of confidentiality should be applied in a more nuanced way than is typically the case.  In Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785-86 (3d Cir. 1994), the Third Circuit wrote,

> Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders.  Because defendants request orders of confidentiality as a condition of settlement, courts are willing to grant these requests in an effort to facilitate settlement without sufficiently inquiring into the potential public interest in obtaining information concerning the settlement agreement.

The law of the Second Circuit, however, admits of no such distinctions in this instance.  Rather, the Second Circuit strongly endorses the confidentiality of settlement agreements in virtually all cases.  See, e.g., United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir. 1998) (noting the public interest in settlement of litigation in approving the sealing of settlement documents); Palmieri, 779 F.2d at 864 (reversing a district court's modification of a sealing order covering a settlement agreement and citing the "need of our district courts and civil litigants to

facilitate efficient resolution of disputes through negotiated settlements").[2]

Given these precedents, the Court has no choice, therefore, but to preserve the confidentiality of the settlement agreement. Nonetheless, the Court will docket a copy of the settlement agreement, under seal, in the hope that the plaintiffs, after they have had a greater opportunity to reflect on their public responsibilities, not just to the courts of the United States that have made judicial processes so freely available to them, but to the public generally, may yet move to unseal it.

SO ORDERED.

Dated: New York, NY
       March 23, 2009

JED S. RAKOFF, U.S.D.J.

---

[2] It is true that a presumption of public access attaches to "judicial documents," which are documents filed with the court that are "relevant to the performance of a judicial function." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995). In this case, the settlement agreement, though filed with the Court, is probably not a "judicial document" because it was submitted at the Court's request and was not the basis of any decision or action by the Court. Moreover, even if it were classed as a "judicial document," the Second Circuit has found, in similar cases, that the presumption of access is weak when settlement confidentiality is concerned. See Glens Falls Newspapers, 160 F.3d at 858 (the presumption of access to documents pertaining to settlement negotiations is "negligible to nonexistent"); Gambale v. Deutsche Bank AG, 377 F.3d 133, 143-44 (2d Cir. 2004) (presumption of access to record of counsel's statement of the settlement amount made at a sealed conference is weak).